1  GILBERT R. SEROTA (No. 75305)
   Email: gserota@howardrice.com
   MARK A. SHEFT (No. 183732)
   Email: msheft@howardrice.com
3  MICHAEL L. GALLO (No. 220552)
   Email: mgallo@howardrice.com
4  HOWARD RICE NEMEROVSKI CANADY
   FALK & RABKIN
5  A Professional Corporation
   Three Embarcadero Center, 7th Floor
6  San Francisco, California 94111-4024
   Telephone: 415/434-1600
7  Facsimile: 415/217-5910

8  Attorneys for Plaintiffs
   THOMAS WEISEL PARTNERS LLC and
9  THOMAS WEISEL INTERNATIONAL
   PRIVATE LIMITED

10

11                  UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  THOMAS WEISEL PARTNERS LLC, a        No.
    Delaware limited liability company, and
16  THOMAS WEISEL INTERNATIONAL          Action Filed:        **BZ**
    PRIVATE LIMITED, an Indian company,
17                                        COMPLAINT FOR (1) TRADE SECRET
            Plaintiffs,                    MISAPPROPRIATION, (2) BREACH OF
18                                         CONTRACT, (3) BREACH OF THE
       v.                                  IMPLIED COVENANT OF GOOD
19                                         FAITH AND FAIR DEALING, (4)
    BNP PARIBAS, a French corporation, BNP  INTENTIONAL INTERFERENCE
20  PARIBAS SECURITIES (ASIA) LIMITED,    WITH EMPLOYMENT
    a Hong Kong company, and PRAVEEN      RELATIONSHIPS, (5) INTENTIONAL
21  CHAKRAVARTY, an individual,           INTERFERENCE WITH CONTRACT,
                                          (6) INTENTIONAL INTERFERENCE
22          Defendants.                   WITH PROSPECTIVE ECONOMIC
                                          ADVANTAGE, (7) BREACH OF
23                                        FIDUCIARY DUTY, (8) AIDING AND
                                          ABETTING BREACH OF FIDUCIARY
24                                        DUTY, AND (9) CONSPIRACY

25                                        (JURY TRIAL DEMANDED)

26

27

28

                              COMPLAINT

HOWARD RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    Plaintiffs Thomas Weisel Partners LLC ("TWP LLC") and Thomas Weisel

2  International Private Limited ("TW International") (collectively "Plaintiffs" or "TWP"),

3  allege as follows:

**INTRODUCTION**

5    1.    Trusted employees and fiduciaries owe duties to guard their employer's

6  confidential and proprietary information and to spend their time loyally furthering their

7  employer's business goals and strategies—not leaking confidential information and

8  becoming an inside recruiter for a competitor. This case is about how a trusted TWP officer

9  and a TWP competitor conspired to destroy an innovative business platform that TWP had

10  developed in complete disregard of these duties.

11    2.    Until the actions of the defendants described in more detail below, Discovery

12  Research was a subscription-based equity research service that offered TWP's clients access

13  to timely and often customized research coverage—by securities analysts based in India—of

14  undercovered micro-, small- and mid-cap public companies. TWP had invested millions of

15  dollars in the formation and operation of Discovery Research.

16    3.    Discovery Research's success depended, in part, on the talent, experience, and

17  skills of its employees and the training and strategies developed for Discovery Research by

18  TWP. Through stealth, misinformation and the unauthorized use of TWP's confidential

19  information, the defendants learned of TWP's strategies and plans and identified Discovery

20  Research's key employees. They then secretly and improperly solicited almost twenty key

21  Discovery Research employees to quit en masse in October and November 2007 for the

22  purpose of joining Defendant BNP Paribas' new business—effectively destroying Discovery

23  Research. In the process, numerous well-established fiduciary and contractual obligations

24  were breached and/or interfered with, TWP's confidential and trade secret information was

25  misappropriated, existing and potential business relations were damaged, and millions of

26  dollars were lost by TWP.

27    4.    The trusted TWP employee who served as the inside operative for the other

28  defendants was Defendant Praveen Chakravarty—a TWP employee sent from San Francisco

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   to Mumbai, India in 2005 to oversee the development of Discovery Research. Instead of

2   giving his undivided loyalty to TWP, Chakravarty schemed with executives at Defendants

3   BNP Paribas and BNP Paribas Securities (Asia) Limited ("BNP Paribas Securities (Asia)")

4   (collectively "the BNP Defendants") to raid a core group of Discovery Research employees.

5   They were so successful that on December 4, 2007, the BNP Defendants announced their

6   launch of a securities research platform in India headed by none other than Mr. Chakravarty

7   and consisting largely of employees poached from Discovery Research.

8       5.      The BNP Defendants were able to create this new business in a remarkably short

9   time because, while working for TWP, Chakravarty fed the BNP Defendants confidential,

10  trade secret information about the qualifications and compensation of key TWP employees

11  and then, with the encouragement and participation of the BNP Defendants, actively

12  solicited them to leave TWP and join BNP. Plaintiffs are informed and believe, and thereon

13  allege, that Chakravarty also provided other TWP trade secret information essential to the

14  Discovery Research platform to the BNP Defendants. Chakravarty's misappropriation of

15  confidential, trade secret information and solicitation of Discovery Research employees for

16  the BNP Defendants was designed to and did disrupt and injure TWP's relations with its

17  employees and customers.

18      6.      The near-simultaneous resignation of a large number of its key employees

19  crippled the Discovery Research business. Despite TWP's substantial effort and investment,

20  TWP has been unable to recruit, retrain or license research professionals fast enough to

21  continue to meet its obligations to clients. For this reason, on December 6, 2007, Thomas

22  Weisel Partners Group, Inc. (which owns Plaintiffs directly or indirectly) publicly

23  announced that it was shutting down Discovery Research as a result of Defendants'

24  recruitment of Discovery Research personnel. TWP now seeks relief for the irreparable

25  damage that Defendants' conduct caused.

26                              **THE PARTIES**

27      7.      Plaintiff TWP LLC is an investment bank and broker-dealer organized under the

28  laws of Delaware and headquartered in San Francisco, California. It provides strategic

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1 advisory and corporate finance services to U.S. and international emerging growth

2 companies, and equity research, trading execution and asset management services to wealthy

3 individuals and institutional investors.

4     8.    Plaintiff TW International is a subsidiary of TWP LLC organized under the laws

5 of India and headquartered in Mumbai, India. Until very recently, TW International

6 operated the Discovery Research business, which sold equity research and other financial

7 analyses to TWP LLC, which in turn sold that research and those analyses to subscribers.

8     9.    TWP is informed and believes, and thereon alleges, that Defendant BNP Paribas

9 is an international retail and investment bank organized under the laws of France with its

10 global headquarters in Paris, France, its principal United States offices in New York City

11 and a regional office in San Francisco, California. BNP Paribas has designated an agent for

12 service of process in California. TWP is informed and believes, and thereon alleges, that

13 BNP Paribas was at all relevant times the parent company of Defendant BNP Paribas

14 Securities (Asia).

15     10.    TWP is informed and believes, and thereon alleges, that Defendant BNP Paribas

16 Securities (Asia) is a brokerage operation organized under the laws of Hong Kong and

17 headquartered in the Hong Kong offices of BNP Paribas. According to BNP Paribas' 2006

18 Annual Report, BNP Paribas Securities (Asia) "has sales teams in the United States (New

19 York *and San Francisco*) and in Europe (London, Paris and Milan)" (emphasis added).

20 TWP is also informed and believes, and thereon alleges, that BNP Securities (Asia) provides

21 equity research and/or brokerage and clearing services to clients located in California.

22     11.    Defendant Praveen Chakravarty is a citizen of India who was employed by TWP

23 LLC from August 7, 2003 until he was terminated on November 7, 2007. From August 7,

24 2003 to on or about October 1, 2005, Chakravarty was employed pursuant to a non-

25 immigrant worker visa in TWP LLC's main office in San Francisco. On or about October 1,

26 2005, Chakravarty was seconded from TWP LLC to TW International in Mumbai to lead the

27 effort to develop the Discovery Research business. Until his termination, Chakravarty

28 remained an employee of San Francisco-based TWP LLC. TWP is informed and believes,

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

COMPLAINT

-3-

1  and thereon alleges, that Chakravarty is currently domiciled in India and intends to remain
2  there.

3  ## JURISDICTION AND VENUE

4  12.  Jurisdiction in this Court is proper under 28 U.S.C. Section 1332 because the
5  parties are diverse and the amount in controversy is greater than $75,000, exclusive of
6  interest and costs.

7  13.  TWP is informed and believes, and thereon alleges, that venue in this Court is
8  proper under 28 U.S.C. Section 1391(a)(3) because, as of the filing of this action, all the
9  Defendants have sufficient minimum contacts with this judicial district to subject them to the
10  Court's personal jurisdiction.  TWP is also informed and believes, and thereon alleges, that
11  venue in this Court is proper under 28 U.S.C. Section 1391(d) because Defendants are all
12  aliens.

13  14.  Venue in the San Francisco Division of this Court is proper under Northern
14  District Local Rule 3-2 because Plaintiff TWP LLC is located in San Francisco, and has
15  been injured there.  TWP LLC owns Plaintiff TW International.


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

16  ## GENERAL ALLEGATIONS

17  **A.  TWP Hires Chakravarty, Who Promises To Protect TWP's Trade Secrets
    And Not To Solicit Customers, Clients, Prospective Clients or Employees.**
18

19  15.  On August 7, 2003, TWP LLC offered Chakravarty a position as an Equity
20  Research Associate in its San Francisco office.  On August 13, 2003, Chakravarty accepted
21  that offer.

22  16.  In a document he signed on August 25, 2003, Chakravarty acknowledged that he
23  had received TWP LLC's Employee Handbook and agreed to comply with all the policies
24  set forth therein.  The document also contains the following promise to protect TWP's
25  confidential information:

26  I will not at any time, either during or after the term of my employment with
    TWP, in any fashion, form or manner, either directly or indirectly, unless
27  expressly consented to in writing by TWP, use, divulge, disclose or communicate
    to any person or entity any confidential information of any kind, nature or
28  description concerning any matters affecting or relating to TWP's business.  The

1

2

3

4

5

6

7

8

9

10

11

12

definition of "confidential information" is very broad. It includes but is not limited to, computer processes, programs and codes; the names, addresses, buying habits or practices of any TWP clients or customers; marketing methods, programs and related data, or other written records used in TWP business; compensation paid to other employees and independent contractors and other terms of their employment or contractual relationships; or any other confidential information of, about or concerning TWP business, manner of operations, or other data of any kind, nature or description. I understand the above information and items are important, material and confidential trade secrets that affect the successful conduct of TWP business and its good will, and that any breach of any term of this section is a material breach of this agreement. All equipment, notebooks, documents, memoranda, reports, files, samples, books, correspondence, lists or other written and graphic records, and the like, including tangible or intangible computer programs, records and data, affecting or relating to TWP business, which I might prepare, use, construct, observe, possess or control, shall be and shall remain TWP's sole property.

I agree that on or before the last day of my employment I will not remove confidential information, whether physical or electronic without the express written permission of Human Resources.

The TWP LLC Employee Handbook contains virtually identical language.

13

17. The document that Chakravarty signed on August 25, 2003 also contains the

14

following promise not to solicit customers, clients or prospective clients:

15

16

17

18

19

20

21

I hereby acknowledge and agree that I will likely be exposed to a significant amount of confidential information concerning TWP business methods, operations, customers, clients, and prospective clients while employed by TWP, that such information might be retained by me in tangible form or simply retained in my memory, and that the protection of TWP's exclusive rights to such confidential information and trade secrets can best be ensured by means of a restriction on my activities after termination of employment. I agree that all business procured by me while I am employed by TWP and all information about clients and prospective clients are TWP's property. Therefore, for a one-year period following employment termination (whether voluntary or involuntary and with or without cause), I will not solicit, divert on initiate any contact with (or attempt to solicit, divert or initiate contact with) any customer or client of TWP for any commercial or business reason whatsoever.

22

The TWP LLC Employee Handbook contains virtually identical language.

23

18. The document that Chakravarty signed on August 25, 2003 also contains the

24

following promise not to solicit TWP employees:

25

26

27

I agree that for as long as I am employed by TWP and for 12 months after the cessation of my employment I will not recruit, hire or attempt to recruit or hire, directly or by assisting others, any of TWP's employees with whom I had contact during my employment with TWP. For the purposes of this paragraph, "contact" means any interaction whatsoever between the other employee and me.

28

The TWP LLC Employee Handbook contains virtually identical language.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

19. The TWP LLC Employee Handbook also contains a "Code of Conduct and Ethics" ("TWP Code"). Section II.A of the TWP Code provides in relevant part that

Employees and directors owe a duty to the firm to advance the firm's legitimate business interests when the opportunity to do so arises. Employees and directors are prohibited from taking for themselves (or directing to a third party) a business opportunity that is discovered through the use of corporate property, information or position, unless the firm has already been offered the opportunity and turned it down. More generally, employees and directors are prohibited from using corporate property, information or position for personal gain or competing with the firm.

Sometimes the line between personal and firm benefits is difficult to draw, and sometimes both personal and firm benefits may be derived from certain activities. The only prudent course of conduct for our employees and directors is to make sure that any use of firm property or services that is not solely for the benefit of the firm is approved beforehand through an Appropriate Ethics Contact.

### B. TWP LLC Sends Chakravarty To Mumbai To Head TWP's Development Of Discovery Research.

20. In 2005, TWP LLC began developing an innovative India-based equity research platform—called Discovery Research—through its subsidiary TW International. TWP LLC's pioneering plan was to train Indian nationals as research analysts and help them obtain appropriate United States regulatory licenses and certifications so that they could research and publish reports to U.S. investors about stocks traded on major U.S. exchanges. Discovery Research agreed to sell its research to TWP LLC in San Francisco, which in turn sold the research to institutional investors by subscription. TWP LLC's expectation was that offshoring research in this way would lower the cost of providing research coverage, thus allowing Discovery Research to cover smaller companies that were not cost effective for U.S.-based research analysts to cover. TWP LLC was the first U.S. financial services company to develop this kind of offshore NASD-licensed research capacity.

21. On or about October 1, 2005, TWP LLC seconded Chakravarty to TW International in Mumbai to take the lead management role in building up and running the research side of Discovery Research. Until his termination on November 7, 2007, Chakravarty at all times remained an employee of TWP LLC, whose employment terms he and TWP LLC agreed would be governed by "the laws of the US and [TWP LLC rules and regulations]."

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1    22. In Mumbai, Chakravarty reported to Karanveer ("KV") Dhillon, Managing

2    Director of TW International and head of TWP's Indian operations. As part of his

3    international assignment, Chakravarty was given the title of "Director of Discovery

4    Research" and received a raise and significant benefits, including a guaranteed bonus, stock

5    options and a substantial housing allowance.

6    23. From 2005 through the fall of 2007, TWP grew Discovery Research to employ

7    approximately 55 people. Of these 55 employees, 14 were NASD- (now FINRA-) licensed

8    analysts who published research on approximately 150 different companies whose stocks

9    trade on U.S. exchanges. The analysts were assisted by research associates—some of whom

10   were also NASD-licensed—as well as editors and administrative staff. Together, TW

11   International's research professionals offered TWP's clients access to research coverage of

12   under-covered micro-, small- and mid-cap companies in the consumer, healthcare, industrial

13   growth and technology sectors. Additionally, the research team recently had initiated

14   coverage of Indian companies.

15   ## C. TWP's Confidential And Proprietary Information Concerning The Discovery Research Business.

16

17   24. Because the core function of TWP's Discovery Research business was to analyze

18   and publish research reports about under-covered companies trading on U.S. exchanges,

19   TWP invested in and relied heavily on the specialized training, skills and knowledge of the

20   employees of its Discovery Research business. The Discovery Research analysts who

21   received NASD licenses as a result of TWP's substantial investment in education and

22   training were key to the success of the Discovery Research business.

23   25. Because of the value of well-trained, experienced and knowledgeable employees,

24   TWP collected and maintained, at considerable expense, information regarding Discovery

25   Research employees including, without limitation, information regarding their skill levels,

26   capabilities and expertise, and detailed information concerning their salaries, bonus and

27   other compensation. TWP took every reasonable precaution to preserve and maintain the

28   confidentiality of this information (hereinafter the "Confidential Employee Information").

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1    26.    TWP invested substantial time and money to create and maintain Discovery

2    Research's platform including, but not limited to, developing extensive employee training

3    materials and generating the research reports themselves. These materials were the product

4    of TWP's investment and its know how developed over several years of operating Discovery

5    Research and training its employees. The information in these materials was an important

6    aspect of TWP's Discovery Research business that was not available publicly, and TWP

7    took reasonable precautions to preserve and maintain the confidentiality of that information

8    (hereinafter the "Confidential Platform Information").

9    27.    TWP also maintained lists of its Discovery Research customers, and data about

10    the research, consulting and trading requirements of those customers. That information was

11    valuable and not available publicly, and TWP took reasonable precautions to preserve and

12    maintain the confidentiality of that information (hereinafter the "Confidential Customer

13    Information").

14    28.    TWP also created detailed business and marketing plans for Discovery Research.

15    This information was valuable and not available publicly, and TWP took reasonable

16    precautions to preserve and maintain the confidentiality of this information (hereinafter the

17    "Confidential Business Information").    (The confidential information described in

18    Paragraphs 25 through 28 is referred to collectively herein as "Confidential Information.")

19    29.    TWP's Confidential Information derives independent economic value, actual or

20    potential, from not being generally known to the public or to other persons who can obtain

21    economic value from its disclosure or use.

22    30.    At all relevant times, TWP has undertaken, and does undertake, reasonable

23    efforts to maintain the confidentiality and secrecy of its Confidential Information. At all

24    relevant times, the Confidential Information has been, and is, maintained in a secure manner

25    in TWP's facilities, in a manner that will minimize opportunities for disclosure to

26    unauthorized persons, including storage of documentation in files that are not available to

27    persons other than TWP employees with a legitimate business reason for access thereto.

28    31.    In addition, all employees in TWP's Discovery Research business read and

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1   agreed to the terms of TW International's Employee Handbook, which contained the

2   following language prohibiting the disclosure of confidential information to any outside

3   person or entity:

Employees are not permitted, either during or after the term of employment with the Company, in any fashion, form or manner, either directly or indirectly, unless expressly consented to in writing by the Company, to use, divulge, disclose or communicate to any person or entity any confidential information of any kind, nature or description concerning any matters affecting or relating to the Company's business. The definition of "confidential information" is very broad. It includes but is not limited to, computer processes, programs and codes; the names, addresses, buying habits or practices of any of the clients or customers; marketing methods, programs and related data, or other written records used in Company business; compensation paid to other employees and independent contractors and other terms of their employment or contractual relationships; or any other confidential information of, about or concerning the Company's business, manner of operations, or other data of any kind, nature or description. I understand the above information and items are important, material and confidential trade secrets that affect the successful conduct of the Company's business and its good will, and that any breach of any term of this section is a material violation of an employee and former employee's obligations to the Company. All equipment, notebooks, documents, memoranda, reports, files, samples, books, correspondence, lists or other written and graphic records, and the like, including tangible or intangible computer programs, records and data, affecting or relating to the Company's business, which an employee might prepare, use, construct, observe, possess or control, shall be and shall remain the Company's sole property.

As an employee, you agree that on or before your last day of your employment you will not remove confidential information, whether physical or electronic without the express written permission of Human Resources.

18   **D.   Chakravarty And The BNP Defendants Conspire To Disrupt TWP's**
19       **Discovery Research Business, Misappropriate TWP's Confidential Information And Raid TWP's Employees.**

20       32.   While Chakravarty was still employed by TWP and held the title of Director of

21   Discovery Research, he conspired and agreed with senior management at the BNP

22   Defendants, including but not limited to Pierre Rousseau and Jonathan Harris, to disrupt the

23   Discovery Research business through the unlawful misappropriation of TWP's Confidential

24   Information and the wholesale "raiding" of NASD-licensed analysts from Discovery

25   Research.  The purpose of Defendants' campaign was two-fold:  to misappropriate the

26   trained employees and technical materials necessary to create an India-based equity research

27   business and to deprive Discovery Research of large numbers of critical personnel, thus

28   crippling its ability to provide prompt or quality service to TWP's subscription customers.

COMPLAINT

-9-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1   33. TWP is informed and believes, and thereon alleges, that, sometime in or around

2 September 2007, senior managers from the BNP Defendants and Chakravarty discussed the

3 possibility of hiring him along with the bulk of the Discovery Research analyst team.

4   34. By virtue of his position as Director of Discovery Research, Chakravarty had

5 access to most if not all of TWP's Confidential Information. Chakravarty received and/or

6 reviewed documents showing employee compensation levels, current and projected profit

7 and loss statements, and other financial planning documents, including a "break even

8 analysis" for TWP's Discovery Research operation. Chakravarty was also intimately

9 involved with the research at the core of the Discovery Research business and, as a result,

10 had access to research reports, TWP LLC and TW International coverage decisions, contact

11 information for the companies the Discovery Research team covered, training materials, and

12 knowledge about the research analysts and associates themselves. Chakravarty also had

13 access to Confidential Customer Information about subscribers to the Discovery Research

14 service.

15   35. In mid-October, Chakravarty, without TWP's authority, met in Mumbai with

16 Rousseau (BNP Paribas' Global Head of Equity Brokerage and a Director and Chief

17 Executive Officer of BNP Paribas Securities (Asia)) and Harris (BNP Paribas Securities

18 (Asia)'s Regional Head of Company Research). TWP is informed and believes, and thereon

19 alleges, that at that meeting, Rousseau, Harris and Chakravarty planned to solicit Discovery

20 Research employees to stage an "en masse" resignation. In furtherance of their scheme, at

21 or shortly after the meeting, the BNP Defendants requested, and Chakravarty agreed to

22 provide (without TWP's permission), a list of what Chakravarty considered the core

23 members of the Discovery Research team, including Confidential Employee Information

24 about the qualifications, expertise and compensation of a targeted group of more than twenty

25 Discovery Research professionals.

26   36. Chakravarty and the BNP Defendants then used the Confidential Employee

27 Information discussed above to actively solicit Discovery Research employees to quit

28 simultaneously and jump ship to BNP Paribas Securities (Asia)'s India business.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1    37.   TWP is informed and believes, and thereon alleges, that Chakravarty provided, or

2    instructed others to provide, other Confidential Information—such as business plans and lists

3    of customer contacts—to the BNP Defendants. TWP believes that Chakravarty traveled to

4    Hong Kong specifically to deliver TWP Confidential Information to the BNP Defendants

5    and to plot and scheme to destroy TWP's Discovery Research business.

6    38.   The conspiracy culminated between October 31 and November 6, 2007, when

7    seventeen employees of Discovery Research gave notice of their resignation from TW

8    International. Ten of the fourteen NASD-licensed research analysts employed by Discovery

9    Research—the heart and soul of the platform (and some 70 percent of the licensed research

10   analysts)—were among those who resigned. Of the four remaining research analysts, three

11   had only had their licenses for a few months. Seven research associates also gave notice.

12   (Collectively, these employees are referred to as the "Departing Discovery Research

13   Employees").

14   39.   Starting on or about November 4, 2007, TWP learned that Chakravarty had been

15   planning for some time to induce a number of TW International employees to leave with him

16   and to join BNP Paribas Securities (Asia)'s India business. Once it became clear that

17   Chakravarty was scheming with the BNP Defendants to engineer a mass exodus of

18   Discovery Research employees, TWP LLC terminated him for cause (violation of company

19   policies) on November 7, 2007, effective immediately.

20   40.   Later that day, Dhillon told Discovery Research's Human Resources director that

21   Chakravarty had been terminated, at which point she also quit. TWP later discovered that

22   she had been materially assisting Chakravarty, including, on information and belief, by

23   providing him with copies of TWP Confidential Information and communicating secretly

24   with BNP Paribas representatives.

25   41.   The Departing Discovery Research Employees were contractually bound to work

26   for thirty additional days after giving notice to ensure a smooth business transition, in

27   particular the smooth transition of research coverage for the companies they had followed.

28   The Departing Discovery Research Employees did not cooperate in the transition: many of

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

COMPLAINT

-11-

1   them did not show up for work after giving notice, or showed up only sporadically and for a
2   few hours a day. In addition, the departing research analysts refused to let their names be
3   associated with any research reports they had been working on that had not yet been
4   published.

5   42. TWP is informed and believes, and thereon alleges, that after his termination,
6   Chakravarty solicited or attempted to solicit additional employees to come to work for BNP
7   Paribas Securities (Asia)'s India business. TWP is also informed and believes, and thereon
8   alleges, that Defendants have been spreading rumors that TWP is shutting down not only the
9   Discovery Research business, but all of TW International's operations in India.

10  **E.   BNP Paribas Leverages Its Raid On TWP.**

11  43. On December 4, 2007, BNP Paribas Securities (Asia) announced the launch of a
12  27-person securities research team in India under the leadership of Chakravarty. According
13  to the company's press statement, Chakravarty is now the Chief Operating Officer and
14  Acting Head of Research for BNP Paribas Securities in India. TWP is informed and
15  believes, and thereon alleges, that former employees of Discovery Research will form the
16  core of the BNP Defendants' new business. Indeed, the December 4, 2007 press statement
17  reported that Chakravarty's new team would have ten research analysts—the exact number
18  of research analysts who left Discovery Research as part of the en masse resignations that
19  Defendants engineered. Moreover, Jonathan Harris—to whom Chakravarty now reports—
20  earlier had informed TWP that BNP Paribas Securities (Asia) had hired or intended to hire
21  more than twenty Discovery Research employees.

22  44. These allegations establish a classic case of an illegal raid on a competitor with
23  the intention of misappropriating an ongoing business. Rather than developing its business
24  by legitimate means—by acquiring market expertise and training its own research analysts—
25  the BNP Defendants entered into a conspiracy with Chakravarty to steal Discovery Research
26  employees and misappropriate other Discovery Research Confidential Information. This
27  conspiracy—known of and approved by senior management at BNP Paribas—was part of a
28  campaign to enter the market for India-based research without having to invest the millions

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1  of dollars and years of effort it would have taken to create independently a valuable research
2  franchise in India.

3      45.   At all relevant times, the BNP Defendants and Chakravarty knew the value of the
4  Confidential Information that they were misappropriating, and the employees that they
5  solicited improperly using that information.

6      46.   Defendants' orchestration of the mass defection of key Discovery Research
7  employees destroyed the Discovery Research business. Due to the simultaneous departure
8  of most of its licensed analysts, TWP was unable to produce timely research reports on many
9  of the stocks covered by the Discovery Research team. Despite intensive focus over several
10 weeks on rehabilitating the damaged business—including exploring efforts to quickly
11 recruit, hire, train and license new research analysts—TWP concluded reluctantly that the
12 loss of talent rendered it unable to provide the quality and scope of research coverage that
13 Discovery Research's clients demand (and have paid for). As a result, on December 6,
14 2007, Thomas Weisel Partners Group, Inc. announced that Defendants' actions had forced
15 the shutdown of Discovery Research.

16     47.   TWP is informed and believes, and thereon alleges, that Defendants' acts were
17 designed to disrupt and materially injure TWP's relations with its employees and clients.
18 TWP is further informed and believes, and thereon alleges, that Defendants knew their
19 actions would harm TWP, in particular in San Francisco—where Defendants knew TWP
20 LLC was headquartered.

21     **F.   Damages Resulting From Defendants' Conduct.**

22     48.   As a direct result of Defendants' pre-meditated scheme to cause a large number
23 of Discovery Research employees—including almost all of its senior research analysts—to
24 resign en masse, TWP has been forced to close down its Discovery Research business. TWP
25 has lost revenue and future profits from contracts with existing and anticipated customers.
26 TWP also has suffered substantial damage to its reputation and goodwill, and has lost its
27 substantial investment in building up the Discovery Research business.

28     49.   As a direct result of Defendants' illegal solicitation of TWP's Discovery

COMPLAINT

-13-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1   Research employees, TWP also will incur significant costs associated with shutting down

2   the Discovery Research business, including without limitation the cost of refunding

3   subscription payments to its customers, costs related to its lease, and costs of severance

4   and/or other obligations to creditors and employees.

**FIRST CAUSE OF ACTION**
**(Misappropriation of Trade Secrets)**
**(Against All Defendants)**

8     50.   TWP realleges and incorporates herein by reference the allegations of Paragraphs

9   1 through 49, *supra*.

10    51.   TWP possesses trades secrets in its Discovery Research business as defined by

11   California's Uniform Trade Secrets Act, Civil Code Sections 3426-3426.11.

12    52.   These trade secrets include but are not limited to: (i) information regarding the

13   training, skill levels, capabilities and productivity of Discovery Research employees, and the

14   salaries and compensation (including projected bonuses) of those employees; (ii)

15   information about the Discovery Research "platform," including research reports, company

16   contacts and employee training materials; (iii) information about actual and potential

17   customers, including their contact information and requirements; and (iv) information about

18   Discovery Research, including revenue from operations, cost of operations, profitability,

19   business plans and marketing documents. (Collectively, this information is referred to

20   herein as the "Trade Secrets").

21    53.   The Trade Secrets derive independent economic value, actual or potential, from

22   not being generally known to the public or to other persons who can obtain economic value

23   from their disclosure or use.

24    54.   TWP has taken reasonable measures to maintain the secrecy of the Trade Secrets,

25   including but not limited to maintaining the information in a secure manner in TWP

26   facilities, and requiring that TWP employees—including Discovery Research employees—

27   comply with their employee handbooks, which expressly require the maintenance of

28   confidentiality with respect to TWP's Trade Secrets.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

COMPLAINT

-14-

1    55.    Defendants have misappropriated the Trade Secrets by: (1) acquiring the Trade

2    Secrets with knowledge or reason to know that they were acquired by improper means; (2)

3    disclosing, using and/or threatening to use the Trade Secrets, without the express or implied

4    consent of TWP; (3) soliciting Discovery Research employees by the use of the Trade

5    Secrets; and/or (4) soliciting Discovery Research customers through the use of the Trade

6    Secrets.

7    56.    Defendants, and each of them, have been using the Trade Secrets with knowledge

8    or reason to know that their knowledge of the Trade Secrets was (1) acquired under

9    circumstances giving rise to a duty to maintain their secrecy or limit their use, or (2) derived

10   from or through a person who owed a duty to TWP to maintain the confidentiality of the

11   information.

12   57.    TWP has suffered damages, and Defendants have been unjustly enriched in an

13   amount to be proven at trial, as a direct result of Defendants' misappropriation of the Trade

14   Secrets.

15   58.    Defendants' misappropriation of TWP's Trade Secrets has been willful and

16   malicious and entitles TWP to exemplary damages pursuant to Civil Code Section 3426.3(c)

17   and an award of its reasonable attorneys' fees and costs pursuant to Civil Code Section

18   3426.4.

19

20   ### SECOND CAUSE OF ACTION
     ### (Breach of Contract)
21   ### (Against Defendant Chakravarty)

22   59.    TWP realleges and incorporates herein by reference the allegations of Paragraphs

23   1 through 58, *supra*.

24   60.    TWP LLC entered into an employment agreement with Chakravarty.  As part of

25   the agreement, TWP LLC agreed to provide Chakravarty with compensation and benefits for

26   his services and, as a condition of and in exchange for receiving those benefits, Chakravarty

27   agreed to faithfully perform the duties and responsibilities of his positions at TWP and to

28   comply with all TWP policies and procedures.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

COMPLAINT

-15-

1    61.  As part of the terms of his employment agreement, Chakravarty signed a written

2    agreement on August 25, 2003 that contained the following promise to protect TWP's

3    confidential information:

4        I will not at any time, either during or after the term of my employment with
         TWP, in any fashion, form or manner, either directly or indirectly, unless
5        expressly consented to in writing by TWP, use, divulge, disclose or communicate
         to any person or entity any confidential information of any kind, nature or
6        description concerning any matters affecting or relating to TWP's business . . . .

7        I agree that on or before the last day of my employment I will not remove
         confidential information, whether physical or electronic without the express
8        written permission of Human Resources.

9    62.  The agreement that Chakravarty signed on August 25, 2003 as part of the terms

10   of his employment also contained a promise not to solicit TWP employees with whom he

11   had contact for as long as he was employed at TWP and for a period of twelve months after

12   his departure from TWP, whether voluntary or involuntary.

13   63.  The agreement that Chakravarty signed on August 25, 2003 also acknowledged

14   that he agreed to abide by the terms of the TWP LLC Employee Handbook, which contained

15   similar prohibitions on the disclosure of confidential information and solicitation of

16   employees to those described in Paragraphs 61 and 62. The TWP LLC Employee Handbook

17   also contained a prohibition on the use of corporate property, information or position for

18   personal gain or competing with the firm.

19   64.  TWP LLC has performed all of its promises to Chakravarty under its employment

20   agreement with him, except to the extent that its performance was excused by Chakravarty's

21   breach of that agreement as described herein.

22   65.  Chakravarty breached the terms of his employment agreement with TWP LLC by

23   misappropriating TWP's Trade Secrets and other Confidential Information, providing it to

24   the BNP Defendants and using it to solicit employees of TWP's Discovery Research

25   business without TWP's knowledge or consent. This conduct also breached his agreement

26   not to use TWP's information or his position at TWP for personal gain at the expense of

27   TWP.

28   66.  As a direct and proximate result of Chakravarty's breaches of his employment

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

COMPLAINT

-16-

1 agreement with TWP LLC, TWP has been forced to shut down the Discovery Research

2 business and has been damaged in an amount to be proven at trial.

3

4
5

**THIRD CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**
**(Against Defendant Chakravarty)**

6 67. TWP realleges and incorporates herein by reference the allegations of Paragraphs

7 1 through 66, *supra*.

8 68. The employment agreement between Chakravarty and TWP LLC included an

9 implied covenant of good faith and fair dealing between the parties. This implied covenant

10 imposed a duty on Chakravarty not to do anything to deprive TWP LLC of the benefit of

11 that agreement.

12 69. Chakravarty's conduct, described above, constituted a breach of the implied

13 covenant of good faith and fair dealing.

14 70. Chakravarty's breaches of the implied covenant of good faith and fair dealing

15 have damaged TWP in an amount to be proven at trial.

16

17
18

**FOURTH CAUSE OF ACTION**
**(Intentional Interference With Employment Relationships)**
**(Against All Defendants)**

19 71. TWP realleges and incorporates herein by reference the allegations of Paragraphs

20 1 through 70, *supra*.

21 72. At all relevant times up to and including the date their employment with TW

22 International ended or will end, there existed or exists between TW International and the

23 Departing Discovery Research Employees an employment relationship with the probability

24 of future economic benefit to TWP. But for the conduct of Chakravarty and the BNP

25 Defendants, some or all of those employment relationships would have continued and TWP

26 would have continued to receive economic benefit.

27 73. Due to his position as senior manager at Discovery Research, Chakravarty knew

28 of the employment relationships existing between TW International and the Departing

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

COMPLAINT

-17-

1    Discovery Research Employees. TWP is informed and believes, and thereon alleges, that

2    the BNP Defendants were also aware of these employment relationships, and that

3    Chakravarty wrongfully disclosed to the BNP Defendants Confidential Employee

4    Information including, without limitation, the existence of said relationships, information

5    concerning the training, skill levels, capabilities and productivity of the Discovery Research

6    employees, and information concerning the salaries and benefits (including prospective

7    bonuses) of the Discovery Research employees.

8    74. TWP is informed and believes, and thereon alleges, that both prior to and after his

9    termination by TWP, Chakravarty, with the full knowledge, approval and assistance of the

10   BNP Defendants, improperly utilized TWP's Confidential Employee Information to "target"

11   the Departing Discovery Research Employees and to solicit them to leave Discovery

12   Research and accept positions at BNP Paribas Securities (Asia)'s India business with the

13   dual objectives of deliberately disrupting TWP's Discovery Research business, and of

14   obtaining a critical mass of skilled and trained equity research analysts and support staff for

15   an India-based equity research business without having to spend the money or time

16   necessary to create that venture from the ground up. Chakravarty and the BNP Defendants'

17   conduct in this regard was intentional, wrongful and designed to deliberately disrupt TWP's

18   business.

19   75. As a direct result of Chakravarty and the BNP Defendants' interference, the

20   Departing Discovery Research Employees all gave notice and/or ceased coming to work

21   between October 31 and November 6, 2007. In addition, the Departing Discovery Research

22   Employees have not abided by their contractual duty to continue working for 30 days after

23   giving notice.

24   76. As a direct result of Defendants' conduct, TWP has suffered damages in an

25   amount to be proven at trial.

26   77. The aforementioned acts of Defendants were oppressive, malicious and/or

27   fraudulent, thereby justifying an award of punitive damages.

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN

1

2

**FIFTH CAUSE OF ACTION**
**(Intentional Interference With Contract)**
**(Against All Defendants)**

3

4

78. TWP realleges and incorporates herein by reference the allegations of Paragraphs 1 through 77, *supra*.

5

6

7

8

79. During the relevant time period, TWP LLC had a contractual relationship with certain institutional investors whereby those investors received research reports from Discovery Research in exchange for a subscription fee. These contracts provided an economic benefit to TWP.

9

10

11

80. TWP is informed and believes, and thereon alleges, that the Defendants were aware of the existence of the contracts between TWP LLC and subscribers to Discovery Research.

12

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

13

14

15

16

17

81. TWP is informed and believes, and thereon alleges, that Chakravarty and the BNP Defendants improperly utilized TWP's Confidential Employee Information to "target" the Departing Discovery Research Employees and to solicit them to defect from TWP to BNP Paribas Securities (Asia)'s India business in order, in part, to disrupt deliberately TWP's Discovery Research business and negatively affect its ability to provide research services to its subscribers.

18

19

20

82. Defendants' conduct has so disrupted TWP's Discovery Research business that TWP has been forced to close that business, depriving it of further revenue from its existing contracts and causing it to refund money to its subscribers.

21

22

23

83. Defendants' conduct also has harmed TWP by imposing additional expenses on it and by causing an erosion of TWP's reputation and goodwill among its present and prospective subscribers.

24

25

84. Defendants' conduct in this regard was intentional, wrongful and designed to disrupt deliberately TWP's business.

26

27

85. The aforementioned acts were oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

28

1

2

**SIXTH CAUSE OF ACTION**
**(Intentional Interference With Prospective Economic Advantage)**
**(Against All Defendants)**

3

4

86.  TWP realleges and incorporates herein by reference the allegations of Paragraphs 1 through 85, *supra*.

5

6

7

8

9

87.  During the relevant time period, TWP LLC had current subscribers to its Discovery Research services that it wished to continue to sell services to after the expiration of those customers' subscription agreements.  TWP LLC also had a large number of relationships with prospective customers that would likely have resulted in those prospective customers subscribing to the Discovery Research service.

10

11

12

13

88.  TWP is informed and believes, and thereon alleges, that the Defendants were aware of the existence of the contracts between TWP LLC and Discovery Research subscribers, and of the relationships between TWP LLC and prospective Discovery Research subscribers.

14

15

16

17

18

19

89.  TWP is informed and believes, and thereon alleges, that Chakravarty and the BNP Defendants misappropriated and improperly utilized TWP's Confidential Employee Information to "target" the Departing Discovery Research Employees and to improperly solicit them to defect from TWP to BNP Paribas Securities (Asia)'s India business in order, in part, to disrupt deliberately TWP's Discovery Research business and negatively affect its ability to provide research services to its subscribers.

20

21

22

90.  Defendants' conduct has so disrupted TWP's Discovery Research business that TWP has been forced to close that business, depriving it of further revenue from its existing contracts and causing it to refund money to its subscribers.

23

24

25

91.  Defendants' conduct has harmed TWP by imposing additional expenses on it and by causing an erosion of TWP's reputation and goodwill among its present and prospective subscribers.

26

27

28

92.  Defendants' conduct has also made it impossible for TWP to derive any future revenue from the Discovery Research business, including to recoup the substantial investment it made in that business.

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

COMPLAINT

-20-

1    93.    Defendants' conduct in this regard was intentional, wrongful and designed to

2    disrupt deliberately TWP's business.

3    94.    The aforementioned acts were oppressive, malicious and/or fraudulent, thereby

4    justifying an award of punitive damages.

5

6                              **SEVENTH CAUSE OF ACTION**
                                **(Breach of Fiduciary Duty)**
7                            **(Against Defendant Chakravarty)**

8    95.    TWP realleges and incorporates herein by reference the allegations of Paragraphs

9    1 through 94, *supra*.

10    96.    By virtue of his employment with TWP and his position as Director of Discovery

11    Research, as well as pursuant to his written agreements with TWP LLC, Chakravarty

12    occupied a position of trust and confidence with TWP. By virtue of his position of trust,

13    Chakravarty had access to TWP's Confidential Information and Trade Secrets related to the

14    Discovery Research business.

15    97.    By engaging in the acts described above, Chakravarty misused his position of

16    trust and confidence, and his access to TWP's Confidential Information and Trade Secrets to

17    further his own interests and those of the BNP Defendants, and breached his fiduciary duties

18    to TWP.

19    98.    As a direct result of Chakravarty's breach of his fiduciary duties, TWP has

20    suffered harm in an amount to be proven at trial.

21    99.    Chakravarty's breach of fiduciary duties was willful and malicious and justifies

22    an award of punitive damages.

23

24                               **EIGHTH CAUSE OF ACTION**
                           **(Aiding and Abetting Breach of Fiduciary Duty)**
25                              **(Against The BNP Defendants)**

26
27    100.    TWP realleges and incorporates herein by reference the allegations of Paragraphs

     1 through 99, *supra*.
28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

COMPLAINT

-21-

1  101. Defendant Chakravarty owed a fiduciary duty to TWP, which he breached by
2  acting in the manner described above.

3  102. Defendants BNP Paribas and BNP Paribas Securities (Asia), and each of them,
4  aided and abetted Chakravarty's breach of fiduciary duty—they knew that Chakravarty's
5  provision to them of TWP's Confidential Information, and use of that information to
6  personally solicit the Departing Discovery Research Employees, constituted a breach of
7  fiduciary duty. By offering Chakravarty a job and a place for the Discovery Research team,
8  as well as financial incentives, the BNP Defendants gave substantial assistance or
9  encouragement to Chakravarty to breach his fiduciary duties.

10  103. As a direct result of the BNP Defendants' aiding and abetting of Chakravarty's
11  breach of his fiduciary duties, TWP has suffered harm in an amount to be proven at trial.

12  104. The BNP Defendants' aiding and abetting of Chakravarty's breach of his
13  fiduciary duties was willful and malicious and justifies an award of punitive damages.

14

15  **NINTH CAUSE OF ACTION**
   **(Civil Conspiracy)**
16  **(Against All Defendants)**

17  105. TWP realleges and incorporates herein by reference the allegations of Paragraphs
18  1 through 104, *supra*.

19  106. Defendant Chakravarty and the BNP Defendants together agreed to a scheme to
20  misappropriate TWP's Confidential Information and use that information to solicit the
21  Departing Discovery Research Employees to come to work for BNP Paribas Securities
22  (Asia)'s India business, thereby destroying the Discovery Research business. Defendants
23  knew that these actions were improper because, for example, they constituted a
24  misappropriation of trade secrets and a breach of Chakravarty's contractual and fiduciary
25  duties of confidentiality and loyalty. BNP Paribas and BNP Paribas Securities (Asia), and
26  each of them, agreed with Chakravarty that these wrongful acts should be committed and
27  intended that he commit them.

28  107. As a direct result of the BNP Defendants' conspiring in Chakravarty's wrongful

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
*A Professional Corporation*

1 acts as described above, TWP has suffered harm in an amount to be proven at trial.

2 108. The BNP Defendants' conspiring in Chakravarty's wrongful acts as described

3 above was willful and malicious and justifies an award of punitive damages.

4

5

**PRAYER**

WHEREFORE Plaintiffs pray for judgment against Defendants, and each of them, as

6

follows:

7

1. For an award of damages in an amount to be proven at trial;

8

2. For an order requiring that Defendants return all TWP Trade Secrets and/or

9

Confidential Information;

10

3. For exemplary damages pursuant to Civil Code Section 3426.3(c);

11

4. For punitive damages;

12

5. For attorneys' fees and costs pursuant to Civil Code Section 3426.4;

13

6. For an award of costs; and

14

7. For all other relief the Court deems just and proper.

15

16

17 DATED: December 6, 2007.

18         Respectfully,

19         GILBERT R. SEROTA
          MARK A. SHEFT

20         MICHAEL L. GALLO
          HOWARD RICE NEMEROVSKI CANADY

21         FALK & RABKIN
          A Professional Corporation

22

23         By:
              GILBERT R. SEROTA

24         Attorneys for Plaintiffs THOMAS WEISEL
          PARTNERS LLC and THOMAS WEISEL

25         INTERNATIONAL PRIVATE LIMITED

26

27

28

COMPLAINT

-23-

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

1    **DEMAND FOR JURY TRIAL**

2    Plaintiffs hereby demand a jury trial of all issues so triable as provided by Rule 38(a)

3    of the Federal Rules of Civil Procedure.

4

5    DATED: December 6, 2007.

6                                        Respectfully,

7                                        GILBERT R. SEROTA
                                         MARK A. SHEFT
8                                        MICHAEL L. GALLO
                                         HOWARD RICE NEMEROVSKI CANADY
9                                             FALK & RABKIN
                                         A Professional Corporation
10

11                                       By: _____
                                                  GILBERT R. SEROTA
12
                                         Attorneys for Plaintiffs THOMAS WEISEL
13                                       PARTNERS LLC and THOMAS WEISEL
                                         INTERNATIONAL PRIVATE LIMITED
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation