GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
MARK A. SHEFT (No. 183732)
Email: msheft@howardrice.com
MICHAEL L. GALLO (No. 220552)
Email: mgallo@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:   415/434-1600
Facsimile:   415/217-5910

Attorneys for Plaintiffs
THOMAS WEISEL PARTNERS LLC and
THOMAS WEISEL INTERNATIONAL
PRIVATE LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS WEISEL PARTNERS LLC, a Delaware limited liability company, and THOMAS WEISEL INTERNATIONAL PRIVATE LIMITED, an Indian company,<br><br>Plaintiffs,<br><br>v.<br><br>BNP PARIBAS, a French corporation, BNP PARIBAS SECURITIES (ASIA) LIMITED, a Hong Kong company, and PRAVEEN CHAKRAVARTY, an individual,<br><br>Defendants. | No. CV-07-06198 MHP<br><br>Action Filed:  December 6, 2007<br><br>JOINT INITIAL CASE MANAGEMENT CONFERENCE STATEMENT<br>(Local Rule 16-9)<br><br>Date: March 31, 2008<br>Time: 4:00 p.m.<br>Place: Courtroom G<br>Judge: Hon. Marilyn Hall Patel |

Plaintiffs Thomas Weisel Partners LLC ("TWP LLC") and Thomas Weisel International Private Limited ("TW International") (collectively "TWP") and Defendant BNP Paribas (along with TWP, the "Parties"), by and through their respective counsel, hereby jointly submit this Joint Initial Case Management Conference Statement pursuant to Local Rule 16-9. Defendant BNP Paribas Securities (Asia) Limited ("BNP Paribas (Asia)") has filed a motion to dismiss asserting that the Court lacks jurisdiction over it. In a Stipulation and [Proposed] Order filed on March 20, 2008, the BNP Paribas defendants requested that the Court postpone the due date of the Joint Initial Case Management Conference Statement until after the pending Motion to Dismiss for Lack of Jurisdiction and Forum Non Conveniens. Out of an excess of caution, BNP Paribas (Asia), which is based in Hong Kong, is not joining in this statement until the Court issues an Order on the March 20, 2008 Stipulation and [Proposed] Order. Defendant Praveen Chakravarty has not yet entered an appearance.[1]

**1.  Jurisdiction and Service:**

   **a. Subject Matter Jurisdiction:**

TWP alleges that the basis for this Court's subject matter jurisdiction over the claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. Section 1330, is 28 U.S.C. Section 1331 because that claim arises under the laws of the United States. The bases for this Court's subject matter jurisdiction over TWP's non-federal claims are alleged to be 28 U.S.C. Section 1332(a) (because the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs) and/or 28 U.S.C. Section 1367(a) (because those claims are so related to TWP's CFAA claims that they form part of the same case or controversy).

   **b. Personal Jurisdiction:**

TWP and BNP Paribas disagree as to whether this Court has personal jurisdiction over

---

[1] Chakravarty has been served and recently retained counsel. TWP has agreed in principle to grant Chakravarty an extension of time to respond to the First Amended Complaint.

Defendant BNP Paribas (Asia) and whether this Court is the appropriate forum for the resolution of TWP's claims. TWP believes that BNP Paribas (Asia) has sufficient contacts with California to invest this Court with both general and specific jurisdiction. Moreover, TWP contends that the nexus between California, the parties and the litigation compels the Court to honor TWP's decision to prosecute this action in the Northern District of California—where TWP LLC is headquartered.

The BNP Paribas Defendants have filed a motion (the "Jurisdiction Motion") that asserts (1) that BNP Paribas (Asia) lacks sufficient contacts with California to provide a basis for either specific or general jurisdiction and (2) that India would be a more convenient forum for this dispute.

Pursuant to a Stipulation and [Proposed] Order filed on March 20, 2008, the Parties have agreed that they will conduct discovery limited to issues raised by the Jurisdiction Motion prior to TWP's having to file an opposition to the Jurisdiction Motion. The plan for this discovery is discussed in Section 8, below.

**c. Service**:

The BNP Paribas Defendants and Chakravarty have been served. Counsel for the BNP Paribas Defendants agreed to accept service of the First Amended Complaint on behalf of their clients. Chakravarty has not yet appeared, but TWP's counsel hopes before the CMC to reach an agreement with Chakravarty's counsel that waives any challenge to the sufficiency either of the process served upon him or the service of process.

**2.   Facts:**

Plaintiff TWP LLC is an investment bank and broker-dealer headquartered in San Francisco, California. Plaintiff TW International is a subsidiary of TWP LLC headquartered in Mumbai, India.

Defendant BNP Paribas is headquartered in Paris, France. Defendant BNP Paribas (Asia) is headquartered in Hong Kong.

The Parties disagree as to some of the facts in this case; as a result, TWP and the BNP Paribas Defendants present separate statements of fact as follows:

**a. TWP's Statement of Alleged Facts:**

In mid-October 2007, two senior officers of the BNP Paribas Defendants, Pierre Rousseau and Jonathan Harris, met in Mumbai with Defendant Chakravarty, who was then serving as the Director of Research for TWP's Discovery Research business. Unknown to TWP and unauthorized by TWP, Chakravarty discussed with the BNP Paribas officers a plan to solicit Discovery Research's key employees to come to work for BNP Paribas (Asia). The BNP Paribas Defendants' apparent goal was to create their own India-based research business without substantial initial investment. On October 15, after the meeting, BNP Paribas (Asia)'s Harris[2] sent TWP's Chakravarty an e-mail outlining their scheme:

> Pierre [Rousseau] and I enjoyed meeting with you and your team on our recent trip. Of course we missed our flight by 10 minutes after leaving you at the Oberoi, but made it back to Hong Kong eventually.
>
> Pierre and I both came away feeling we had some good discussion and that there is a lot of complementary interest. As we discussed, the way we'd like to take this forward is to first identify the core group of your team. I think you said about 20-25 individuals. We'd like to then work on preparing employment documents for them. ***Once you have them and all is satisfactory, we'd look to you to resign from Thomas Weisel enmass. If their reaction is that they'd move to shut down the remainder of the office, we can step in and offer to take over the remainder as a gesture to save them the office shutdown costs.***
>
> First step would be to get from you a list of all employees, their current comp and job descriptions. Next I'd like you to highlight the 20 or 25 key individuals, and a bit more info on their job descriptions and background. For this group, please include an indication of what comp levels you would think about for their move to BNP Paribas. Once I get this from you, you and I can arrange for a call to talk through the info. (Emphasis added.)

Within three weeks of this meeting, seventeen core members of TWP's Discovery Research team resigned, crippling Discovery Research's ability to do business. On December 6, 2007, the raid by the BNP Paribas Defendants caused the very harm that Harris had anticipated in his e-mail: TWP was forced to shut down Discovery Research.

A. *Background of Discovery Research.*

TWP LLC first hired Defendant Chakravarty in 2003 as a Research Associate in its San Francisco office. From that day forward, Chakravarty had both contractual and

---

[2]Jonathan Harris is BNP Paribas (Asia)'s Regional Head of Company Research.

fiduciary duties to protect TWP's confidential information and to not use that information or his position to compete with TWP.

On or about October 1, 2005, Chakravarty was transferred from TWP LLC to TW International in Mumbai to help lead the effort to develop an innovative India-based equity research platform—called Discovery Research. TWP LLC's innovative business plan was to train Indian nationals as research analysts, help them obtain appropriate United States regulatory licenses and certifications, and assign them to write research reports about stocks traded on major U.S. exchanges. Discovery Research's products would be sold by TWP LLC in San Francisco to institutional investors in the United States and elsewhere.

From 2005 through the fall of 2007, TWP expanded Discovery Research to employ approximately 55 people. Of these 55 employees, 14 were licensed by NASD (now FINRA) as TWP analysts. These analysts published research on approximately 150 different companies whose stocks trade on U.S. exchanges and recently had initiated coverage of Indian companies. TWP's substantial investment in the education and training of its employees, especially its licensed analysts, was key to the success of the Discovery Research business. TWP also gathered, created and/or maintained, at considerable expense, a significant amount of proprietary information related to the Discovery Research business. This information was not public, and TWP took reasonable precautions to preserve and maintain the confidentiality of that information (the "Confidential Information").

*B. The BNP Paribas Defendants and Chakravarty's Plan.*

As the October 15 e-mail shows, while Chakravarty was employed by TWP and held the title of Director of Discovery Research, he conspired with senior officers of the BNP Paribas Defendants to disrupt the Discovery Research business through the unlawful misappropriation of TWP's Confidential Information and the wholesale "raiding" of NASD-licensed analysts from TWP. The BNP Paribas Defendants requested, and Chakravarty agreed to provide, a list of what Chakravarty considered to be the core members of the Discovery Research team, including Confidential Information about the qualifications, expertise and compensation of those team members. Chakravarty and the BNP Paribas

1  Defendants then misappropriated this Confidential Information to interview, solicit, and hire
2  Discovery Research employees.

3    *C. The En Masse Resignations.*

4    The conspiracy between Chakravarty and the BNP Paribas Defendants culminated
5  between October 21, 2007 and November 6, 2007, when seventeen Discovery Research
6  employees gave notice of their resignation from TWP.  Ten of the fourteen NASD-licensed
7  research analysts were among those who resigned; seven research associates also gave
8  notice.[3]

9    *D. BNP Paribas's New Research Business and the Shutdown of Discovery Research.*

10    On December 4, 2007, BNP Paribas (Asia) announced the launch of a 27-person
11  research securities research team in India under the leadership of Chakravarty.  A December
12  4, 2007 press statement reported that Chakravarty's new team would have ten research
13  analysts—the exact number of research analysts who left Discovery Research as part of the
14  en masse resignations.

15    Due to the near-simultaneous departure of most of its licensed analysts, TWP was
16  unable to produce timely research reports on many of the stocks covered by the Discovery
17  Research team.  As a result, on December 6, 2007, Discovery Research was shut down.

18    **b.  BNP Paribas Defendants' Statement of Alleged Facts:**

19    The BNP Paribas defendants have filed a motion to dismiss asserting that the Court lacks
20  jurisdiction over BNP Paribas (Asia) and that this case should be dismissed pursuant to the doctrine
21  of *forum non conveniens*.  **First**, plaintiffs' Complaint alleges claims that relate to conduct that
22  occurred exclusively in Asia.  This is an employment law dispute involving a Hong Kong
23  company—BNPP Asia—that allegedly recruited Indian nationals working in India for an Indian
24  company—Thomas Weisel International Private Limited ("TW India"), a subsidiary of plaintiff

---

[3] On November 4, 2007, TWP learned that Chakravarty had been planning to induce members of the Discovery Research team to leave with him and join BNP Paribas (Asia)'s India business.  TWP LLC terminated Chakravarty on November 7, 2007, effective immediately.

1   Thomas Weisel Partners LLC ("TW Partners").  The business plan behind Discovery Research was
2   to lower costs by outsourcing the research of U.S. companies, to a research operation located in
3   India.  Conversely, BNPP's Indian research company analyzes Indian stocks; it is not involved in
4   U.S. company research.  For reasons that are beyond the scope of this motion, the employees chose
5   to leave one Indian research operation for another.  None of those employees lived or worked in the
6   United States at the time the alleged events took place, and all of them are Indian citizens.

*Second*, none of the relevant companies have any connection to the U.S.

- BNPP Asia is a Hong Kong company with no operations in the United States.  It is not licensed to do business in the United States, has no property here, and has no employees based or working in the United States.

- BNPP is a French company.  Although it has operations in the United States, none of its employees who allegedly acted unlawfully live or work in the United States.

- TW India is an Indian company organized under the laws of India.  It has no operations, employees, or property in the United States.

Although plaintiff TW Partners is a U.S. company, its presence in the United States has no relevance to this analysis.  None of the conduct at issue is alleged to have taken place in the United States, and none of TW Partners' employees in the United States are alleged to be involved.

*Third*, there is no witness in the United States with any personal knowledge of the alleged conduct.  All of the witnesses with direct knowledge of the facts live and work outside the United States and most, if not all, are beyond the subpoena power of this Court.  Thus, virtually all of the discovery depositions will take place in Asia.  What is more, any depositions of third party fact witnesses located in India must be taken pursuant to the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention").  This will cause the parties to spend substantial time and effort on manifestly unnecessary work dealing with the intricacies of the Hague Convention.

1  *Fourth*, virtually all of the relevant documents are in Asia. Much, if not all, of the document production must therefore be in India, and any written discovery served on third parties must comply with the Hague Convention.

**3.  Legal Issues:**

**a.  TWP's Position**:

*Merits*:  TWP believes that a detailed discussion of the legal issues that will come before the Court regarding the merits of TWP's First Amended Complaint is premature; none of the Defendants has responded substantively to TWP's First Amended Complaint. However, TWP's First Amended Complaint presents claims under the following statutes and/or legal theories:  the Computer Fraud and Abuse Act, 18 U.S.C. Section 1030; California's Uniform Trade Secret Act, Civil Code Sections 3426-3426.11; breach of contract; breach of the covenant of good faith and fair dealing; intentional interference with employment relationships; intentional interference with contract; intentional interference with prospective economic relations; breach of fiduciary duty, aiding and abetting breach of fiduciary duty; and civil conspiracy.

*Jurisdiction*:  The BNP Paribas Defendants' Jurisdiction Motion argues that the Court has neither general nor specific personal jurisdiction over Defendant BNP Paribas (Asia). TWP disagrees, and will address the BNP Paribas Defendants' arguments fully in its opposition to the Jurisdiction Motion.  Among the authority that supports TWP's position on jurisdiction are the following cases:  *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004); *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122 (9th Cir. 2003); and *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082 (9th Cir. 2000).

**b.  BNP Paribas' Position:**

BNP Paribas asserts that the Court lacks jurisdiction over BNP Paribas (Asia) and that this case should be dismissed pursuant to the doctrine of *forum non conveniens*.  BNP Paribas believes that it and BNP Paribas Securities (Asia) acted lawfully in hiring the employees at issue, but agrees with TWP that any discussion of the merits of plaintiffs'

JOINT INITIAL CMC STATEMENT                                C-07-6198 MHP
-7-

claims should await a decision on the pending motion to dismiss.

**4.   Motions:**

On March 7, 2008, the BNP Paribas Defendants filed their Jurisdiction Motion, and noticed it for hearing on April 28, 2008. However, the Parties have filed a Stipulation and [Proposed] Order seeking to postpone the hearing in order to conduct jurisdictional discovery as outlined in Section 8, below. If the Court denies the Jurisdiction Motion, the BNP Defendants may file a motion to dismiss challenging the sufficiency of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The Parties are unable to predict whether they will bring further substantive motions.

**5.   Amendment of Pleadings:**

At the present time, TWP does not anticipate amending the complaint. However, TWP may find evidence in the course of its factual investigation or discovery that supports additional claims, or the bringing of its current claims against additional parties; TWP does not waive its right to bring such additional claims or add such additional parties. BNP has not yet filed any pleading aside from a motion to dismiss, so this section is inapplicable as to it.

**6.   Evidence Preservation:**

TWP and the BNP Paribas Defendants have undertaken steps to preserve evidence relevant to issues reasonably evident in this action, including the interdiction of any document-destruction program and any ongoing erasures of emails, voice mails and other electronically-recorded material.

**7.   Disclosures:**

The Parties have stipulated that they will postpone initial disclosures until after the Court rules on the BNP Paribas Defendants' Jurisdiction Motion.

**8.   Discovery:**

**a.   Stipulation Re Phased Discovery:** The Parties have stipulated to a phased approach to discovery, and their stipulation provides as follows:

The Parties will defer discovery directed solely to the merits of the issues in the

1  Complaint until the Court decides the BNP Paribas Defendants' Jurisdiction Motion.

2  The Parties may undertake discovery limited to issues raised by the Jurisdiction Motion
3  ("Jurisdictional Discovery").  The Parties' initial Jurisdictional Discovery will be limited to
4  requests for documents and interrogatories (the "Initial Jurisdictional Discovery") to be
5  served by March 24, 2008.  After receipt of responses to the Initial Jurisdictional Discovery,
6  TWP may seek to take up to two depositions.  If TWP deposes a witness during the
7  Jurisdictional Discovery period, the BNP Paribas Defendants may seek to take one
8  deposition during the same period.  Those depositions may not be necessary, and the BNP
9  Paribas Defendants are likely to object to such depositions.  The Parties will discuss the need
10 for such depositions within the period of Jurisdictional Discovery and seek to reach an
11 agreement that obviates the need for raising this issue with the Court.  The Parties may not
12 undertake additional Jurisdictional Discovery without mutual consent and/or leave of Court.

13 The Parties retain the right to object to any particular Jurisdictional Discovery request.
14 The Parties shall meet and confer promptly and in good faith to resolve issues and objections
15 that arise concerning Jurisdictional Discovery, and reserve their rights to litigate unresolved
16 issues and objections.  The Parties agree that any motions related to issues and objections
17 arising during Jurisdictional Discovery may be heard on shortened time.

18 **b. Rule 26(f) Proposed Discovery Plan:** The Parties propose the following discovery
19 plan:

20 *Initial Disclosures*: The Parties have stipulated that they will not be required to serve
21 initial disclosures until after the Court rules on the BNP Paribas Defendants' Jurisdiction
22 Motion.

23 *Discovery Scope and Schedule*: The Parties have agreed to defer merits discovery and
24 to proceed with Jurisdictional Discovery as set forth in the section above entitled
25 "Stipulation Re Phased Discovery."  The Parties further propose that if the Court denies the
26 Jurisdiction Motion, it concurrently schedule another Case Management Conference at
27 which time the Parties will be prepared to discuss a schedule for merits discovery.

28 *Electronic Discovery*: The Parties are generally agreeable to providing electronic

information in whatever format is most convenient for opposing counsel, provided that doing so is not unduly burdensome or expensive, and will negotiate in good faith to resolve any disputes. TWP's preference is to receive electronic documents in their native format.

*Privilege*: The Parties have agreed to negotiate in good faith the terms of a protective order, including possible procedures for the return of inadvertently produced privileged information, before the deadline for responding to the Parties' initial discovery requests.

*Discovery Limitations*: Other than the phased approach to discovery outlined above, the Parties do not presently believe that any particular limits on discovery are necessary

*Additional Orders*: Other than a possible protective order to be negotiated by the Parties, the Parties do not presently anticipate the need for the Court to enter additional discovery orders.

**9. Class Actions:**

This case is not a class action.

**10. Related Cases:**

There are no related cases.

**11. Relief:**

TWP seeks compensatory and consequential damages for loss of the value of its business that was destroyed by Defendants, recoupment of its investment in Discovery Research, loss of future revenues from Discovery Research, reputational damage and loss of goodwill. TWP also seeks damages based on the BNP Paribas Defendants' present and future unjust enrichment as a result of their having raided Discovery Research's employees and misappropriated TWP's trade secrets. TWP is unable to specify the amount of these damages at this early stage of the litigation. TWP also seeks treble and exemplary damages (for trade secret misappropriation under Civil Code Section 3426.3(c)), punitive damages, attorney's fees (under Civil Code Section 2426.4), and an order requiring Defendants to return all TWP trade secrets and/or confidential information.

The BNP Paribas Defendants contend that TWP is not entitled to any of the relief sought by its First Amended Complaint.

**12. Settlement and ADR:**

The Parties have had no settlement discussions and have not yet agreed on what form of ADR would be most likely to be effective. TWP believes that private mediation is the best available ADR option for this case, and that the ENE program would not be cost-effective. BNP Paribas is in general agreement with that position.

**13. Consent To Magistrate Judge For All Purposes:**

TWP already filed a Declination to Proceed Before a U.S. Magistrate Judge. The Parties do not consent to the assignment of this case to a Magistrate Judge.

**14. Other References:**

The Parties do not believe that this case is suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

**15. Narrowing Of Issues:**

At the present time, the Parties have no proposals regarding ways in which to narrow the issues in this case and make no request to bifurcate issues, claims or defenses.

**16. Expedited Schedule:**

The Parties do not believe that this case is suitable for handling on an expedited basis.

**17. Scheduling:**

The Parties agreed to defer discussion of a proposed schedule for merits discovery until after the Court rules on the BNP Paribas Defendants' Jurisdiction Motion. The Parties request that, if the Court denies the BNP Paribas Defendants' Jurisdiction Motion, it concurrently schedule another Case Management Conference at which time the Parties will be prepared to discuss a schedule for merits discovery.

**18. Trial:**

TWP has made a jury demand in this case. At this early stage of the litigation, the Parties believe it would be premature to estimate how long a trial of this action will take.

**19. Disclosure Of Non-Party Interested Entities Or Persons:**

TWP and the BNP Paribas Defendants have each filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.

TWP and the BNP Paribas Defendants identify below entities that they know to have either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding:

**TWP:**

- *Thomas Weisel International Private Limited* — Thomas Weisel International Private Limited is a Mumbai, India-based financial services firm. It is partially owned by Thomas Weisel Partners (Mauritius) and partially owned by Thomas Weisel Partners LLC;

- *Thomas Weisel Partners (Mauritius)* — Thomas Weisel Partners (Mauritius) is a 100% wholly owned subsidiary of Thomas Weisel Partners LLC;

- *Thomas Weisel Partners LLC* — Thomas Weisel Partners LLC is an investment bank and broker-dealer that is a 100% wholly owned subsidiary of Thomas Weisel Partners Group, Inc.; and

- *Thomas Weisel Partners Group, Inc.* — Thomas Weisel Partners Group, Inc. is a publicly-traded financial services holding company.

**BNP Paribas Defendants:**

Other than the named parties, there is no such interest to report.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: March 21, 2007 | GILBERT R. SEROTA |
| 3 | | MARK A. SHEFT |
| | | MICHAEL L. GALLO |
| 4 | | HOWARD RICE NEMEROVSKI CANADY |
| 5 | | FALK & RABKIN |
| | | A Professional Corporation |
| 6 | | By: _____/s/_____ |
| 7 | | GILBERT R. SEROTA |
| 8 | | Attorneys for Plaintiffs |
| | | THOMAS WEISEL PARTNERS LLC |
| 9 | | and THOMAS WEISEL |
| | | INTERNATIONAL PRIVATE |
| 10 | | LIMITED |
| 11 | | |
| 12 | Dated: March 21, 2007 | JOSEPH E. ADDIEGO, III |
| | | DAVIS WRIGHT TREMAINE LLP |
| 13 | | LEIV BLAD |
| 14 | | CLIFFORD CHANCE |
| | | By: _____/s/_____ |
| 15 | | JOSEPH E. ADDIEGO, III |
| 16 | | Attorneys for Defendants BNP |
| | | PARIBAS and BNP PARIBAS |
| 17 | | SECURITIES (ASIA) LIMITED |

JOINT INITIAL CMC STATEMENT                           C-07-6198 MHP

-13-