# EXHIBIT A

Discovery Research

## Research Services Agreement

This Agreement, dated __December 22__, 20__06__ is between Thomas Weisel Partners LLC ("Research Vendor"), and _____ ("Account").

WHEREAS, Research Vendor and Account hereby enter into an arrangement for Research Vendor to furnish Account with Research (as defined below) on the terms, and subject to the conditions, described herein.

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein, and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. **Research Products and Payment Obligations.**

   a) Research Vendor hereby grants to Account a non-exclusive, non-transferable right to receive all Thomas Weisel International Discovery Research Products (the "Research").

   b) Account shall assume the obligation to pay for the Research at a cost of $ __7,500__ per __Quarter__. Account shall pay this amount directly, or cause such payments to be made on its behalf by a broker-dealer (a "Soft-Dollar Broker") with which Account has entered into an arrangement pursuant to Section 28(e) of the Securities Exchange Act of 1934, as amended. If Account elects to make this payment directly, Research Vendor will bill Account directly on a __Quarterly__ basis for the Research. If Account elects to have Soft-Dollar Broker Account may payments on Account's behalf, Research Vendor will bill either Account or Soft-Dollar Broker, as directed by Account.

2. **Agreements of Account.** Account acknowledges and agrees that:

   a) the Research does not purport to meet the objectives or needs of Account and is provided to Account for informational purposes only;

   b) Research Vendor shall have no responsibility whatsoever for (x) ascertaining the essential facts regarding the financial condition, investment objectives, and relative sophistication of Account or (y) determining whether the Research is suitable for Account;

   c) Account intends to incorporate the Research, as well as other data, information and analysis received from other sources or produced internally, into a mix of information and analysis for the purpose of forming its own conclusions and making its own investment decisions;

   d) the opinions expressed in the Research are subject to change without notice and may not be suitable for all types of investors;

   e) Account will not distribute or otherwise make available the Research to any third-party without the prior written consent of Research Vendor;

   f) Account will take the same care to preserve the confidentiality of the Research as it uses with its own confidential information;

   g) nothing herein shall obligate Research Vendor to produce any specific research report or cover any specific industry, issuer or security;

   h) Account does not, by virtue of this Agreement or otherwise, obtain any right, title or interest in or to the Research, and all right, title and interest therein, and in and to any proprietary data contained therein, shall remain with Research Vendor; and

   i) Account does not have the authority to grant to any third-party a license or consent or the right to use the Research.

www.discovery-research.com

**REDACTED**

TWPL00001274




3. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. The parties agree and consent that the jurisdiction and venue of all matters relating to this Agreement shall be vested exclusively in the federal, state and local courts situated in the State of New York, without giving effect to its or any other jurisdiction's conflicts of laws, principles or rules. The parties further agree that the service of process by certified mail shall constitute personal service and shall result in jurisdiction over the parties.

4. **No Assignment.** Account may not assign this Agreement or any of its rights or obligations hereunder without permission of the Research Vendor.

5. **Term.** This Agreement is effective as of _Jan 1_, 20_07_ and shall continue until terminated pursuant to Paragraph 5, below.

6. **Termination.** This agreement will terminate on _July 1_, 20_07_. Any payment obligation existing at the time of such termination shall remain the sole obligation of Account. Either party may terminate this Agreement at any time by providing at least 30 days notice to the other party.

7. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, discussions and understandings of the parties, whether written or oral, between the parties. Should any provision of this Agreement be determined to be void, invalid or otherwise unenforceable by any court or tribunal of competent jurisdiction, such determination shall not affect the remaining provisions hereof which shall remain in full force and effect. No waiver or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the parties.

8. **Disclaimer and Limitation of Liability.** THERE ARE NO EXPRESS OR IMPLIED WARRANTIES MADE BY EITHER PARTY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9. **Independent Contractor.** The parties are independent contractors, and no agency, partnership, joint venture, employee-employer or franchisee-franchisor relationship is intended or created by this Agreement. Neither party shall have any right, power or authority to create or represent to any person that it has the power to create any obligation, express or implied, or make any representations or warranties on behalf of the other party.

10. **Miscellaneous.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Account's clients are not third party beneficiaries of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized respective officers as of the day and year first above written.

[ACCOUNT]

By: [Name]
    [Title]

THOMAS WEISEL PARTNERS LLC

By: [Name]       *(signature)* DON MAHON
    [Title]                     VP Institutional Sales

---

www.discovery-research.com

**REDACTED**                                                        TOTAL P.03

TWPL00001275

## AMENDMENT

This Amendment dated December 20, 2006 shall amend the Research Services ("Agreement") between _____ (including its subsidiaries and affiliates) ("Account") and Thomas Weisel Partners LLC ("Research Vendor").

The parties hereto agree that the following additions, changes and/or modifications shall be effective for all services and Research provided by Research Vendor to Account pursuant to the Agreement.

   1. The following section entitled "Warranty and Indemnity" shall be added to the Agreement and shall be applicable notwithstanding conflicting provisions of the Agreement.

   <u>Warranty and Indemnity</u>

      A. Research Vendor hereby represents and warrants to Account that it owns or has the right to provide the Research provided to Account hereunder.

      B. Notwithstanding any limitations of liability, Research Vendor shall, and hereby agrees to indemnify, defend and hold Account harmless from and against all claims, actions, damages, liabilities, costs and expenses (including, but not limited to, reasonable attorney's fees and expenses arising out of the defense of any claim whether proven or not) arising in any way out of a claim or allegation that the Research provided to Account pursuant to the Agreement infringes upon or violates any patent, copyright, trade secret or other proprietary right of a third party. The indemnities in this Section shall continue in full force and effect notwithstanding the termination of the Agreement, whether by time, operation of law or otherwise.

      C. IN NO EVENT SHALL ACCOUNT BE LIABLE FOR ANY DIRECT DAMAGES UNDER THIS CONTRACT NO MATTER HOW CHARACTERIZED IN EXCESS OF ONE MILLION DOLLARS ($1,000,000.00).

   2. Notwithstanding any provision to the contrary in the Agreement, agents, independent contractors and other third parties performing services for Account shall be entitled to use and access the Research for the benefit of Account.

   3. Notwithstanding any provision to the contrary in the Agreement Account may assign this Agreement to an affiliate, subsidiary or any entity owned or controlled by Account or under common control with Account, or pursuant to a merger, consolidation, demutualization, change of control or corporate reorganization upon notice to Research Vendor.

   4. Except as amended herein, all terms and conditions of the Agreement between the parties shall remain in full force and effect.

Agreed to and accepted by:                          Agreed to and accepted by:

("Account")                                         ("Research Vendor") Thomas
                                                    Weisel Partners LLC

By: _____                           By: _____

Name:                                               Name: _____
Title:                                              Title: _____

Date: December 20, 2006                             Date: 12/20/06

**REDACTED**

**Research Services Agreement**

This Agreement, dated December 20, 2006 is between Thomas Weisel Partners LLC ("Research Vendor"), and _____ ("Account").

WHEREAS, Research Vendor and Account hereby enter into an arrangement for Research Vendor to furnish Account with Research (as defined below) on the terms, and subject to the conditions, described herein.

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein, and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. Research Products and Payment Obligations.

   a. Research Vendor hereby grants to Account a non-exclusive, non-transferable right to receive all Thomas Weisel International Discovery Research Products (the "Research").

   b. Account shall assume the obligation to pay for the Research at a cost of $$60,000 per year. Account shall pay this amount directly, or cause such payments to be made on its behalf by a broker-dealer (a "Soft-Dollar Broker") with which Account has entered into an arrangement pursuant to Section 28(e) of the Securities Exchange Act of 1934, as amended. If Account elects to make this payment directly, Research Vendor will bill Account directly on a _xxxxxxxxx basis for the Research. If Account elects to have Soft-Dollar Broker make payments on Account's behalf, Research Vendor will bill either Account or Soft-Dollar Broker, as directed by Account.

2. Agreements of Account. Account acknowledges and agrees that:

   a. the Research does not purport to meet the objectives or needs of Account and is provided to Account for informational purposes only;

   b. Research Vendor shall have no responsibility whatsoever for (x) ascertaining the essential facts regarding the financial condition, investment objectives, and relative sophistication of Account or (y) determining whether the Research is suitable for Account;

   c. Account intends to incorporate the Research, as well as other data, information and analysis received from other sources or produced internally, into a mix of information and analysis for the purpose of forming its own conclusions and making its own investment decisions;

   d. the opinions expressed in the Research are subject to change without notice and may not be suitable for all types of investors;

   e. Account will not distribute or otherwise make available the Research to any third-party without the prior written consent of Research Vendor;

   f. Account will take the same care to preserve the confidentiality of the Research as it uses with its own confidential information;

**REDACTED**

TWPL00001318

  g. nothing herein shall obligate Research Vendor to produce any specific research report or cover any specific industry, issuer or security;

  h. Account does not, by virtue of this Agreement or otherwise, obtain any right, title or interest in or to the Research, and all right, title and interest therein, and in and to any proprietary data contained therein, shall remain with Research Vendor; and

  i. Account does not have the authority to grant to any third-party a license or consent or the right to use the Research.

2. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. The parties agree and consent that the jurisdiction and venue of all matters relating to this Agreement shall be vested exclusively in the federal, state and local courts situated in the State of New York, without giving effect to its or any other jurisdiction's conflicts of laws, principles or rules. The parties further agree that the service of process by certified mail shall constitute personal service and shall result in jurisdiction over the parties.

3. <u>No Assignment</u>. Account may not assign this Agreement or any of its rights or obligations hereunder without permission of the Research Vendor.

4. <u>Term</u>. This Agreement is effective as of _____, 20___ and shall continue until terminated pursuant to Paragraph 5, below.

5. <u>Termination</u>. Any payment obligation existing at the time of such termination shall remain the sole obligation of Account. This Agreement will be automatically renewable for successive one-year terms and either party may terminate this Agreement at any time by providing at least 30 days notice to the other party.

6. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, discussions and understandings of the parties, whether written or oral, between the parties. Should any provision of this Agreement be determined to be void, invalid or otherwise unenforceable by any court or tribunal of competent jurisdiction, such determination shall not affect the remaining provisions hereof which shall remain in full force and effect. No waiver or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the parties.

7. <u>Disclaimer and Limitation of Liability</u>. THERE ARE NO EXPRESS OR IMPLIED WARRANTIES MADE BY EITHER PARTY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8. <u>Independent Contractor</u>. The parties are independent contractors, and no agency, partnership, joint venture, employee-employer or franchisee-franchisor relationship is intended or created by this Agreement. Neither party shall have any right, power or authority to create or represent to any person that it has the power to create any obligation, express or implied, or make any representations or warranties on behalf of the other party.

2

9. <u>Miscellaneous</u>. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Account's clients are not third party beneficiaries of this Agreement.

TWPL00001320

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized respective officers as of the day and year first above written.

By: _____   _____

THOMAS WEISEL PARTNERS LLC

By: _____

4

**REDACTED**

TWPL00001321



Discovery Research
Thomas Weisel International

## Research Services Agreement

This Agreement, dated December 7, 2006 is between Thomas Weisel Partners LLC ("Research Vendor"), and _____ ("Account").

WHEREAS, Research Vendor and Account hereby enter into an arrangement for Research Vendor to furnish Account with Research (as defined below) on the terms, and subject to the conditions, described herein.

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein, and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. **Research Products and Payment Obligations.**

   a) Research Vendor hereby grants to Account a non-exclusive, non-transferable right to receive all Thomas Weisel International Discovery Research Products (the "Research").

   b) Account shall assume the obligation to pay for the Research at a cost of $ 15,000 per Quarter. Account shall pay this amount directly, or cause such payments to be made on its behalf by a broker-dealer (a "Soft-Dollar Broker") with which Account has entered into an arrangement pursuant to Section 28(e) of the Securities Exchange Act of 1934, as amended. If Account elects to make this payment directly, Research Vendor will bill Account directly on a Quarterly basis for the Research. If Account elects to have Soft-Dollar Broker Account may payments on Account's behalf, Research Vendor will bill either Account or Soft-Dollar Broker, as directed by Account.

2. **Agreements of Account.** Account acknowledges and agrees that:

   a) the Research does not purport to meet the objectives or needs of Account and is provided to Account for informational purposes only;

   b) Research Vendor shall have no responsibility whatsoever for (x) ascertaining the essential facts regarding the financial condition, investment objectives, and relative sophistication of Account or (y) determining whether the Research is suitable for Account;

   c) Account intends to incorporate the Research, as well as other data, information and analysis received from other sources or produced internally, into a mix of information and analysis for the purpose of forming its own conclusions and making its own investment decisions;

   d) the opinions expressed in the Research are subject to change without notice and may not be suitable for all types of investors;

   e) Account will not distribute or otherwise make available the Research to any third-party without the prior written consent of Research Vendor;

   f) Account will take the same care to preserve the confidentiality of the Research as it uses with its own confidential information;

   g) nothing herein shall obligate Research Vendor to produce any specific research report or cover any specific industry, issuer or security;

   h) Account does not, by virtue of this Agreement or otherwise, obtain any right, title or interest in or to the Research, and all right, title and interest therein, and in and to any proprietary data contained therein, shall remain with Research Vendor; and

   i) Account does not have the authority to grant to any third-party a license or consent or the right to use the Research.

www.discovery-research.com

**REDACTED**

TWPL00001345



3. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. The parties agree and consent that the jurisdiction and venue of all matters relating to this Agreement shall be vested exclusively in the federal, state and local courts situated in the State of New York, without giving effect to its or any other jurisdiction's conflicts of laws, principles or rules. The parties further agree that the service of process by certified mail shall constitute personal service and shall result in jurisdiction over the parties.

4. **No Assignment.** Account may not assign this Agreement or any of its rights or obligations hereunder without permission of the Research Vendor.

5. **Term.** This Agreement is effective as of  January 1 , 200 7 and shall continue until terminated pursuant to Paragraph 6, below.

6. **Termination.** This agreement will terminate on December 31 , 20 07. Any payment obligation existing at the time of such termination shall remain the sole obligation of Account. Either party may terminate this Agreement at any time by providing at least 30 days notice to the other party.

7. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, discussions and understandings of the parties, whether written or oral, between the parties. Should any provision of this Agreement be determined to be void, invalid or otherwise unenforceable by any court or tribunal of competent jurisdiction, such determination shall not affect the remaining provisions hereof which shall remain in full force and effect. No waiver or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the parties.

8. **Disclaimer and Limitation of Liability.** THERE ARE NO EXPRESS OR IMPLIED WARRANTIES MADE BY EITHER PARTY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9. **Independent Contractor.** The parties are independent contractors, and no agency, partnership, joint venture, employee-employer or franchisee-franchisor relationship is intended or created by this Agreement. Neither party shall have any right, power or authority to create or represent to any person that it has the power to create any obligation, express or implied, or make any representations or warranties on behalf of the other party.

10. **Miscellaneous.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Account's clients are not third party beneficiaries of this Agreement.

   IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized respective officers as of the day and year first above written.

   [ACCOUNT]

   By: [Name]
   [Title]

   THOMAS WEISEL PARTNERS LLC

   By: [Name]    Don Morton
   [Title]    VP, Sales Supervision

---

www.discovery-research.com

**REDACTED**

## Research Services Agreement

This Agreement, dated  October 30   , 20 06  is between Thomas Weisel Partners LLC ("Research Vendor"), and _____ ("Account").

WHEREAS, Research Vendor and Account hereby enter into an arrangement for Research Vendor to furnish Account with Research (as defined below) on the terms, and subject to the conditions, described herein.

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein, and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. **Research Products and Payment Obligations.**

   a. Research Vendor hereby grants to Account a non-exclusive, non-transferable right to receive all Thomas Weisel International Discovery Research Products (the "Research"). You will initially be receiving the product during its Beta phase. "Beta" is the phase in which the product is nearly complete but some things still might not be in the final form and format. The Beta product is released to a group of people, called "beta testers", who use it and then report anything they find that still needs to be fixed. Investors should consider the Beta nature of this report in making any investment decisions. (Please note: The Beta phase is currently scheduled to end effective Nov. 2, 2006).

   b. Account shall assume the obligation to pay for the Research at a cost of $ 4167  per  month . Research Vendor agrees that it will bill Account directly on a   monthly   basis for the Research.

2. **Agreements of Account.** Account acknowledges and agrees that:

   a. the Research does not purport to meet the objectives or needs of Account and is provided to Account for informational purposes only;

   b. Research Vendor shall have no responsibility whatsoever for (x) ascertaining the essential facts regarding the financial condition, investment objectives, and relative sophistication of Account or (y) determining whether the Research is suitable for Account;

   c. Account intends to incorporate the Research, as well as other data, information and analysis received from other sources or produced internally, into a mix of information and analysis for the purpose of forming its own conclusions and making its own investment decisions;

   d. the opinions expressed in the Research are subject to change without notice and may not be suitable for all types of investors;

   e. Account will not distribute or otherwise make available the Research to any third-party without the prior written consent of Research Vendor;

   f. Account will take the same care to preserve the confidentiality of the Research as it uses with its own confidential information;

**REDACTED**

TWPL00001359

  g. nothing herein shall obligate Research Vendor to produce any specific research report or cover any specific industry, issuer or security;

  h. Account does not, by virtue of this Agreement or otherwise, obtain any right, title or interest in or to the Research, and all right, title and interest therein, and in and to any proprietary data contained therein, shall remain with Research Vendor; and

  i. Account does not have the authority to grant to any third-party a license or consent or the right to use the Research.

  2.  <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. The parties agree and consent that the jurisdiction and venue of all matters relating to this Agreement shall be vested exclusively in the federal, state and local courts situated in the State of New York, without giving effect to its or any other jurisdiction's conflicts of laws, principles or rules. The parties further agree that the service of process by certified mail shall constitute personal service and shall result in jurisdiction over the parties.

  3.  <u>No Assignment</u>. Account may not assign this Agreement or any of its rights or obligations hereunder without permission of the Research Vendor.

  4.  <u>Term</u>. This Agreement is effective as of _September 1st_, 20_06_ and shall continue until terminated pursuant to Paragraph 5, below.

  5.  <u>Termination</u>. This agreement will terminate on _December 31st_, 20_06_. Any payment obligation existing at the time of such termination shall remain the sole obligation of Account. The Account may terminate this Agreement at any time during the second half of the term of the agreement by providing at least 30 days notice to the Research Vendor.

  6.  <u>Entire Agreement</u>. This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, discussions and understandings of the parties, whether written or oral, between the parties. Should any provision of this Agreement be determined to be void, invalid or otherwise unenforceable by any court or tribunal of competent jurisdiction, such determination shall not affect the remaining provisions hereof which shall remain in full force and effect. No waiver or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the parties.

  7.  <u>Disclaimer and Limitation of Liability</u>. THERE ARE NO EXPRESS OR IMPLIED WARRANTIES MADE BY EITHER PARTY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

  8.  <u>Independent Contractor</u>. The parties are independent contractors, and no agency, partnership, joint venture, employee-employer or franchisee-franchisor relationship is intended or created by this Agreement. Neither party shall have any right, power or authority to create or represent to any person that it has the power to create any obligation, express or implied, or make any representations or warranties on behalf of the other party.

- 2 -

TWPL00001360

9. <u>Miscellaneous</u>. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Account's clients are not third party beneficiaries of this Agreement.

- 3 -

TWPL00001361

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized respective officers as of the day and year first above written.

[ACCOUNT]

By: _____[Name]_____
    [Title]

THOMAS WEISEL PARTNERS LLC

By: _____[Name]_____
    [Title]

-4-

**REDACTED**

TWPL00001362





Discovery Research

## Research Services Agreement

This Agreement, dated <u>January 3, 2007</u> is between Thomas Weisel Partners LLC ("Research Vendor"), and _____ ("Account").

WHEREAS, Research Vendor and Account hereby enter into an arrangement for Research Vendor to furnish Account with Research (as defined below) on the terms, and subject to the conditions, described herein.

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein, and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. **Research Products and Payment Obligations.**

    a) Research Vendor hereby grants to Account a non-exclusive, non-transferable right to receive all Thomas Weisel International Discovery Research Products (the "Research").

    b) Account shall assume the obligation to pay for the Research at a cost of $60,000 per year. Account shall pay this amount directly, or cause such payments to be made on its behalf by a broker-dealer (a "Soft-Dollar Broker") with which Account has entered into an arrangement pursuant to Section 28(e) of the Securities Exchange Act of 1934, as amended. If Account elects to make this payment directly, Research Vendor will bill Account directly on a quarterly basis for the Research. If Account elects to have Soft-Dollar Broker Account may payments on Account's behalf, Research Vendor will bill either Account or Soft-Dollar Broker, as directed by Account.

2. **Agreements of Account.** Account acknowledges and agrees that:

    a) the Research does not purport to meet the objectives or needs of Account and is provided to Account for informational purposes only;

    b) Research Vendor shall have no responsibility whatsoever for (x) ascertaining the essential facts regarding the financial condition, investment objectives, and relative sophistication of Account or (y) determining whether the Research is suitable for Account;

    c) Account intends to incorporate the Research, as well as other data, information and analysis received from other sources or produced internally, into a mix of information and analysis for the purpose of forming its own conclusions and making its own investment decisions;

    d) the opinions expressed in the Research are subject to change without notice and may not be suitable for all types of investors;

    e) Account will not distribute or otherwise make available the Research to any third-party without the prior written consent of Research Vendor;

    f) Account will take the same care to preserve the confidentiality of the Research as it uses with its own confidential information;

    g) nothing herein shall obligate Research Vendor to produce any specific research report or cover any specific industry, issuer or security;

    h) Account does not, by virtue of this Agreement or otherwise, obtain any right, title or interest in or to the Research, and all right, title and interest therein, and in and to any proprietary data contained therein, shall remain with Research Vendor; and

    i) Account does not have the authority to grant to any third-party a license or consent or the right to use the Research.

---

www.discovery-research.com

**REDACTED**

TWPL00001400





3. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. The parties agree and consent that the jurisdiction and venue of all matters relating to this Agreement shall be vested exclusively in the federal, state and local courts situated in the State of New York, without giving effect to its or any other jurisdiction's conflicts of laws, principles or rules. The parties further agree that the service of process by certified mail shall constitute personal service and shall result in jurisdiction over the parties.

4. **No Assignment.** Account may not assign this Agreement or any of its rights or obligations hereunder without permission of the Research Vendor.

5. **Term.** This Agreement is effective as of January 4, 2007 and shall continue until terminated pursuant to Paragraph 5. below.

6. **Termination.** This agreement will terminate on January 4, 2008. Any payment obligation existing at the time of such termination shall remain the sole obligation of Account. Either party may terminate this Agreement at any time by providing at least 30 days notice to the other party.

7. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, discussions and understandings of the parties, whether written or oral, between the parties. Should any provision of this Agreement be determined to be void, invalid or otherwise unenforceable by any court or tribunal of competent jurisdiction, such determination shall not affect the remaining provisions hereof which shall remain in full force and effect. No waiver or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the parties.

8. **Disclaimer and Limitation of Liability.** THERE ARE NO EXPRESS OR IMPLIED WARRANTIES MADE BY EITHER PARTY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9. **Independent Contractor.** The parties are independent contractors, and no agency, partnership, joint venture, employee-employer or franchisee-franchisor relationship is intended or created by this Agreement. Neither party shall have any right, power or authority to create or represent to any person that it has the power to create any obligation, express or implied, or make any representations or warranties on behalf of the other party.

10. **Miscellaneous.** This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Account's clients are not third party beneficiaries of this Agreement.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized respective officers as of the day and year first above written.

[ACCOUNT]

By: [Name]
    [Title]

THOMAS WEISEL PARTNERS LLC

By: [Name]    /s/ Don Manton
    [Title]   VP, Institutional Sales

www.discovery-research.com

**REDACTED**

TWPL00001401

## Consulting Services Agreement

This Agreement, dated __October 15, 2007__ is between Thomas Weisel Partners LLC ("Vendor"), and __ _____ ("Account").

WHEREAS, Vendor and Account hereby enter into an arrangement for Vendor to furnish Account with Services (as defined below) on the terms, and subject to the conditions, described herein.

NOW THEREFORE, in consideration of the promises and the mutual covenants contained herein, and for good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1. Services and Payment Obligations.

   a. Vendor hereby grants to Account a non-transferable right to receive Thomas Weisel International Consulting Services (the "Product").

   b. The Product may consist of any of the following: Channel Checks, Initiations, Valuation Analyses, White Papers, Industry Overviews, Modeling, and Transaction Analyses

   c. Account shall assume the obligation to pay for the Product at a cost of $ __15,000__ for __100 hours of consulting services in 4Q 2007__. Vendor will bill Account directly on a __hard dollar__ basis for the Research.

2. Agreements of Account. Account acknowledges and agrees that:

   a. the Product does not purport to meet the objectives or needs of Account and is provided to Account for informational purposes only;

   b. Vendor shall have no responsibility whatsoever for (x) ascertaining the essential facts regarding the financial condition, investment objectives, and relative sophistication of Account or (y) determining whether the Services are suitable for Account;

   c. Account intends to incorporate the Product, as well as other data, information and analysis received from other sources or produced internally, into a mix of information and analysis for the purpose of forming its own conclusions and making its own investment decisions;

   d. any opinions expressed in the Product provided are subject to change without notice and may not be suitable for all types of investors;

   e. Account will not distribute or otherwise make available the Product to any third-party without the prior written consent of Vendor;

   f. Account will take the same care to preserve the confidentiality of the Product as it uses with its own confidential information;

   g. nothing herein shall obligate Vendor to produce any specific Product or cover any specific industry, issuer or security;

**REDACTED**

TWPL00001414

  h. Account does not, by virtue of this Agreement or otherwise, obtain any right, title or interest in or to the Product, and all right, title and interest therein, and in and to any proprietary data contained therein, shall remain with Vendor; and

  i. Account does not have the authority to grant to any third-party a license or consent or the right to use the Product.

2. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflicts of laws principles thereof. The parties agree and consent that the jurisdiction and venue of all matters relating to this Agreement shall be vested exclusively in the federal, state and local courts situated in the State of New York, without giving effect to its or any other jurisdiction's conflicts of laws, principles or rules. The parties further agree that the service of process by certified mail shall constitute personal service and shall result in jurisdiction over the parties.

3. <u>No Assignment.</u> Account may not assign this Agreement or any of its rights or obligations hereunder without permission of the Vendor.

4. <u>Term.</u> This Agreement is effective as of __October 1__, __2007__ and shall continue until terminated pursuant to Paragraph 5, below.

5. <u>Termination.</u> This agreement will terminate on __Jan 1__, __2008__. Any payment obligation existing at the time of such termination shall remain the sole obligation of Account. Either party may terminate this Agreement at any time by providing at least 30 days notice to the other party.

6. <u>Entire Agreement.</u> This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous negotiations, discussions and understandings of the parties, whether written or oral, between the parties. Should any provision of this Agreement be determined to be void, invalid or otherwise unenforceable by any court or tribunal of competent jurisdiction, such determination shall not affect the remaining provisions hereof which shall remain in full force and effect. No waiver or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the parties.

7. <u>Disclaimer and Limitation of Liability.</u> THERE ARE NO EXPRESS OR IMPLIED WARRANTIES MADE BY EITHER PARTY, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

8. <u>Independent Contractor.</u> The parties are independent contractors, and no agency, partnership, joint venture, employee-employer or franchisee-franchisor relationship is intended or created by this Agreement. Neither party shall have any right, power or authority to create or represent to any person that it has the power to create any obligation, express or implied, or make any representations or warranties on behalf of the other party.

-2-

TWPL00001415

9. <u>Miscellaneous</u>. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument. Account's clients are not third party beneficiaries of this Agreement.

-3-

TWPL00001416

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized respective officers as of the day and year first above written.

[ACCOUNT]

By   [Name]
       [Title]

THOMAS WEISEL PARTNERS LLC

*K. Dhillon*

By:  [Name] K. DHILLON
      [Title] MANAGING DIRECTOR

-4-

**REDACTED**

TWPL00001417