GILBERT R. SEROTA (No. 75305)
Email: gserota@howardrice.com
MARK A. SHEFT (No. 183732)
Email: msheft@howardrice.com
MICHAEL L. GALLO (No. 220552)
Email: mgallo@howardrice.com
HOWARD RICE NEMEROVSKI CANADY
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4024
Telephone:   415/434-1600
Facsimile:   415/217-5910

Attorneys for Plaintiffs
THOMAS WEISEL PARTNERS LLC and
THOMAS WEISEL INTERNATIONAL
PRIVATE LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS WEISEL PARTNERS LLC, a Delaware limited liability company, and THOMAS WEISEL INTERNATIONAL PRIVATE LIMITED, an Indian company,<br><br>Plaintiffs,<br><br>v.<br><br>BNP PARIBAS, a French corporation, BNP PARIBAS SECURITIES (ASIA) LIMITED, a Hong Kong company, and PRAVEEN CHAKRAVARTY, an individual,<br><br>Defendants. | No. C-07-06198 MHP<br><br>Action Filed:  December 6, 2007<br><br>DECLARATION OF JUSTICE (RET.) S. K. DESAI IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS<br><br>Hearing date: August 18, 2008<br>Time: 2:00 p.m.<br>Courtroom: 15<br>Judge: Hon. Marilyn Hall Patel |

DESAI DECL. IN OPPOSITION TO MOTION TO DISMISS NO. C-07-06198 MHP

## I. INTRODUCTION

I, S. K. Desai, declare as follows:

1.  I make this Declaration upon personal knowledge and, if called upon to testify, could and would testify competently hereto.

2.  I obtained B.A. and LL. B. degrees from the University of Bombay in 1947 and 1949. From 1950 to 1964 I practiced on the Original Side of the Bombay High Court. My practice was entirely civil litigation. I handled civil and commercial suits of all types. In 1954 I was appointed part-time Professor of Law at the New Law College in Matunga, Mumbai. In 1959 I also was appointed part-time Professor at the K.C. Law College in Churchgate, Mumbai. In 1964 I was appointed Judge of the Bombay City Civil Court.

3.  I became Principal Judge of the Bombay City Civil Court in 1970. In 1972 I was elevated as Judge of the Bombay High Court. From 1972 to 1990 I was a Judge of the Bombay High Court. I performed my duties at the Bombay Bench (now called the Mumbai Bench). I was the Acting Chief Justice of the Bombay High Court for about one and a half years in 1987 and 1988. As the Acting Chief Justice, I had visited the three other Benches of the Bombay High Court at Nagpur, Aurangabad, and Goa. After leaving the bench I have remained in active practice as a legal consultant and Arbitrator in Mumbai. I am thus fully conversant with the current conditions in the Mumbai court system.

4.  Plaintiffs' counsel retained me to provide expert opinion regarding whether the courts of India offer an adequate alternative forum to litigate this case. In that regard, in addition to relying upon the personal experience and expertise described above, I have reviewed Plaintiffs' First Amended Complaint, Defendants' Motions to Dismiss, and the various materials and authorities cited below (and attached to this Declaration). Other than my role in preparing this Declaration, I have no connection to the parties to this dispute.

## II. OPINION

5.  Were this case dismissed on the ground of forum non conveniens, pursuing a legal remedy in India would require that Plaintiffs file a case with the Mumbai Bench of the Bombay High Court (hereinafter the "Mumbai Bench"). The Mumbai Bench has original


HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation



DESAI DECL. IN OPPOSITION TO MOTION TO DISMISS NO. C-07-06198 MHP

-1-

jurisdiction over cases involving events in the Mumbai area and with damages in excess of 50,000 Indian rupees (about $1,200). It has also appellate and constitutional jurisdiction as indicated hereinafter.

6. Based on my personal experience and knowledge, the Mumbai Bench is not an adequate alternative forum for this case. It is hopelessly clogged with hundreds of thousands of cases. Moreover, there is only one High Court judge for every 1.8 million people in the Bombay High Court's area of jurisdiction, and the average caseload per judge exceeds 6,000. This is explained in detail later on.

7. This congestion causes severe delays. In my experience, the typical civil case takes at least 15 years to reach an original resolution. With years of appeals added in, cases often take as long as 20 to 25 years to be finally resolved. More than 40 percent of the civil cases before the Bombay High Court have been pending over 10 years, with some cases pending over 30 years and a few cases even for over 50 years. Given such delays, I have advised many clients not to expect newly-filed High Court suits to be resolved in their lifetimes.

8. A complex international case like the present one would doubtless take even longer than the typical civil case. In my opinion, Plaintiffs would be forced to wait more than 15 to 20 years for a final resolution from the Mumbai Bench, not including additional years spent on appeal.

## III. FACTUAL BACKGROUND

### A. The Bombay High Court

9. The Bombay High Court has jurisdiction over the states of Maharashtra and Goa and the territories of Dadra & Nagar Haveli and Daman & Diu. *See* Bombay High Court home page, http://bombayhighcourt.nic.in (attached as Exhibit A). About 110 million people live in this area. *See* 2001 Census of India, "Projected population by sex as on 1st March," 2008 Projection (attached as Exhibit B).

10. The Mumbai Bench is the largest division of the Bombay High Court. There are

OPPOSITION TO MOTION TO DISMISS NO. C-07-06198 MHP
-2-

four Benches of the Bombay High Court: the principal one at Mumbai, and three others at Nagpur, Aurangabad and Goa. The Chief Justice officiates at the Mumbai Bench, but may sit for short periods at the other three Benches. The Mumbai Bench serves as the administrative center for all four divisions of the Bombay High Court.

11. The Mumbai Bench has two types of jurisdiction. In the first place, it has jurisdiction over cases that originate in Mumbai—a rapidly growing city of more than 16.4 million people (*see* 2001 Census of India, "List of Million-Plus Cities" (attached as Exhibit C)). Also, it has jurisdiction over several nearby towns and districts containing many more millions of people, including Pune, Nashik, Raigad, Kolhapur, Ratnagiri, Satara, Sangli, Sindhudurg, Solapur, Thane, Dadra & Nagar Haveli, and Daman & Diu. *See* Maharashtra District Court home page, http://court.mah.nic.in/courtweb/static_pages/page1.php (attached as Exhibit D). The latter jurisdiction is often referred to as the appellate jurisdiction. (The other three Benches of the Bombay High Court are the Nagpur Bench, the Aurangabad Bench, and the Goa Bench. The Nagpur Bench hears matters pertaining to the Vidarbha area of Maharashtra. The Aurangabad Bench hears matters pertaining to the Marathawada area of Maharashtra. The Goa Bench hears matters pertaining to the State of Goa.)

12. For this entire immense area, the Bombay High Court only has 59 judges total, or one judge for every 1.8 million people in the Bombay High Court's area of jurisdiction. There are 34 judges total on the Mumbai Bench, but most of these are assigned to appellate and criminal matters. The rest of the Bombay High Court is no better off: Three smaller Benches (in Nagpur, Aurangabad and Panaji) have only 25 original and appellate judges total.

13. Only a handful of judges are available to hear civil matters that arise in Mumbai city. According to the Mumbai Bench's list of cases scheduled for hearing, there are only six or seven single judges hearing all civil and constitutional matters arising in Mumbai city. Out of these judges, one or two will be assigned to hear interlocutory applications, which leaves only four or five judges to hear "Original Side" (i.e. non-appellate) civil and



constitutional matters. In addition, there may be four or five Division Benches to hear constitutional and tax matters and also to hear appeals from decisions of the single judges of the Mumbai Bench.

14. Even these few High Court judges assigned to hear Original Side civil matters will not normally hear cases at a stretch. Often judges hear applications in the morning, and may hear suits and other matters for about two hours in the afternoon. In recent years, the High Court has attempted to lighten the judicial workload by delegating the recording of evidence in civil cases to Court Commissioners. However, in my personal experience, this has hardly improved matters and has only meant more expensive trials for litigants. This is so because the Court Commissioners cannot rule on the framework or propriety of the questions raised to the witness. In fact, some of the Court Commissioners, with their inadequate grasp of English, cannot even properly record the submissions made to them. This means that the entire evidence recorded by the Commissioner must be re-appraised by the court.

15. As explained below, the type of the dispute involved in the present litigation matter is not one which gets priority in hearing. Given the backlog discussed at length below, the matter may not even commence hearing for 15 to 20 years, with further time taken in appeal to the High Court and later on to the Supreme Court. Even if the Indian justice system takes immediate, drastic remedial steps to reduce the backlog—an unrealistic prospect—the present case would probably have to wait for 10 to 12 years just to commence hearing.

**B.    Congestion and Delay**

16. The result of having so few judges to dispense justice to so many people has been a backlog of catastrophic proportions. I have reviewed the Bombay High Court's Web site for the latest available information on pending cases. As of December 31, 2006, there were 221,559 main cases of all types—including civil suits, testamentary and intestate suits, insolvency cases, writ petitions, company petitions, matrimonial causes and references, land

acquisition references, election petitions, writ appeals, letters patent appeals, first and second criminal appeals, revisions, et cetera—pending before the Mumbai Bench. *See* Proforma III: High Court of Judicature at Bombay, "Classification of Cases Pending at the End of Quarter Ending On 31st December 2006 In Terms of Date of Institution" (attached as Exhibit E). At the same time, the Mumbai Bench was seized of 143,903 miscellaneous applications and references pertaining to the aforementioned main matters including injunction applications, applications for the appointment of receivers, petitions under the Arbitration Act, and other miscellaneous petitions or cases such as reports of court receivers, commissioners, official assignees (insolvency matters), criminal miscellaneous cases, et cetera. *See* Proforma IV: High Court of Judicature at Bombay, "Classification of Cases Pending at the End of Quarter Ending On 31st December 2006 In Terms of Date of Institution" (attached as Exhibit F). The total number of pending matters, including both the main cases and the applications and references, was 365,462 as of December 31, 2006.

17.    By September 30, 2007—the latest available data—the total number of cases pending in the Bombay High Court had increased to 367,648. *See* Proforma I: Statement of Work Done by the High Court of Judicature at Bombay During the Quarter Ending on 30th September 2007 (attached as Exhibit G) (noting 221,891 pending cases); Proforma II: Statement of Work Done by the High Court of Judicature at Bombay During the Quarter Ending on 30th September 2007 (attached as Exhibit H) (noting 145,757 additional pending cases).

18.    With only 59 judges on the Bombay High Court, the average case load as of September 30, 2007, was 6,241 cases per judge.

19.    The backlog is growing. Judges in the Mumbai Bench are unable to keep up with the crush of cases. Exhibits G, I, J, and K demonstrate this. These are spreadsheets, created by the court controlled officials, that show (1) the number of cases pending in the Bombay High Court at the beginning of a particular quarter; (2) the number of cases instituted during the quarter, (3) the number of cases disposed of during the quarter; and (4) the number of

cases pending at the end of the quarter. *See* Exhibits G and I; *see also* Proforma I: Statement of Work Done by the High Court of Judicature at Bombay During the Quarter Ending on 31st March 2007 (attached as Exhibit J); Proforma I: Statement of Work Done by the High Court of Judicature at Bombay During the Quarter Ending on 30th June 2007 (attached as Exhibit K). For example, Exhibit J reveals that there were 41,652 civil suits at the beginning of the first quarter of 2007. There were 1,547 civil suits instituted during the quarter, and 735 suits disposed of during the quarter. Thus, by the end of the quarter, there were 42,464 civil cases pending. These spreadsheets show that despite some quarterly fluctuations, the number of conventional civil lawsuits pending in the Bombay High Court rose from 41,572 on October 1, 2006, to 41,982 as of September 30, 2007. *See id.* Over that time period, judges disposed of a total of 3,477 civil lawsuits, but 3,887 new suits were filed. *See id.* The number of pending civil appeals rose from 126,352 to 129,279 over the same period. *See id.*

20. Original Side civil suits are routinely pushed to the end of the line, and thus face even greater delays than most other matters before the Bombay High Court because they are prioritized behind both criminal cases and appeals. The Mumbai Bench's appellate jurisdiction extends to the entire state of Maharashtra, excluding the areas of Vidarbha, Marathawada and Goa. Two types of appeals can lie before the Mumbai Bench: civil and criminal. The Mumbai Bench gives first priority to first appeals in criminal cases. Special priority is given to serious criminal matters in which bail is often not available (such as murder, rape, terrorism and organized crime cases). These criminal cases are given the highest priority, pushing civil matters toward the back of the line.

21. Furthermore, "civil money disputes," a category that includes this case, are given *last priority* among civil suits on the original (trial) side of the Bombay High Court. The Bombay High Court Original Side Special Rules stipulate for the following types of actions, other than money suits which, in practice, are given the last priority in the below mentioned list:

  (a) Matters under Indian Companies Act;

  (b) Matters under insolvency law;

  (c) Matters under Indian Income Tax Act;

  (d) Testamentary matters under the Indian Succession Act; and

  (e) Land acquisition matters.

22. Also crowding out the Original Side civil suits is the recent wave of "public interest" litigation that arises under the High Court's constitutional jurisdiction under Article 226 of the Constitution of India. Under this jurisdiction, the Bombay High Court seeks to redress all matters under the sun affecting public life, including public authorities' improper application of statutes and non-compliance with statutory obligations.

23. Civil cases routinely take decades to reach final disposal. The latest available figures for case pendency in the Bombay High Court are for the quarter ending March 31, 2007. These figures show that as of March 31, 2007, a full 41 percent of all civil lawsuits—17,549 out of 42,464—have remained pending in the Bombay High Court for more than 10 years. Even for testamentary matters—which, as discussed above, are accorded a higher priority than civil money disputes—379 matters out of 987 have been pending for more than 10 years. Similar is the position in Income Tax references where 1,131 out of 3,265 matters were more than 10 years old. *See* Proforma III: High Court of Judicature at Bombay, "Classification of Cases Pending at the End of Quarter Ending On 31st March 2007 In Terms of Date of Institution" (attached as Exhibit L). Considered together, fifty-five percent of all civil cases have been pending for more than eight years, and sixty-six percent have been pending for more than six years. *Id.*

24. The appellate backlog in the Bombay High Court is also enormous, and delays on the appellate side can add many years, or even a decade or more, to the typical lawsuit. As of March 31, 2007, 14 percent of all *appeals*—17,999 out of 128,908—have been pending for more than 10 years without being decided. *Id.* More than 33 percent of all appeals have been pending for more than 5 years, and more than 57 percent have been pending for more



than two years. *Id.*

25.  The following cases are but a sample of the civil suits—many involving business entities—that have been pending on the Original Side of the Bombay High Court for more than 25 years:

(a)  *Bai Fatimabai, widow of Haji Ali Mohammed Haji Casam and others v. Bai Zulekanbai, widow of Dawood Haji Ali Mohammed Haji Casam Agbotwaila and Veekaylal Investment Company Pvt. Ltd.*, Suit No. 3415 (1947).

(b)  *Sudhabhai N. Pupala and others v. Narsubhai S. Pupala and Smt. Pramila S. Pupala,* Suit No. 438 (1951).

(c)  *Manharlal Matubhai & another v. Hafiza Begum, wife of Syed Abdul Kadri and Rizvi Estates & Hotels Pvt. Ltd. and Mahavir & Co. and Buddhu Baldev Yadav, (deceased), through legal heirs, Raj Bahadur Yadav and others,* Suit No. 675 (1966).

(d)  *Dena Bank Ltd. v. Farid Ahmed Dada and others,* Suit No. 21 (1967).

(e)  *Shamima T. Bootwala and others v. Salma Mehbooba Ali Rajan and Falak Lamak Fazlelali and another,* Suit No. 627 (1968).

(f)  *Vysya Bank Limited v. Navbharat Trading Corporation and others*, Suit No. 2005 (1980).

(g)  *Cotton Corporation of India Ltd. v. Soundaryaraja Mills Ltd.*, Suit No. 1116 (1980).

(h)  *Roopchand Karani and others v. Bank of Baroda,* Suit No. 59 (1981).

26.  In addition, the following appeals are among those pending in the Bombay High Court for more than 12 years:

(a)  *Smt. Sundarbhai Balu Gotad v. Badruddin D. Mursal (deceased) through Legal Representative, Mahiboob B. Mursal*, Writ Petition No. 5263 (1989).

(b)  *Premlal (deceased), through Mrs. Jayram P. Dhavan, (deceased), through Mr. Rajendra P. Dhavan and others v. Rasheed Abdul Tayak Muskati and others*, Writ Petition No.2632 (1990).



No further comment is needed. The 1st suit has remained pending for 29 years, whereas the litigants in the 2nd suit are more fortunate and they may get a judgment in their suit in 18 years; however, this will not be the end. There will surely be an appeal to the Division Bench of the Mumbai Bench and a further appeal, possibly, to the Supreme Court. This will add at least 7 years to the woes of the litigants.

29.  Interminable delay is not just a Bombay High Court problem. Similar congestion plagues all of India's courts. Due to an enormous increase in the institution of fresh cases, the backlog of cases pending before the Supreme Court of India doubled from 20,358 in 1998 to 44,819 on September 30, 2007. *See* Supreme Court of India, Annual Report for 2006-2007, at 74, 76 (attached as Exhibit N). The number of cases pending in all 21 of India's High Courts rose from 28 *lakh* (2.8 million) cases in 1999 to 37 *lakh* (3.7 million) cases in 2006. *See* Manoj Mitta, "Judiciary Equally to Blame for Backlog," The Times of India (Nov. 30, 2007) (attached as Exhibit O). In addition, an earlier study found that 20 million cases were pending in India's lower-level district and subordinate courts in 2002. *See* "Law's Delays: Arrears in Courts," 85th Indian Parliamentary Report of Standing Committee on Home Affairs at Appendix VII (March 7, 2002) (attached as Exhibit P).

30.  The Law Commission of India, an arm of the Ministry of Law and Justice, has repeatedly noted the delays and linked them to causes including:

(a)  The scarcity of judges. A legislative committee reported that there are between 10 and 13 judges (including district, subordinate, and High Court judges) per million people in India—about one-tenth the ratio in the United States, where there are reportedly 130 judges per million people. *See* "More Judges for SC: Bringing Justice on the Fast Track," The Tribune of Chandigarh (February 26, 2008) (attached as Exhibit Q); Report of Committee on Reforms of Criminal Justice System, Vol. 1 at 133 (March 2003) (attached as Exhibit R).

(b)  Inordinate delays in filling judicial vacancies;

(c)  Frequent interlocutory appeals;

(c) *Rasiklal Chandulal Mehta v. Babusaheb Hiralal Zad*, Writ Petition No.1276 of (1991).

(d) *Narayandas Santumal Bajaj, N. H. Gursuhani (deceased), through S. H. Gursuhani v. State of Maharashtra and others*, Writ Petition No.4447 (1994).

(e) *TVR Nair, Bombay v. Mumbai Mazdoor Sabha, Bombay*, Writ Petition No. 2062 (1995).

27. The foregoing information was procured from the record department of the Original Side as well as the Writ Petitions and appeals departments of the Bombay High Court's Mumbai Bench.

28. There has been a lot of talk about avoiding such great delay in hearing and disposing of suits. However, very little is being done in fact. The Daily Cause List of the Original Side for June 16, 2008 (prepared by the Bombay Bar Association, an association of lawyers practicing on the Original Side and existing for 75 to 90 years) reveals a total rebuttal of claims for expedition. The Cause List shows that 17 judges are allotted to the Original Side forming 5 Division Benches of 2 judges each and the remaining 7 judges sitting singly (one judge Courts). Upon perusing the foregoing Cause List of the 7 single judges, I found that only one of them (Justice D.B. Bhosale) had scheduled suits for hearing and disposal before himself. Even his Board indicated a distressing state of affairs. In the early part of the day, Justice Bhosale has kept miscellaneous matters for hearing. Item no. 49 on the Cause List happens to be the first suit pending for recording evidence. Thereafter, item no. 51 and almost the last on the Cause List is an "expedited suit" pending for final arguments. These 2 suits are:

1. *Santacruz Prakash Co-operative Housing Society Ltd v. Smt. Rehmani Begum and others*, Suit no. 260 of 1979; and

2. *Francis John Rodrigues v. Arthur Philip Rodrigues and another*, Suit no. 856 of 1990. *See* the Daily Cause List of the Bombay High Court Original Side For Monday, 16th June, 2008 (attached as Exhibit M).



(d) The vast jurisdictional ambit of the high courts, which are burdened with everything from civil cases of all types, to criminal cases of all types, to appeals of all these cases;

(e) Procedural rigidity;

(f) Ill-drafted and archaic legislation that is difficult to interpret;

(g) Overly long oral arguments;

(h) Delay between oral arguments and the proclamation of final judgments;

(i) High numbers of frivolous and vexatious lawsuits; and

(j) An ineffective mail service that slows the service of summonses, notices, and documents. *See* 79th Report of Law Commission of India, "Delay and Arrears in High Courts and Other Appellate Courts" (1979), (attached as Exhibit S); 124th Report of the Law Commission of India, "The High Court Arrears: A Fresh Look" (1988) (attached as Exhibit T).

31. As the Supreme Court of India observed in 2007, "People in India are simply disgusted with this state of affairs, and are fast losing faith in the judiciary because of the inordinate delay in disposal of cases." *Rajindera Singh (dead) through legal representatives and others v. Prem Mai and others,* AIR 2007 SC 3057 (suit originally filed in 1957).

## IV. CONCLUSION

32. In my opinion, the above information leads to the conclusion that India is an inadequate forum for this case. If the Plaintiffs are forced to re-file their suit on the Original Side of the Bombay High Court's Mumbai Bench, they would be last in a line 368,000 cases long. Plaintiffs also are up against defendants who have what appear to be significant financial resources and the ability to stretch this case to its fullest extent. Therefore, based on my experience with the Indian court system, this case would take more than 15 to 20 years for disposal, with a chance of the appeals taking further 5 to 10 years if the matter is taken to the Supreme Court of India.

I declare under penalty of perjury under the laws of the United States of America that



the foregoing is true and correct. Executed this 18th day of June, 2008, at Mumbai.

_____
S. K. DESAI



SIGNED BEFORE ME

AHMAD HIRANI
Notary, Greater Bombay
Reg. No. 315
Sv. No. 28 A      18-6-2008
MAJMUDAR & CO.
Advocates Solicitors & Notary
96, Free Press House, 9th Floor,
Free Press Journal Marg,
Nariman Point, Mumbai—400 021.

I confirm that my certificate of practice dated 21st December 1989 is valid up to 21st December, 2011.

18-06-2008