# EXHIBIT R-2

CHAPTER 8

FIRST APPEALS (INCLUDING APPEALS FROM CITY CIVIL COURTS)
TO HIGH COURTS

## I. MATTERS DEALT WITH

**Scope of the Chapter.** **8.1.** We have so far considered the general question of appeal and appellate procedures; it will be convenient now to deal with particular types of appeals. We shall deal later with appeals under special Acts[1] and with what have come to be known as Letters Patent Appeals.[2] This Chapter will be mainly confined to first appeals that lie under the general provision in the Code of Civil Procedure[3] to the High Courts. It will, however, be necessary to deal with certain connected questions. In the first place, the matter that will engage our attention is the appellate machinery in City Civil Courts, these being courts that have been established under State or Central legislation, in Ahmedabad, Bombay and Calcutta, Hyderabad and Madras. In the second place, we shall also deal with the question whether first appeals should be admitted and heard by a single judge or by a division bench. Thirdly, certain points of procedure will also require attention, namely, summary dismissal of appeals.

## II. ADMISSION AND HEARING BY BENCHES

**Admission of first appeals to be done by Division Bench.** **8.2.** In some High Courts, while the regular first appeals are heard and decided only by a Division Bench, they are put up for admission before a single judge. In such cases, the single judge has no alternative but to admit the appeal, simply because he has no power to dismiss it. This practice sets at naught the provisions of Order 41, Rule 11, Code of Civil, Procedure, 1908. If regular first appeals are to be heard and decided by a division bench, they should be placed for admission before such a bench only, so that the bench may be competent to scrutinise and pass appropriate orders in the matter.

**Hearing of first appeal by Bench.** **8.3.** There is also a difference as regards the hearing of first appeals in various High Courts. In some High Courts, appeals arising out of suits upto a certain amount are heard by single judges. In other High Courts, all first appeals are normally heard by a Bench of two Judges.

In the High Courts where the appeal is heard by a single judge, a further appeal lies to the bench, normally consisting of two judges, under the Letters Patent or corresponding law[4-5]. This, in our opinion, is unnecessary duplication of work, and if the minimum limit of appellate jurisdiction of the High Court is increased as will be recommended later in this Report,[6] it would be a convenient rule to be framed by the High Court that all regular first appeals should be placed before a Division Bench for admission, hearing and disposal. So far as other first appeals are concerned, they may be heard by single or division bench according to the rules made by the High Court.

**No further appeal in High Court.** **8.4.** We are also of the opinion that there should be no further right of appeal in the High Court against the judgment passed in appeal by a single judge. We have already recommended[7] that so far as regular first appeals are concerned, they should be heard by Division Benches and not by single judges. This would bring about the application of a plurality of minds for the disposal of those appeals. Regarding other first appeals decided by single judges, in our opinion the decision should have a stamp of finality, except in those cases where the matter is taken up by certificate or special leave in appeal to the Supreme Court. We shall, in a later Chapter[8] advert to the reasons which have weighed with us in arriving at this conclusion.

---

[1]Chapter 9, *infra*.

[2]Chapter 11, *infra*.

[3]Section 96, Code of Civil Procedure, 1908.

[4]See Chapter 11, *infra*.

[5]See also sections 17-20, Indian Divorce Act, 1869.

[6]See *infra*.

[7]Para 8.3, *supra*.

[8]Chapter 11, *infra*.

46

## III. APPEALS AGAINST JUDGMENTS OF CITY CIVIL COURTS

**8.5.** We now address ourselves to the appeals that lie to the High Courts from the judgments of City Civil Courts. This topic was briefly dealt with in the Report of the High Courts Arrears Committee presided over by Mr. Justice Shah.[1] The matter requires some discussion. From the following rapid survey, it would be evident that there are certain differences as regards the structure and composition of the various City Civil Courts, leading to differences regarding the forum of appeal against decision of the respective judges. *Introductory.*

**8.6.** We have, at present, city civil courts functioning in five metropolitan cities Calcutta[2], Bombay[3], Madras[4] Ahmedabad[5] and Hyderabad[6]. *City Civil Courts and their jurisdiction.*

The jurisdiction of the City Civil Courts at Ahmedabad and Hyderabad is, from the point of view of pecuniary limits, unlimited. The jurisdiction of the courts in the three presidency towns is limited to Rs. 50,000, suits of a higher value being within the exclusive competence of the respective High Courts which have ordinary original civil jurisdiction.[7]

**8.7.** More important is the difference in the position as regards structure and composition, including rank of the personnel, of the various City Civil Courts. In the City Civil Courts in Calcutta, Bombay and Ahmedabad, the presiding officers are of the rank of District Judges. In the City Civil Courts in Madras[8] and Hyderabad[9], some of the presiding Officers are of the rank of District Judges[10], and other officers are of a lower rank. *Structure and composition.*

**8.8.** Connected with this difference in the internal structure[11] of the various City Civil Courts is the difference as regards the forum of appeal from their decisions. *Jurisdiction of individual judges—original and appellate.*

(a) In the City Civil Courts in Calcutta, Bombay and Ahmedabad, the judges have concurrent original jurisdiction. But they have no appellate jurisdiction. Appeals from their decisions lie to the respective High Courts. The valuation of the subject matter makes no difference to the forum of appeal.

(b) In the City Civil Court at Madras, the various Presiding Officers—Principal Judge, Additional Judges and Assistant Judges—All exercise original jurisdiction[12]. But appeals lie[13] to the Principal Judge from a decision of the Assistant Judge in any suit or proceeding where the value does not exceed Rs. 10,000. The Principal Judge may, from time to time, transfer for disposal such appeals to any Additional Judge.[14]

This affords a contrast to the position applicable to the City Civil Courts in the three cities of Calcutta, Bombay and Ahmedabad.

**8.9.** Similarly, in the City Civil Court, Hyderabad the Chief Judge and Additional Chief Judges have, under the relevant State law[15], jurisdiction to hear and dispose of appeals against the decisions of the other judges of the court in certain cases; in other cases, the appeals lie to the High Court. *Hyderabad.*

---

[1]High Courts Arrears Committee Report (1972), page 66, Chapter 6, para 66.

[2]City Civil Court Act, 1933 (Calcutta).

[3]Bombay City Civil Court Act, 1948.

[4]For statutory references relating to Madras, see para 8.9, *infra* (footnotes)

[5]Ahmedabad City Civil Court Act, 1961.

[6]For statutory references relating to Hyderabad, see para 8.9, *infra*.

[7]Chapter 2, *supra* and Chapter 15, *infra*.

[8]Principal Judge and Additional Judge in Madras.

[9]Chief Judge and Additional Chief Judge in Hyderabad.

[10]E.g., in Madras the Principal Judge belongs to the cadre of D. J. Grade I, and the Additional Judges belong to the cadre of D. J. Grade II.

[11]Para 8.7, *supra*.

[12]Section 4(1), Madras City Civil Court Act (Central Act 7 of 1892).

[13]Section 15(2), Madras City Civil Court Act (Central Act 7 of 1892), as amended in 1957 ; and information obtained in F. 2(7)/77-L.C., Part II, Sl. No. 17.

[14]Section 15(4), Madras City Civil Court Act (Central Act 7 of 1892).

[15]Andhra Pradesh (Telangana Area) Civil Courts Act, 1954, section 16(2).

Question of intro- **8.10.** The above resume will show that there are differences as regards the
ducing uniformity structure and composition of the various city civil courts, and as regards the
regarding forum appellate forum in respect of decisions of judges thereof. In fact, as already
of appeal consi- stated[1] the differences regarding appellate forum are due to the differences in
dered. respect of structure and composition, including the rank of the Presiding Officers.

We have considered the question of having a uniform pattern for city
civil courts in all the metropolitan cities in the context of appeals which lie to
the High Courts. There can be no doubt that each of the systems, the one in
operation in Calcutta, Bombay and Ahmedabad and the other in Madras and
Hyderabad, has its pros and cons. To adopt a uniform pattern for all the five
metropolitan cities, would necessarily have the effect not only of disturbing the
*status quo*, but also of causing considerable dislocation either in the system in
operation in two cities, or in that in force in the other three cities. The litigants
and the members of the Bar in each of these cities have grown used to the exist-
ing systems and there has been no major demand for changing the pattern of the
city civil courts in operation in these cities. Looking to all the facts, we are
averse to recommending any change in the system of city civil courts function-
ing in the different metropolitan cities, or in the forum of appeal from their
judgments. In case any change is called for, the same can well be effected by
local legislation in the light of any particular difficulty which might have been
encountered in the metropolis concerned.

## IV. SUMMARY DISMISSAL OF FIRST APPEALS

Dismissing preli- **8.11.** Reverting to the chronological stages in the appellate process, we would
minary hearings. like to deal with the dismissal of appeals at the preliminary hearing under
Order 41, rule 11 of the Code of Civil Procedure.[2] Under Order 41, rule 11(4),
inserted in 1976, where an appellate court, not being the High Court, dismisses
an appeal, it shall deliver a judgment recording in brief its grounds for doing
so. The Law Commission had, in the its 54th Report[3] recommended that the
mandate which subsequently came to be contained in Order 41, rule 11, sub-
rule (4) should be applicable not only to the subordinate courts, but also to
the High Courts when dealing with first appeals.

This recommendation of the Law Commission, in so far as the High
Courts are concerned, does not appear to have been incorporated in the statute
when necessary amendment was made in the Code of Civil Procedure in 1976.

Change needed as **8.12.** We have given the matter our consideration and are of the opinion that
to regular first ap- so far as regular first appeals in the High Courts against final judgments of
peals. trial courts are concerned, there should be a rule, making it imperative that
when the High Court dismisses such appeals under Order 41, rule 11, Code of
Civil Procedure, it should do so by a brief order giving reasons for the dismissal
of the appeal at the preliminary stage. The High Court, when it decides a
regular first appeal against the final judgment, has to record its findings, both
on questions of fact and law, and its findings on questions of fact are final. The
normal rule is that an appeal which raises triable issues for court of appeal
should not be dismissed *in limini*. The Supreme Court also, in one of the cases,[4]
expressed the view that when a first appeal raises triable issues, it should not
be dismissed *in limini*. To give effect[5] to our recommendation made above,
necessary amendment should be made in Order 41, rule 11, Code of Civil
Procedure, 1908.

At the same time, we would like to emphasise the fact that the need for
a brief order giving short reasons for dismissal should arise only in regular
first appeals. It would not be necessary for the High Court to record such
an order in the case of second appeals or appeals against orders.

[1]Para 8.8. *supra*.
[2]O.41, r. 11(4), Code of Civil Procedure, 1908.
[3]Law Commission of India, 54th Report, paragraphs 41.13 to 41.15.
[4]*M. T. Vetale* v. *Smt. Sugandha*, A.I.R. 1972 S.C 1932, 1933, para 4
[5]Amended of Code recommended.

CHAPTER 9

APPEALS UNDER SPECIAL ACTS

**9.1.** Apart from regular first appeals, there are other statutory appeals also which lie to the High Court against decisions under special Acts, as for example, the Guardians and Wards Act,[1] the Land Acquisition Act,[2] the Companies Act, the Trade and Merchandise Marks Act,[3] the Workmen's Compensation Act[4,5] and the Motor Vehicles Act.[6] Rules have been framed in most of the High Courts in this regard. It is necessary that there should be no default in their observance. *(Scope of the Chapter.)*

For the preparation of paper books in such appeals, typed copies supported by an affidavit as to their correctness may be accepted, and the same procedure as has been recommended by us in an earlier Chapter[7] for supplying copies thereof to the respondent in case of regular first appeals may be adopted.

**9.2.** Appeals in matrimonial cases have an importance of their own, and should be given priority[8,9] as already recommended by us while dealing with the listing of appeals. *(Appeals in matrimonial cases.)*

**9.3.** The majority of appeals in matrimonial cases in the High Court are now appeals under section 28 of the Hindu Marriage Act, 1955. There are also certain appeals filed under the corresponding provision in the Special Marriage Act, 1954. As regards Christians, jurisdiction of the High Court under the Indian Divorce Act, 1869 is ordinarily by way of confirmation[10] of the decree of divorce passed by the District Judge, proceeding for such confirmation being mandatory[11] under the Act.[12] In regard to the Parsi Marriage Act, 1936, in the three Presidency towns, the Chief Matrimonial Courts presided over by a High Court Judge exercise special jurisdiction of an original character in matrimonial causes under that Act.[13] Appeals lie to a Division Bench of the High Court.

What we have said above, as to giving priority to appeals in matrimonial cases, is intended to cover all these Acts.

**9.4.** It is also our view that the existing provision of the Indian Divorce Act,[14] under which a decree of divorce granted by the District Judge needs to be confirmed by a special Bench consisting normally of three judges of the High Court, on a reference made to it, should be modified and need for such a reference and confirmation should be done away with altogether. The existing procedure not only causes delay in the final disposal of the petitions for divorce under the Indian Divorce Act, but also subjects the parties to unnecessary expense. *(Confirmation—cases under the Indian Divorce Act, 1869.)*

**9.5.** It may be mentioned that other matrimonial laws like the Hindu Marriage Act, contain no provision for confirmation of a decree of divorce and we see no cogent ground why a special provision for the purpose applicable to decrees of divorce granted under the Indian Divorce Act, should be required.

---

[1] Section 47, Guardians & Wards Act (8 of 1890).

[2] Section 54, Land Acquisition Act, 1894, (See also Chapter 7, *supra*).

[3] Section 109(2), Trade and Merchandise Marks Act, 1958.

[4] Section 30, Workmen's Compensation Act, 1923.

[5] See also separate note as to special Acts, Appendix 3.

[6] Section 110D, Motor Vehicles Act, 1939.

[7] Chapter 8, *supra*.

[8] Cf. Law Commission of India, 77th Report (Delay and Arrears in Trial Courts), Chapter 10 (as to priority in trial courts).

[9] Chapter 7 (Listing of appeals).

[10] Section 17, Indian Divorce Act, 1869.

[11] Para 2.7, *supra*.

[12] See para 9.4, *infra*, for recommendation.

[13] Parsi Marriage Act 1936, sections 17 to 19.

[14] Section 17, Indian Divorce Act, 1869, para 9.3, *supra*.

49

50

It is also plain that the above requirement about the confirmation of the decree by a Bench of the High Court is a hangover of the days which no longer exist. It has also lost all its relevance in the present-day India. It should, therefore, be done away with and replaced by appeals, as in the Hindu Marriage Act. We may add that a substantially similar recommendation was also made by the Law Commission in its Reports dealing, *inter alia*, with the Indian Divorce Act.[1,2] The High Courts Arrears Committee[3] presided over by Mr. Justice Shah also recommended a similar change in the law.

---

[1]Law Commission of India, 15th Report (Law relating to marriage and divorce amongst Christians in India), page 40, para 78 and page 128, Note on section 17.

[2]Law Commission of India, 22nd Report (Christian Marriage and Matrimonial Causes Bill, 1961), page 2.

[3]High Courts Arrears Committee Report (1972), Chapter 5, page 68, para 76.

# CHAPTER 10

## SECOND APPEALS

**10.1.** The search for absolute truth in the administration of justic must, in the very nature of things, be put under some reasonable restraint. Such search has to be reconciled with the doctrine of finality. There must come, in the course of litigation, a stage when the decision rendered on a question of fact should become final and the matter be allowed to rest where it lies, without further appeal on facts. At the same time, any rational system of law must provide for taking the cause to a specified superior court on a question of law—a superior court whose decision on the question of law will become binding on subordinate courts. There should be one authoritative and final tribunal in various appellate matters, competent to give decisions which are recognised as binding all over the State and which keep alive what Lord Birkenhead so felicitously described as the 'immense unity of the law'.[1] When a substantial question of law is in issue, the general interest of society in the predictability of the law clearly necessitates a system of appeals to the highest court of the State.[2] *(margin: Second appeals—need for.)*

**10.2.** This aspect has a vital connection with two basic principles of our constitutional and legal system, and its interest therefore transcendes the boundaries of mere procedural law. It is a basic principle of our legal system that precedent is a source of law. This postulates that there shall be a superior court with jurisdiction to determine questions of law, whose determinations shall find a place in the law reports of the country. *(margin: Basic principles.)*

Then, it is also a postulate of the rule of law that if the law has been clearly laid down by such a superior court, and the decision of a subordinate court when exercising appellate jurisdiction is in clear violation of the law pronounced by the superior court, the power of the superior court of the State to correct that decision should be recognised.

**10.3.** These may be said to constitute the implicit assumptions underlying the right of appeal to the High Court from appellate decrees, provided by section 100 of the Code of Civil Procedure, 1908. These are also the implicit assumptions underlying the negative provision in section 101 of the same Code, to the effect that no second appeal shall lie except on the grounds mentioned in section 100. *(margin: Implicit assumptions of section 100.)*

**10.4.** Section 100 of the Code, as amended in 1976, allows a second appeal only if the High Court is satisfied that the case involves a substantial question of law. The limitation flowing from this provision may be emphasised. *(margin: Second appeal under amended Code.)*

**10.5.** Even before its amendment in 1976, section 100 had a restricted scope. The restricted scope of interference by the High Court in second appeals even before the amendment had been repeatedly emphasised by the Supreme Court while dealing with second appeals and their admission by the High Court. After the amendment, it has become all the more necessary to bear in mind the restricted ambit of the section, in view of the fact that the scope of interference in second appeal has been further narrowed down. What the section now requires is not only that the appeal should raise a question of law, but also that it should be a substantial question of law. *(margin: Narrow scope of section 100.)*

**10.6.** We would again like to point out an essential difference between a first appeal and a second appeal. The primary purpose of an appeal on facts is justice in the individual instance. On the other hand, the primary purpose of an appeal on law, at least in the case of a second appeal, is the affirmation or re-affirmation of a particular rule of law. The principal aim, in this case, is the production of certainty in the law. The mere dissatisfaction of a litigant with the judgment on the merits does not itself furnish a ground of second appeal. This is the theory underlying section 100 of the Code of Civil Procedure. *(margin: First appeal and second appeal.)*

---

[1]Lord Birkenhead in (1927) 63 L.J. 298, 304. "The Judicial Committee" (Lord Birkenhead's remarks from the Chair while presiding over a lecture by Professor J. H. Morgan).

[2]E.g. para 4.10, *supra*.

51

Small cases **10.7.** So much as regards the principle underlying section 100. While the section permits a second appeal on a substantial question of law, practical considerations impel the law to place certain limitations even in this respect. For example, in cases where the amount involved is not large, the policy of the law is that at a particular stage halt should be called, and the parties should not be burdened, or even be tempted to burden themselves, with further expense. The quest for justice is not something abstract. It has also to bear the impress of a certain amount of pragmatism. It is because of these considerations that limitations have been placed on the right of appeal when the amount involved is not large.[1] It is plain that in such matters a line has to be drawn somewhere. The point at which the line is drawn may appear to some to smack of arbitrariness, but such a charge would perhaps be always there, whenever we have to draw a line at some point. While determining the point at which the line is drawn, the law has to keep in view all the relevant factors, including the need for finality, the cost to be incurred and the imperative of ensuring that the cost should not be disproportionate to the stakes actually involved. Section 102 of the Code accordingly bars a second appeal in any suit of a nature cognisable by courts of small causes when the amount or value of the subject matter does not exceed rupees three thousand. The amount of rupees three thousand was increased from rupees five hundred as a result of the amendments made in 1956 and 1976. These amendments seek to ensure that the time and energy of the courts should not be wasted by over-litigious individuals.

No change for the **10.8.** We have in an earlier Chapter dealt at some length[2] with the question present. as to whether we should have a right of second appeal on a substantial question of law. It would not, therefore, be desirable to cover the same ground over again. Not much time has elapsed since the amendment referred to above in section 100 of the Code of Civil Procedure. It is obvious that the impact of the amendment would be visible only after the passage of some time. It is apposite that we should for the time being watch the situation.

---

[1]Section 102, Code of Civil Procedure, 1908.

[2]Para 4.10 to 4.13, *supra.*

CHAPTER 11

APPEALS AGAINST JUDGEMENTS OF SINGLE JUDGE

**11.1.** This Chapter is concerned with appeals from the decisions of a High Court judge to a Bench of the High Court. The right of appeal in such cases is governed by the relevant clauses of the Letters Patent of the High Court concerned,[1-3] or, in the case of High Courts which are not governed by the Letters Patient, by the corresponding provisions contained[4] in the instruments constituting the High Courts. Such instruments usually provide for appeal against judgments of a single judge to a Bench of the High Court.[5]

*Scope of the Chapter.*

**11.2.** There can be no doubt that even if an appeal were permissible against the judgment of a single judge of a High Court rendered in first appeal[6] it would amount to second appeal.

**11.3.** In an earlier Chapter[7] of this report, we made certain recommendations as to appeals in the High Courts—

*Recommendation made as to Letters Patent Appeal from decision on first appeal.*

    (a) there should be no further right of appeal in the High Court against a judgment pronounced in appeal by a single judge ;

    (b) regular first appeals should be heard by Division Benches, and not by single judges ;

    (c) in regard to other first appeals decided by single judges, the decision should have a stamp of finality, except where the matter is taken up by certificate or special leave in appeal to the Supreme Court.

We then indicated that we would later give the reasons which had weighed with us in making the above recommendations. We now proceed to give our reasons.

**11.4.** In regard to regular first appeals, our recommendation[8] that they should be heard by Division Benches was influenced by the fact that these appeals have an importance of their own, and it is but meet that there should be an application of plurality of minds for their disposal.

*Reasons for hearing by Division Bench.*

Regarding other first appeals[9] our recommendation was based on the view that important though they are, their importance cannot rank on the same level as that of regular first appeals. We, therefore, recommended that except where the statute so provides otherwise, such appeals may be heard and decided by single judges. This would result in larger disposal of the appeals belonging to this category. It may be that some of these appeals against orders might involve questions of importance. In such cases, it would be always open to the single judge before whom these appeals are posted to direct, either at the time of admission or at the time of regular hearing, that they be posted before a Division Bench. In any case, the decision of the single judge should, as already stated, have a stamp of finality[10]

---

[1]Clause 15, Letters Patent, Calcutta, Bombay and Madras.

[2]Clause 10, Letters Patent, Allahabad, Lahore, Patna and Nagpur (substantially continued in force by the High Courts Order or other instrument, e.g. section 8, Delhi High Court Act, 1966).

[3]Clause 12, Letters Patent, Jammu & Kashmir.

[4]E.g. (a) Section 5, Kerala High Court Act, 1958 (5 of 1959).

    (b) Section 18, Rajasthan High Court Ordinance (5 of 1949).

[5]For procedure, see Mulla, Code of Civil Procedure (1955), Vol. 1, pages 25, 417, 452.

[6]Unless abolished by statute, e.g., the U.P. High Court Abolition of Letters Patent Appeal Act, 1962 (Appendix 8), page 305.

[7]Para 8.9 and 8.10, supra.

[8]Para 11.3(b), supra.

[9]Para 11.3(c), supra.

[10]Para 11.3(c), supra.

54

**Reasons for barring appeal.** 11.5. Coming now to the reasons which have weighed with us in recommending[1] that there should be no further right of appeal in the High Court against the judgment of a single judge in first appeal, we may point out that the present position presents two anomalies, which will become evident when one compares the position under the Code of Civil Procedure (in respect of appeals governed by that Code) with the position under the Letter Patent. The matter could be considered with reference to questions of fact and questions of law.

**Questions of fact.** 11.6. So far as questions of fact are concerned the general scheme of the Code of Civil Procedure which applies where the first appeal is decided by a division court—is that the decision in first appeal should be final. Where a first appeal is decided by a judge of the High Court, the reason for putting a stamp of finality on the finding of fact recorded by the court in first appeal is all the more weighty.

**Question of Law.** 11.7. So far as questions of law are concerned, there no doubt exists under the Code a right of second appeal to the High Court, against the judgment passed in appeal by a court subordinate to the High Court, if a substantial question of law is involved. We have, in an earlier Chapter, examined the rationale of second appeal under section 100 of the Code. As we have already stated,[2] the principle underlying such appeals is that on questions of law, the authoritative pronouncement should emanate from the High Court, whose pronouncement on such questions would be binding on all the courts in the State. Now, most of regular second appeals are decided by single Judges and no further appeals can be filed in the High Court against such decisions in view of the express bar created by section 100A of the Code of Civil Procedure. Enunciations of principles of law[3] when given by single judges in *second appeals* thus bind the courts in the State. It would, therefore, seem somewhat anomalous that such enunciations of law should lose their binding force if they emanate from *single judges* of the High Court when dealing with *first appeals*. Necessity of affording a right of second appeal on substantial questions of law may exist when the matter is decided by a court subordinate to the High Court, but this consideration loses its relevance where the decision sought to be appealed from is itself that of a High Court judge. In this sense, a further appeal under the Letters Patent is anomalous, even on questions of law. There may be justification for allowing an appeal to the High Court (on law) from a judgment in first appeal passed by a subordinate court, but not when the first appeal itself is decided by a judge of the High Court. The demands of uniformity of law are amply satisfied by allowing an appeal to the High Court, and a further appeal is not needed. Of course, in all appropriate cases, where the question of law is of importance or needs an authoritative pronouncement by a larger Bench, it would be always open to the single judge,[4] to refer the matter to a larger Bench. But there is no compelling reason for permitting a second appeal in such cases.

11.8. It is for these reasons that we have made the recommendations on the subject,[5] to which we have already made a reference.[6]

**Appeals against judgment on the original side.** 11.9. It may be mentioned that under the Letters Patent of the High Court or other instrument creating the High Court, appeals against the judgments of the single judge exercising original or writ jurisdiction lie to a Division Bench of the High Court.[7] Nothing herein stated would affect the maintainability of such appeals.

---

[1]Para 11.3(a) and 11.3(c), *supra.*

[2]Para 4.10 to 4.13, *supra.*

[3]Section 100A, Code of Civil Procedure, 1908.

[4]Compare para 11.9, *supra.*

[5]Para 8.9 and 8.10 *supra.*

[6]Para 11.3, *supra.*

[7]Para 11.1, *supra.*

# CHAPTER 12

## CIVIL REVISIONS

**12.1.** The High Courts in India exercise revisional jurisdiction under several provisions—to which we have already made a reference.[1] Of these, the provision frequently resorted to in civil cases is section 115 of the Code of Civil Procedure, 1908. This is one of those sections that have come up for consideration whenever the question of delay in courts has been discussed. Section 115, it should be noted, contributes its share not only to increased judicial business of the High Courts, but also to the progress and duration of proceedings in subordinate courts. *Scope of revisional power.*

At least since 1924, this section has attracted the attention of law reformers, and the solutions suggested to minimise delay consequential on revision have been numerous and of infinite variety. We need not enter into a history of the section or of the various measures considered in the past for revising it. Attention will be confined to such features of revisional jurisdiction as are relevant for our purpose.

**12.2.** It may, in the first place, be mentioned that section 115 of the Code of Civil Procedure prescribes a very narrow area for interference by the High Court in exercise of its revisional jurisdiction. The High Court can interfere only where the subordinate court has exercised a jurisdiction not vested in it by law, or has failed to exercise a jurisdiction so vested or has acted in the exercise of its jurisdiction illegally or with material irregularity. There are certain other limitations recently introduced by the amendment made in 1976 in section 115. The scope of the section, and the limitations introduced recently, should both be borne in mind. It may be true that not more than 40 to 50 per cent of the applications for revision are admitted, and the rest are dismissed summarily. But when a rule *nisi* is issued in case of a revision, proceedings in the lower court are generally held up during the pendency of the revision and it is not infrequently that the record of the case in the subordinate court is also called for in the High Court, so that further proceedings in the subordinate court, even in the absence of a stay order, come to a standstill. Greater care should therefore be taken, and close scrutiny be made, at the stage of admission of revisions. *Revision under the Code of Civil Procedure—Need for scrutiny.*

**12.3.** We have, in an earlier Chapter,[2] laid stress on the point that in revisions against interlocutory orders, records of the court below should not be sent for unless an express order is made for the purpose by the High Court. We have also expressed[3] the view that it would be the resonsibility of the petitioner in such a case to file copies of pleadings, documents, depositions, applications and replies thereto or orders as were sought to be relied upon at the time of the hearing of the revision. The copies are to be accompanied by an affidavit about their correctness. To give effect to this recommendation, necessary modifications may be made in the rules of the High Court.[4] *Filing of fresh revision proceedings.*

---

[1]Chapter 2, *supra.*

[2]Para 5.2, *supra* (Revision against interlocutory orders).

[3]Para 5.22, 5.29, 5.30, *supra.*

[4]For action in connection with rules.

CHAPTER 13

CERTIFICATE FOR APPEAL TO SUPREME COURT

Certificate of fitness for appeal.

**13.1.** Articles 132, 133 and 134 of the Constitution make provisions for grant by the High Court of certificate of fitness for appeal to the Supreme Court in certain categories of cases. Experience tells us that most of the applications for such certificate in the past used generally to be made some days after the pronouncement of the judgment of the High Court. Notice of those applications had therefore to be issued to the opposite party. The applications were thereafter posted for hearing and necessary orders were made on the same after hearing the counsel for the parties.

Position under Constitution (44th Amendment) Act.

**13.2.** All this consumed considerable time and resulted in protracting the proceedings. The appropriate course to remedy such a situation appeared to be to provide for making of an oral application immediately after the judgement was pronounced by the High Court. The High Court would then pass an order on that application soon thereafter. The adoption of such a course would have obviated the necessity of issuing notice to the opposite party, because both parties already would have notice of the date on which the judgment is to be pronounced. It would have also rendered unnecessary elaborate arguments, as the whole matter would be fresh in the mind of the court as well as of the counsel for the parties. The necessity for making a suggestion on the above lines is no longer there, as we find that according to the Constitution (Forty-fourth Amendment) Act, amendment have been made in articles 132, 133 and 134, and a new article 134A has been inserted. As a result of the above amendments and insertion, every High Court passing or making a judgment, decree, final order or sentence referred to in clause (1) of article 132, clause (1) of article 133 or clause (1) of article 134 :—

    (a) may, if it deems fit so to do, on its own motion ; and

    (b) shall, if an oral application is made, by or on behalf of the party aggrieved, immediately after the passing or making of such judgment, decree, final order or sentence.

determine, as soon as may be after such passing or making, the question whether a certificate of the nature referred to in clause (1) of article 132, clause (1) of article 133 or, as the case may be, sub-clause (c) of clause (1) of article 134, may be given in respect of that case.

    In view of the said amendment of the Constitution, the time that was consumed in proceedings before the High Court for obtaining a certificate of fitness for appeal to the Supreme Court would be saved.

CHAPTER 14
## CRIMINAL APPEALS, REVISIONS AND REFERENCES

## I. INTRODUCTORY

**14.1.** Criminal appellate and revisional jurisdiction of the High Courts presents a fair measure of variety. Appeals could lie against convictions[1] or acquittals.[2] Revision can also lie against certain judgments and other orders,[3] when the case falls within sections 397 to 401 of the Code of Criminal Procedure, 1973. Then, there is the jurisdiction by way of hearing references for confirmation of the death sentence.[4] *Introductory.*

## II. CRIMINAL APPEALS

**14.2.** A criminal appeal lies to the High Court under the Code of Criminal Procedure, 1973, in a limited number of cases. In the first place,[5] any person convicted on a trial held by a Sessions Judge or an Additional Sessions Judge or on a trial held by any other court in which a sentence of imprisonment for more than seven years has been passed, may appeal to the High Court. There are certain statutory limitations[6] on the right of appeal, which are not material for our purpose. In the second place,[7] the State Government may, in any case of conviction on a trial held by any court other than a High Court, direct the Public Prosecutor to present an appeal to the High Court against the sentence on the ground of its inadequacy and, in certain cases, this power of appealing to the High Court can be exercised by the Central Government. In the third place,[8] subject to certain limitations, Government may direct the Public Prosecutor to present an appeal to the High Court from an original or appellate order of acquittal passed by any court other than a High Court. This appeal cannot be entertained except with the leave of the High Court.[9] In the case of an order of acquittal passed in any case instituted upon complaint, the complainant may present an appeal against acquittal to the High Court after obtaining "special leave" of the High Court.[10] *Appeals to the High Court.*

We need not deal with appeals from orders of criminal courts other than judgments of conviction or acquittal.

**14.3.** The need for expediting the hearing of criminal appeals has been emphasised more than once. The High Court Arrears Committee[11] presided over by Mr. Justice Shah noted that in some courts, a criminal appeal did not reach hearing for five or six years after the appeal was admitted to the file. *Need for expediting.*

**14.4.** Measures for expediting the hearing of criminal appeals in the High Courts, as far as we can see, will have to be mostly administrative. We may, however, deal with certain matters which need particular attention and in respect of which the law or rules, if necessary, should be amended *Criminal appeals from the Assistant Sessions Judge.*

**14.5.** There has been a tendency in some courts of dismissing first appeals against judgments of conviction *in limini* with a one word order—'dismissed'. Many such orders are reversed on further appeal and the cases are remanded. We are of the view that whenever a first appeal against a judgment of conviction is dismissed *in limini*, the count of appeal, irrespective of the fact whether it is the High Court or the Court of Session or Chief Judicial Magistrate, should *Summary dismissal of criminal appeal against conviction.*

---

[1]Para 14.2, *infra.*
[2]Para 14.2, *infra.*
[3]Para 14.7, *infra.* and sections 397 to 401, Code of Criminal Procedure, 1973.
[4]Chapter 2, *supra.* See also section 432(2), Code of Criminal Procedure, 1973.
[5]Section 374(2), Code of Criminal Procedure, 1973. See also para 14.8, *infra.*
[6]Sections 375 and 376, Code of Criminal Procedure, 1973.
[7]Section 377, Code of Criminal Procedure, 1973.
[8]Section 378, Code of Criminal Procedure, 1973.
[9]Section 378(3), Code of Criminal Procedure, 1973.
[10]Section 378(4), Code of Criminal Procedure, 1973. See para 14.10, *infra.*
[11]High Courts Arrears Committee Report (1972), page 75, para 109.

58

record a brief order, giving reasons as to why it is dismissing the appeal at the preliminary stage.

So far as the courts of session and of the Chief Judicial Magistrate are concerned, there already exists[1] a provision in the Code that such courts, while dismissing an appeal summarily, should record reasons for doing so.  We have,[2] while dealing with regular first appeals against final judgments in civil matters, recommended that not only the subordinate courts [for whom a provision already exists in Order 41, Rule 11(4), Code of Civil Procedure, 1908] but also the High Courts, should record a brief order giving reasons which weigh with it in dismissing such appeals at the preliminary hearing.  We feel that the need for such an order when a first appeal against a judgment of conviction is being dismissed at a preliminary hearing is all the more great, because a criminal appeal involves the liberty of the subject and has quite often more serious consequences.

**Hearing by single Judge of certain appeals against convictions.** 14.6.  In our view, it is also necessary to enlarge the power of the single judge of High Courts so as to enable a single judge to dispose of all criminal appeals against convictions except those in which a sentence of death or imprisonment for life is passed.  We would recommend that the High Courts may revise their rules accordingly, where such is not the position at present.

## III. CRIMINAL REVISIONS

**Various orders.** 14.7.  The orders against which criminal revision may be filed could themselves be of infinite variety,—such as orders for security, orders for the maintenance of wives and children, orders of certain types finally disposing of the proceedings,[3,4] and orders concerned not with the determination of guilt but with other matters (e.g. disposal of property).

**Importance of orders for maintenance.** 14.8.  We are particularly mentioning[5] revisions in regard to orders for maintenance passed under section 125 of the Code of Criminal Procedure, since, on a perusal of the reported decisions[6,7,8] on the subject, it appears that both the jurisdiction of the Magistrate to award maintenance under this section and the powers of the High Court to revise such orders, are assuming greater importance every day.  The exercise of the revisional jurisdiction of the High Court under the Code, or its supervisory jurisdiction under the Constitution,[9] has remedied serious injustice that might have otherwise arisen from orders of the Magistrates.

---

[1]Section 384(3), Code of Criminal Procedure, 1973.

[2]Para 8.14, *supra.*

[3]Section 397(3), Code of Criminal Procedure, 1973.

[4]See also Appendix 4.

[5]Para 14.7, *supra.*

[6]*Mehbubabi v. Nasir Mohd. Sheikh,* (1976) Maharashtra Law Journal, 631, summarised in the Yearly Digest (1976), column 813.

[7]*Mehbubabi v. Nasir Mohd. Sheikh,* (1976) 78 Bombay Law Reporter 258.

[8]*Kunhi Moyen v. Pthomma,* (1976) Kerala Law Times summarised in the Yearly Digest (1976), column 814,

[9]Article 227 of the Constitution.

CHAPTER 15

## ORDINARY ORIGINAL CIVIL JURISDICTION OF HIGH COURTS

**15.1.** We propose to deal, in this Chapter, with the ordinary original civil jurisdiction of High Courts. To start with, only the three High Courts of Calcutta, Madras and Bombay were vested with such jurisdiction, exercisable within the respective limits of the three Presidency towns. However, two important developments took place later. On the one hand, certain other High Courts (besides those in the Presidency towns) came to be vested with such jurisdiction.[1] On the other hand, the jurisdiction of the High Courts in the three Presidency towns came to be curtailed in course of time.[2]  *Ordinary original civil jurisdiction.*

**15.2.** As to the other High Courts, it may be noted that in the year 1966, ordinary original civil jurisdiction was conferred on the Delhi High Court[3] in respect of suits of a value of more than Rs. 25,000/-. This amount was subsequently[4] raised to Rs. 50,000/- with effect from 1st October, 1969.  *Delhi High Court ordinary civil jurisdiction.*

**15.3.** In regard to the erstwhile Union Territory of Himachal Pradesh, the hierarchy of courts was previously regulated by the Himachal Pradesh (Courts) Order, 1948, issued under the Extra Provincial Jurisdiction Act, 1947, as then in force. After the Delhi High Court was established,[5] such jurisdiction as was exercisable in respect of the Union Territory of Himachal Pradesh by the Court of the Judicial Commissioner for Himachal Pradesh was transferred to the High Court of Delhi, and it was also provided[6] that the High Court of Delhi shall have, in respect of the territories for the time being included in the Union Territory of Himachal Pradesh, "ordinary original civil jurisdiction in every suit the value of which exceeds twenty-five thousand rupees, notwithstanding anything contained in any law for the time being in force". The amount of twenty-five thousand rupees was raised[7] to fifty thousand[8] rupees in 1969.  *Himachal Pradesh.*

Subsequently, on the creation of Himachal Pradesh as a State in 1970, the High Court of Himachal Pradesh was created as a separate High Court,[9] and succeeded to the jurisdiction of the Delhi High Court in relation to the Union Territory of Himachal Pradesh. That is how the High Court of Himachal Pradesh has come to be vested with ordinary original civil jurisdiction in every suit the value of which exceeds fifty thousand rupees.

**15.4.** It would be of interest to note that when the Chief Court of Oudh was established under an Act enacted by the United Provinces legislature,[10] it was invested with original civil jurisdiction for the trial of suits valued at Rs. 5 lacs or above. The relevant section was as follows[11] :—  *Oudh Chief Court.*

"7. *Original Civil Jurisdiction*

The Chief Court shall have jurisdiction to hear and determine any suit or original proceeding of which the value is not less than five lakhs of rupees and notwithstanding anything contained the section 15 of the Code of Civil "Procedure, 1908, every such suit or proceeding shall be instituted in the Chief Court.

Provided that nothing in this section shall affect the provision of section 24 of the Code of Civil Procedure, 1908."

This jurisdiction was abolished in 1939.[12]

---

[1]See para 15.2 and 15.3, *infra.*

[2]See para 15.5, *infra.*

[3]Section 5, Delhi High Court Act, 1966.

[4]Delhi High Court (Amendment) Act, 1969.

[5]Section 17(1) and (2), Delhi High Court Act, 1966.

[6]Section 17(3), Delhi High Court Act (26 of 1966).

[7]Delhi High Court Amendment Act, 37 of 1969.

[8]See para 15.2, supra. ......  ......  ......  ......  ......  ...  ......  ...  ......  ... ......  .

[9]The State of Himachal Pradesh Act, 1970.

[10]Section 7, Oudh Courts Act (U.P. Act 4 of 1925). See *Bisent Bhuvan v. Son of Madho Singh* A.I.R. 1927 Oudh 59.

[11]Government of U.P. Gazette dated 16th May 1925. Part VII, U.P. Act No. 4 of 1925 (Oudh Courts Act 1925).

[12]Oudh Courts (Amendment) Act—U.P. Act 9 of 1939.

59

60

**Curtailment on establishment of City Civil Courts.** **15.5.** The jurisdiction of the three High Courts in the Presidency Towns came to be limited with the establishment, at different times, of the City Civil Courts, in all the Presidency towns. In Madras, the original civil jurisdiction of the Madras High Court was curtailed by the establishment of the civil court for the city of Madras in the year 1892, with jurisdiction in respect of suits or other proceedings of a civil nature not exceeding Rs. 25,000/- in value. The limit was gradually raised, until it was Rs. 50,000/- in the year 1955. This continues to be so up to the present time. The ordinary original civil jurisdiction of the Madras High Court, at present, is only in regard to matters exceeding Rs. 50,000/- in value.

The jurisdiction of the Bombay City Civil Court, according to the City Civil Court Act, 1916, was initially Rs. 10,000/-. It was raised to Rs. 25,000/- in January, 1950 and subsequently raised to Rs. 50,000/-.

In Calcutta, the City Civil Court was established only in the year 1957, with a pecuniary jurisdiction of Rs. 10,000/-. In regard to certain types of suits—compendiously described as "commercial causes"—its jurisdiction was restricted to suits and proceedings not exceeding Rs. 5,000/-. Some other exceptions were also made in regard to certain other types of suits which were not cognisable by this court, but they are not material for the present purpose. At present, the jurisdictional limit of the City Civil Court at Calcutta is Rs. 50,000/-.

**Present position.** **15.6.** So the position in all the five High Courts[1] which exercise ordinary original civil jurisdiction is that they try suits exceeding Rs. 50,000/- in value.

**Jammu & Kashmir.** **15.7.** Apart from the above, the High Court of Jammu & Kashmir has ordinary original civil jurisdiction in suits above Rs. 20,000/-.

**Debate about utility.** **15.8.** This process of expansion and curtailment of the ordinary original civil jurisdiction of High Courts has been accompanied by an interesting debate as to the utility of such jurisdiction. The argument in support of ordinary original civil jurisdiction of the High Courts has been that the administration of justice at this higher level is of a better quality and that it also inspires more confidence in the litigating public. There, however, is also a contrary view, which is opposed to the ordinary original civil jurisdiction of the High Courts on the ground that it is more costly and cumbersome.

**Previous Reports.** **15.9.** The question which has called for examination is whether the ordinary original civil jurisdiction of the High Courts should be retained or not. In the case of the Calcutta High Court, this question was referred for consideration to the Judicial Reforms Committee for the State of West Bengal (Trevor Harries Committee). The Committee recorded its conclusion thus:

"After giving the matter the fullest consideration ............... that the original side of this court should not be abolished in its entirety. We are convinced that there is a genuine demand for it, particularly in the commercial community and its abolition would be a real loss to the litigant public of Calcutta."[2]

The Law Commission of India, presided over by Shri M. C. Setalvad, also took the same view in its 14th Report.[3]

**Conclusion.** **15.10.** We do not propose to suggest any change in the matter. We may note that there is already a move to enhance the lower pecuniary limit of some of the High Courts to Rs. 1 lac. In view of the lower purchasing power of the rupee, this approach has much to commend itself.

**Original suits in High Courts—adoption of suggestion in 77th Report.** **15.11.** We have, while dealing with the question of delay in the trial courts, made certain suggestions in the 77th Report[4] with a view to cutting short delays. While some of those suggestions pertain only to the subordinate courts, many other suggestions, such as the desirability of recording statements of the parties under Order 10 of the Code of Civil Procedure before the framing of issues, would equally hold good for the trial of original suits in the High Courts. Those suggestions made in the 77th Report, if adopted with such modifications as may be called for in regard to proceedings in the High Court can, in our opinion, go a long way in cutting short the time taken for the disposal of original suits in the High Courts.

---

[1] Para 15.2, 15.3 and 15.5, *supra.*
[2] See 14th Report, Note 1.
[3] Law Commission of India, 14th Report, Vol. 1, pages 117-118, para 12 to 14.
[4] 77th Report.

CHAPTER 16

# EXTRAORDINARY ORIGINAL CIVIL JURISDICTION OF HIGH COURTS : WRITS

## I. GENERAL

**16.1.** Besides ordinary original civil jurisdiction,[1] High Courts have extraordinary original civil jurisdiction, derived from a number of sources. These sources include the Constitution,[2] the Code of Civil Procedure, 1908[3] the Letters Patent,[4] and other laws or instruments having the force of law.[5]

*Extraordinary original civil jurisdiction.*

**16.2.** Occasions for the exercise of such jurisdiction[6] may arise when a suit or proceeding is withdrawn by the High Court for trial before itself, under the Code of Civil Procedure, 1908, or when the suit or proceeding is transferred by the Supreme Court from another court to the High Court under that Code.[7] By the Letters Patent[8] also, certain High Courts in exercise of their extraordinary original civil jurisdiction, are empowered to remove any civil case from a court subordinate to them and cause it to be tried and determined by themselves.

*Occasions for the exercise of extraordinary original civil jurisdiction.*

## II. WRITS : NATURE AND VOLUME

**16.3.** The most important species of extraordinary original civil jurisdiction of the High Courts that has assumed importance in recent times is the jurisdiction to issue "writs". Before 1950, the power to issue a writ as such was vested only in the three High Courts for the three presidency towns,—though there were certain statutory provisions conferring on other High Courts the power to grant substantially similar relief. After 1950, under Article 226 of the Constitution,[9] power has been expressly conferred on all High Courts to issue, *inter alia*, directions in the nature of writs for the specified purposes. We are here concerned not with the details of the purposes for which writs can be issued, but with the breadth of the jurisdiction.

*Writs.*

**16.4.** With the increase in the socio-economic and welfare activities of the State and the growing awareness of the citizen as to his rights, Article 226 of the Constitution assumed singular importance in our system of administration of justice. It empowers every High Court, throughout the territories in relation to which it exercises jurisdiction, to issue to any person or authority, including, in appropriate cases, any Government within these territories, directions, orders or writs, including writs in the nature of *habeas corpus, mandamus, prohibition, quo warranto and certiorari* or any one of them for the purpose mentioned in that Article. With the passage of time, the institution of writs has been on the increase. The relevant Appendix[10] to this Report shows that the pendency of writs has substantially increased. Taking an all-India view, the total number of writs pending in all the High Courts as on December 31, 1977, was 134639, as against 122009 pending on 1st January, 1977. There is, thus, an increase of 12630, representing a 10.35 per cent increase in 1977 over the previous year. The existing strength of judges of the High Courts is obviously not sufficient to clear the backlog and at the same time to deal satisfactorily with the increasing institution. This shows the imperative need for the appointment of additional and *ad hoc* judges to tackle the problem,—a matter which we have already dealt with.[11] Here we confine ourselves to the ways and means that may be adopted to expedite the disposal of writ petitions. What we propose to indicate will be a general pattern

*Scope of writs.*

---

[1]Chapter 15. *supra.*
[2]Articles 226-227, of the Constitution.
[3](a) Section 24(1)(b)(ii), Code of Civil Procedure, 1908.
 (b) Section 25, Code of Civil Procedure, 1908.
[4]E.g. Letters Patent, clause 9 (Allahabad), clause 13 (Calcutta) and so on.
[5]See Chapter 2, *supra.*
[6]See para 16.1, *supra.*
[7]Section 25(1), Code of Civil Procedure, 1908.
[8]Para 16.1, *supra.*
[9]Para 16.4, *infra.*
[10]Appendix relating to figures of institution etc., Table IV.
[11]Chapter 3, *infra.*

61

62

### III. PROCEDURAL DELAYS IN WRITS : SERVICE

Service of notice and recommendation.

**16.5.** One of the causes of delay in the matter of writ petitions is the difficulty in getting service effected on the respondents. In most of the writ petitions, apart from the other respondents, the State Government or the Central Government too is a respondent. Whatever steps may be taken to expedite the service on other respondents, we may mention that so far as the State Government or the Central Government is concerned, in some of the High Courts the Advocate-General accepts service of the notice on behalf of the State Government, and the Central Government Standing Counsel accepts service of notice on behalf of the Central Government. We are given to understand that this procedure has worked well, and has resulted in the elimination of delays.

We suggest that the feasibility of adopting this course in other places might also be considered by the State Government and the Central Government. It may be added that the adoption of this course would necessitate increasing the strength of the staff of the office of the Advocate-General and the Central Government Standing Counsel.[1] Looking to the advantage which would accrue, no one should grudge the increase in the expense on that score.

Service matters.

**16.6.** In service matters, especially those relating to seniority, it has been often noticed that in addition to the Government, quite a large number of respondents who are interested in the subject matter of the writ petition or who are likely to be affected by the order on the petition, are also impleaded. Individual service of such respondents takes a lot of time. Quite often, by the time the notice of the writ petition issued by the court reaches at the address given, the official is transferred and the notice comes back with the report that the official is no longer at that station. To avoid this difficulty, we recommend that instructions may be issued to the various departments of the Government that so far as court notices are concerned, they should, instead of being sent back to the court with the above report, be re-directed to the new station of posting of the official concerned. It is obvious that the department would know the exact place at which an official is posted at a particular time.

Lengthy writ petitions.

**16.7.** It is not uncommon to come across writ petitions which are lengthy and prolix, even though the facts relevant to the points that call for decision lie within a narrow compass. It would facilitate quick disposal of writ petitions on the date of preliminary hearing as well as that of final hearing, if the writ petition is accompanied by a chronological statement of facts necessary for the purpose of the relief sought by the petitioner. This may be provided for in the rules.[2]

Show cause notice.

**16.8.** There are many petitions under article 226 of the Constitution which are dismissed at the preliminary stage by the High Court with a one-word order "dismissed". Quite a number of these orders are reversed on appeal and the cases are remanded to the High Court for disposal. All this entails unnecessary wastage of time and also leads to duplication of work. We are of the opinion that a substantial number of writ petitions can be disposed of at the preliminary hearing if a notice is issued to the opposite side to show cause why the writ petition be not admitted. The result of issuing such a notice is that fresh light is thrown on many of the allegations of fact which otherwise remain uncontroverted. Some new facets of law, not mentioned in the petition, may also be brought to the notice of the court in the return. All this helps the court in deciding whether the petition should or should not be admitted for regular hearing. Experience has also shown that as a result of show cause notice, the area of controversy becomes so much narrowed down that the parties agree to some quick solution of the controversy at that stage itself. These aspects highlight the utility and advantage of a show cause notice in appropriate cases. It is, however, essential that the show cause notice is made returnable by an early date, so that the provision regarding interim relief is also not abused. The High Court would also be on a much firmer ground in dismissing a writ petition if it does so after issuing a show cause notice.

Order of dismissal.

**16.9.** Apart from the above, we are of the opinion that the High Court, while dismissing a petition under article 226 of the Constitution, should record a short order, giving its reasons for not admitting the petition. This is necessary to enable the petitioner as well as the Supreme Court, in case the matter is

---

[1]For action by State Governments and Central Government.

[2]For rules.

taken up before it, to know what considerations have weighed with the High Court in dismissing the petition. The need for such an order is all the more great in writ pititions because, unlike in an appeal, in a writ petition there is generally no reasoned decision of a subordinate court.

**16.10.** Rules of the High Court should also specify the time, — as has already been done in many of the States,—during which counter-affidavit or the affidavit in opposition should be filed by the respondent. In our view, such time should not exceed three months from the date of the service of notice of admission of the writ. However, if sufficient cause is shown by application in writing made before the expiry of three months, the court may further extend the time for a period generally not exceeding one month. The respondent must, in every case, serve an advance copy of the counter-affidavit on the petitioner or his counsel. The Registry should refuse to accept the counter-affidavit if it is filed beyond three months or without obtaining an extension of time for the purpose from the court or without serving an advance copy on the petitioner or his counsel. *Time for filing counter-affidavit.*

**16.11.** If the counter-affidavit is not filed within three months or within the extended time, the case should be listed for hearing without counter-affidavit. The respondent shall not be entitled to file counter-affidavit after the expiry of the period mentioned above (original or extended) without express permission of the court. An advance copy of the counter-affidavit should be served on the petitioner or his counsel before the same is filed in court. *Consequences of non-filing of counter-affidavit.*

**16.12.** Rules of the High Court should also provide for filing a replication, if any is desired to be filed by the petitioner or if the court considers it necessary. Time for this purpose may be prescribed by rules to be four weeks from the date of service of copy of the counter-affidavit. *Replication by petitioner when to be filed.*

## IV. WRIT PETITIONS : HEARING

**16.13.** After the matter is complete in terms of the aforesaid rules, the writ petition should be included in the ready list of cases published by the court in chronological order according to its date of institution, except where the petition has, for sufficient reason, to be listed for a future date. The writ petitions which belong to a class needing priority, as has been indicated elsewhere,[1] would not, however, have to stand in queue. Apart from that, the daily list should be prepared strictly in the order in which the cases appear in the ready list, subject, of course, to the order of the court as to actual date in any matter. *Ready list.*

**16.14.** As recommended by us in the case of regular first[2] appeals, a concise note of arguments should be filed in writ petitions before the date of hearing. The contents of the note of arguments and the time of its filing should be the same as in the case of regular first appeals. It would not, however, be necessary to file such note of arguments in petitions for the issue of a writ of habeas corpus, as these petitions stand in a class by themselves. This apart, the reasons which weighed with us in suggesting filing a note of arguments in regular first appeals equally hold good for writ petitions. *Concise note of arguments.*

**16.15.** We have indicated above only a general pattern of rules[3]. However, it would be open to each High Court to frame or amend its own rules with such changes or variations as may be found to be necessary. The object of the rules should be to obtain a regulated procedure conforming to the principles of natural justice, at the same time securing quicker disposal of the writ petitions. The rules[4] will be efficacious and purposeful only if their observance is scrupulously adhered to. *General pattern of rules.*

## V. BENCHES FOR DECIDING WRIT PETITIONS

**16.16.** It is the general practice in High Courts to have separate writ benches, but it is necessary that their sittings should continue for a reasonable length of time. *Writ Bench.*

---

[1]See Chapter 7, *supra.*
[2]Para 6.19, *supra.*
[3]Para 16.4, *supra.*
[4]Para 16.4, *supra.*

64

**Grouping of writ petitions.** 16.17. While dealing with civil appeals[1] we have pointed out the necessity of grouping of appeals involving the same question of law. This is all the more important and necessary in the case of writ petitions. Very often, a number of writ petitions are filed in respect of the orders of administrative tribunals, involving not only the same point of law, but also the same or similar facts. The grouping of all such petitions by the Registry will very much help in the quick and satisfactory disposal of these cases.

**Practice of not listing writ petitions in anticipation of other petitions not to be favoured.** 16.18. It has also been observed that writ petitions raising a particular question are not listed by the office for hearing before the bench, simply on the ground that other petitions of the same nature are likely to follow. This is not a correct practice. Normally, unless there are some special features, it will be more conducive to better administration of justice if such a petition, when filed, is given precedence,—if need be, with the permission of the Chief Justice, and put up for decision in accordance with law. The chances of further or more petitions of the same or similar nature are thereby eliminated or minimised, in case the petition is dismissed. On the other hand, if the petition succeeds, it is possible that the department or authority concerned may take suitable action without further loss of time and harassment to persons similarly aggrieved.

## VI. DISPOSAL OF WRITS

**Time limit for disposal of writs.** 16.19. The writ is basically an expeditious remedy and the decision of the writ petition should normally be as quick as possible. The Writ Rules of the High Courts should be framed with that object in view. Having regard, however, to the extensive field that is covered by Article 226 and the nature of controversies that come up for decision before the court in these proceedings, we are of the view that the writ petitions should normally be disposed of within a year from the date of their institution, as suggested elsewhere in this Report.[2]

**Co-operation of Government necessary for expeditious disposal of writ petitions.** 16.20. It would be seen from the scheme of the Writ Rules recommended by us that for the expeditious functioning of the writ court very prompt and whole-hearted co-operation of the Government and its various Departments is necessary. Without such co-operation, the very purpose underlying article 226 of the Constitution would be frustrated. We, therefore, suggest that special attention be paid to this aspect at the Governmental level, and necessary instructions be issued to the various departments. It is only then that the problem of arrears and further accumulation of writ matters in courts can be tackled with any measure of success.

---

[1]Chapters 4 and 5, *supra.*
[2]See para 1.29, *supra.*

CHAPTER 17

JURISDICTION UNDER SPECIAL ACTS—TAX CASES

## I. THE PRESENT POSITION

**17.1.** A number of special Acts confer jurisdiction on the High Courts.[1] In an *Introductory.* earlier Chapter,[2] we have referred to the jurisdiction exercisable by the High Courts in appeals under special Acts. In this Chapter, we propose to deal with one important species of jurisdiction under special Acts, namely, jurisdiction in regard to matters relating to taxation. We are, in this context, primarily concerned with direct taxes.

Taxing statutes, as is well known, undergo changes more frequently than legislation on other subjects. It is obvious that as the pattern of taxing law changes, the pattern of litigation in proceedings concerned with the decisions of income-tax authorities would also change. Tax planning, in the sense of planning one's affairs so as to legitimately avoid tax, is also now a familiar phenomenon. In this process, the complexity of the questions that come up for determination before various appellate authorities under the direct tax laws increases. Thus, taxing statutes, complicated and technical as they usually are, require continual concern with them for acquiring and maintaining reasonable familiarity with their provisions. Jurisdiction under these laws has, therefore, an interest and importance of its own.

**17.2.** Authorities administering the direct tax laws have large powers, but an *Appeals in taxa-* important restraining influence is the review of their decisions by appellate *tion cases.* authorities functioning under those laws. The Income Tax Act and other Central laws relating to direct taxes provide a machinery for appeals. There is a whole hierarchy, starting with the Appellate Assistant Commissioner and ending with the Supreme Court. The first appeal lies generally to the Appellate Assistant Commissioner.

The Finance (No. 2) Act (19 of 1977)[3] now makes provision for disposal of appeals by the Commissioner (Appeals). From the decisions of the income-tax authorities mentioned above, an appeal lies[4] to the Income Tax Appellate Tribunal.[5]

In certain cases, there is an alternative avenue by approaching the Commissioner of Income-tax, but we are not concerned with that.

In this hierarchy of appeals, the final authority on facts is the Income Tax Appellate Tribunal,[6] while the High Courts, and, in certain cases, the Supreme Court[7] can be approached on questions of law. Jurisdiction of the High Court, as the law stands at present, is advisory (being exercisable on a reference made by the Appellate Tribunal). To the High Court, the Appellate Tribunal can make a reference on question of law. From the judgment of the High Court delivered on such reference, an appeal lies to the Supreme Court on a certificate of fitness for appeal granted by the High Court[8] or on special leave granted by the Supreme Court.[9,10]

**17.3.** This jurisdiction has been extensively resorted to, as would appear from *Volume of tax* the statistics on the subject. *cases.*

A large number of matters before the High Court consists of references made to it by the Appellate Tribunal under section 256 of the Income Tax Act.

---

[1]Chapter 2, *supra.*

[2]Chapter 9, *supra.*

[3]Finance (No. 2) Act (29 of 1977), section 39 and Fifth Schedule.

[4]Section 253, Income Tax Act, 1961.

[5]Briefly referred to as the Appellate Tribunal.

[6]*Rameshwar Prasad Bagala* v. *C.I.T., U.P.,* A.I.R. 1973 SC 182, 185, para 10

[7]Section 261, Income Tax Act, 1961.

[8]Section 261, Income Tax Act, 1961.

[9]*C.I.T.* v. *Arunachalam Chettiar,* 23 I.T.R. 180, 185 ; S.C: AIR 1953 SC 118, 121 para 8.

[10]Article 136, Constitution of India.

65

1961, or under substantially similar provisions in the other central enactments relating to direct taxes, or in certain state enactments relating to sales-tax and other indirect taxes.

It would appear[1] that on the 1st January, 1977, 12,133 Income Tax references and applications were pending in the High Courts, and during the year 1977, 6289 such references and applications were instituted. During the same year, 3195 references and applications were disposed of by the High Courts. At the end of the year 1977, 15,227 such references and applications were pending. The disposal, counted as a percentage of institution, was 50.8 per cent in the case of such references and applications. Barring the disposal rate in regard to election petitions, during the year 1977, this rate of disposal as a percentage of institution represents the lowest disposal rate of various types of cases during the year 1977.

## II. VARIOUS ALTERNATIVES

**Need for devising ways and means to ensure disposal.** 17.4. This is hardly a satisfactory situation. We have to devise ways and means so as to ensure that not only the arrears of references pending in the High Courts are cleared, but also that the number of references disposed of by the High Courts in a year is commensurate with the number of references made to the High Court during that period. Care would have, therefore, to be taken that as far as possible the number of references disposed of is not less than those made to the High Court in a year. It is apparent that the early disposal of references in tax matters is of importance, both from the point of view of the assessee and from the point of view of the State. So far as assessees are concerned, they would, by and large, be interested in the early disposal of matters relating to their tax liability and the extent of such liability. As regards the State, its interest in the recovery of revenue and avoidance of delay in such recovery is so obvious that it hardly needs any dilation.

**Need for certain measures to deal with delay in regard to taxation matters.** 17.5. From the figures to which we have referred above[2] it is evident that concerted efforts are needed to—

(a) increase the strength of judges in the High Courts to deal with taxation references; and

(b) constitute separate benches in High Courts wherever the volume of work so justifies, for disposing of tax cases.[3]

On the question whether any structural or procedural changes are needed in the machinery for finally determining questions arising in taxation matters, considerable labour has been devoted in the past to examining various alternatives.[4]

**Separate Benches.** 17.6. One way of expediting the disposal of income-tax references and of preventing accumulation of arrears in such matters is to constitute one or more separate Benches in the High Court to deal with such references, depending upon the volume of work. It is also plain that to get the optimum disposal, we should put those judges on such Benches as have some grounding in the subject. The constitution of a separate Bench for the disposal of tax cases might necessitate an increase in the strength of Judges. In view of the fact that delay in the disposal of tax matters impinges upon the revenue, the burden on the exchequer which would fall as a result of the increase in the strength of judges should not be grudged.

**Central Tax Court.** 17.7. One of the questions which has attracted attention in the matter of tax cases is the creation of one or more Central Tax Courts. This question was considered by the High Courts Arrears Committee presided over by Mr. Justice Shah, which expressed its view against the creation of such courts.[5] The Law Commission, in its 58th Report[6] also considered the pros and cons of the proposal to create such a Court and ultimately came to the conclusion that the idea of a National Tax Court could not be recommended.

---

[1]Ministry of Home Affairs, Department of Justice, letter No. 36/1/1978-Justice (M), dated 2nd June, 1978, Table V, item 9.

[2]Para 17.3, supra.

[3]See also para 17.9, infra.

[4]Para 17.6 to 17.17, infra.

[5]High Courts Arrears Committee Report (1972), page 69, para 81-82.

[6]Law Commission of India, 58th Report (January, 1974), pages, 72-73, para 6.12 to 6.18.

67

**17.8.** As against the above, the Direct Tax Laws Committee (more popularly known as the Chokshi Committee), in its Report of September 1978 has recommended the creation of a Central Tax Court with Benches at Ahmedabad, Bombay, Calcutta, Delhi, Kanpur, Nagpur and Madras. According to the Committee each Bench of the proposed Court should consist of two judges. Highly qualified persons should be appointed as judges of this court from among persons who are High Court judges or who are eligible to be appointed as High Court judges. According to the Committee, in the matter of conditions of service, scales of pay and other privileges, the judges of the Central Tax Court should be on par with High Court Judges.[1] Such courts, in the words of the Committee, "will be special kind of High Courts with functional jurisdiction over tax matters and enjoying judicial independence in the same manner as the High Courts". The Committee has also recommended that the jurisdiction of the Central Tax Court should be appellate, and not advisory. As such, appeals on questions of law would lie to the Central Tax Court and it would not be necessary to make a reference as is being done under the existing law to the High Courts. The Committee was conscious of the fact that implementation of this recommendation may necessitate amendment of the Constitution and that might take time. The Committee has accordingly suggested the desirability of constituting, in the meanwhile, special tax Benches in the High Courts to deal with the large number of tax cases by continuous sitting throughout the year. The judges to be appointed to these special Benches, in the view of the Committee should be selected from amongst those who have special knowledge and experience in dealing with matters relating to direct tax laws.

*Recommendation of Chokshi Committee.*

### III. CENTRAL TAX COURT AND TAX BENCHES

**17.9.** While we are in agreement with the view of the Chokshi Committee[2] that there should be a continuous sitting of the tax Benches in the High Courts if the volume of work so warrants,[3] and also as to the desirability of deputing those judges on such Benches as have a grounding in the tax laws, we would, as regards its proposal for creating a Central Tax Court, express our preference for the view taken by the High Courts Arrears Committee presided over by Mr. Justice Shah and by the Law Commission in its 58th Report, in so far as they arrived at the conclusion against the formation of the Central Tax Court.[4] The main reason which weighed with the Chokshi Committee in recommending the establishment of a Central Tax Court was the inability of the High Courts to cope with the number of references which were made to them under the tax laws.

*Preference of this Commission for view taken by earlier Commission.*

In our view, low disposal of references relating to direct tax laws can be adequately remedied by resorting to continuous sitting of tax Benches in the High Courts where the volume of work so warrants. In High Courts where there are not sufficient number of tax references, the tax Bench can have a continuous sitting till all the ready tax matters are disposed of. As mentioned earlier,[5] the view of the Chokshi Committee is based on the assumption that a constitutional amendment is required.

**17.10.** We are not in favour of too frequent changes of the Constitution. The Constitution is our basic law and there should be a resort to amendment of its provisions only in exceptional situations of more compelling nature. Amendment of the Constitution is not the answer to meet the general run of administrative and other difficulties. There is an element of sanctity about the provisions of the Constitution and although we do not suggest that they be canonised or given a stamp of deification, we are averse to suggesting changes of the constitutional provisions with a view to taking us out of every difficulty, fancied or genuine.

*Frequent constitutional changes not favoured.*

**17.11.** Another reason which has also weighed with us in agreeing with the conclusion of the High Courts Arrears Committee[6] and the Law Commission in its 58th Report[7] is the inconvenience to which the assessees would be subjected if, when they feel aggrieved, they have to go outside their State in appeal

*Inconvenience to assessees.*

[1]Direct Tax Laws Committee Report (September 1978), pages 173-175, para 11-6.10 to 11-6.22.
[2]Para 17.8, *supra.*
[3]See also para 17.5, *supra.*
[4]Para 17.7, *supra.*
[5]Para 17.8, *supra.*
[6]Para 17.9, *supra.*
[7]Para 17.9, *supra.*

68

or reference against the order of the Appellate Tribunal. It is plain that according to the Report of the Chokshi Committee,[1] the proposed Central Tax Court would not function in all the States. This would make it necessary in quite a number of cases for the assessees to go to other States for approaching the Central Tax Court.

**Conflicting views unavoidable.**

17.12. It is, no doubt, true that the disposal of references by the various High Courts sometimes results in different and conflicting views. This in the very nature of things, cannot be helped. It, however, needs to be mentioned that as stated elsewhere,[2] the Appellate Tribunal[3] is empowered to make a reference direct to the Supreme Court of a question of law, if the Tribunal is of the opinion that, on account of a conflict in the decisions of High Courts in respect of any particular question of law, it is expedient that a reference should be made direct to the Supreme Court.

## IV. SUBSTITUTION OF APPEAL FOR REFERENCE

**Substitution of appeal for reference.**

17.13. A view has also been expressed that the present procedure of the Appellate Tribunal making a reference to the High Court should be done away with, and, instead of that, an appeal should lie to the High Court against the order of the Tribunal on a question of law or a substantial question of law. The position, as already noted[4] is that an appeal lies from the Income Tax Authority concerned to the Appellate Tribunal on a question of fact as well as law[5]. The finding of the Appellate Tribunal on questions of fact is final.[6] In case, however, the assessee or the department feels aggrieved with regard to the finding of the Appellate Tribunal on a question of law, it can file an application to the Appellate Tribunal under section 256(1) of the Income Tax Act, 1961, within the prescribed time, for a reference to the High Court on the question of law arising out of the order of the Tribunal.[7] If the Appellate Tribunal finds, after issuing notice to the opposite party, that a question of law arises out of its order, it draws up a statement of case and refers to the High Court the formulated question of law.

If the Appellate Tribunal declines to make a reference to the High Court, it is open to the aggrieved person to apply to the High Court under sub-section (2) of section 256 of the Income Tax Act for an order directing the Appellate Tribunal to make ; a reference to the High Court regarding the question of law about which the Tribunal had declined to accede to the prayer of the applicant. The High Court in such application can, after hearing both the parties, make an order if the circumstances of the case so warrant, directing the Appellate Tribunal to refer the question of law to the High Court. In pursuance of the order of the High Court the Appellate Tribunal draws up a statement of case and refers the formulated question to the High Court.

**Advantage of appeal.**

17.14. The advantage of doing away with the reference, and substituting in its place a right of appeal, is that the time spent before the Appellate Tribunal in proceedings for referring the question of law to the High Court would be saved. It would also obviate the necessity of filing applications under sub-section (2) of section 256 of the Income Tax Act[8] in those cases in which the Appellate Tribunal has declined to make a reference about a question of law to the High Court.

**Advantage of reference.**

17.15. As against the above, the advantage of adhering to the present system of reference is that the time spent at the hearing of the reference is much less, compared with the time which the hearing in the High Court would take if the matter is taken up before it by way of appeal. In a reference, the High Court has before it the statement of the case drafted by the Appellate Tribunal. The statement of the case contains all the relevant facts, and in most cases it is a statement which is agreed to by both the parties to the case. The statement of case, as already mentioned[9] formulates the question of law which has

---

[1]Para 17.9, *supra*.
[2]See para 17.17, *infra*.
[3]Section 256, Income Tax Act, 1961.
[4]Para 17.3, *supra*
[5]Section 253(1), Income Tax Act.
[6]Para 17.3, *supra*.
[7]Section 256(1), Income Tax Act, 1956.
[8]Para 17.12, *supra*.
[9]See para 17.12, supra.

69

to be answered by the High Court. At the time of the hearing, the High Court, after looking at the statement of case, straightaway proceeds to hear arguments on the question of law. As against the above, in the event of an appeal, the High Court would have to cull out the necessary facts from the order of the Appellate Tribunal and also to find out the question of law which would arise. This would result in greater time being spent at the time of hearing. We may state that both the High Courts Arrears Committee and the Law Commission in its 58th Report have dealt with this question.

**17.16.** The High Courts Arrears Committee presided over by Mr. Justice Shah observed in this respect as under[1] :— *View of Shah Committee.*

> "43. This procedure under our administrative system is entirely archaic and is capable of being an instrument of great injustice "It would be wise to do away with all complicated provisions relating to the application for stating a case either under the order of the Tribunal or the High Court or the Supreme Court and to confer upon the aggrieved litigant a right to appeal from the order of the Tribunal on questions of law, on points raised and/or argued before the Tribunal. It would be necessary to impose certain restrictions on the exercise of that right—
>
> (a) that the appeal shall lie only on questions of law raised and/or argued before the Tribunal; and
>
> (b) that absence of evidence to justify a finding or a perverse finding be deemed a question of law."

**17.17.** The Law Commission, in its 58th Report, observed as under[2] :— *View of Law Commission (58th Report).*

> "6.13. In regard to the present provisions relating to the reference proceedings, there "appears to be almost complete unanimity for deleting them and for substitution of an appeal in their place; and this trend of opinion can be well appreciated, because it is common experience that the procedure of reference, at present contemplated by section 256, is dilatory and serves no significant or important purpose. We ought to add that if proceedings relating to reference are omitted from section 256, it is certain that the decisions of the Income Tax Appellate Tribunal would naturally be more elaborate and conform to the traditional requirements of appellate judgment. We are, therefore, satisfied that the present provision about reference should be deleted. We shall deal later with the question of the procedure to be substituted in their place."
>
> .......... ..........
>
> "6.23. Therefore, having carefully examined this problem, we are satisfied that the only reasonable solution, which may tend to make the disposal of tax matters more satisfactory and expeditious, would be to delete the present provision relating to reference (section 256, Income Tax Act) and to provide for an "appeal against the decision of the Income Tax Appellate Tribunal on a substantial question of law instead of on a simple question of law, as at present, and also to provide that against the appellate decision of the High Court, it should be open to the aggrieved party to move the Supreme Court with a certificate of the High Court that the case involves a substantial question of law of general importance which needs to be decided by the Supreme Court."

**17.18.** It may also be mentioned that if on an application made under section 256, the Appellate Tribunal is of the opinion that on account of a conflict in the decisions of the High Courts in respect of any particular question of law, it is expedient that a reference should be made direct to the Supreme Court, the Appellate Tribunal may draw up a statement of the case and refer it through its President direct to the Supreme Court.[3],[4] *Direct reference to Supreme Court by the Appellate Tribunal.*

**17.19.** Since the matter about the substitution of appeal in place of reference against the order of the Tribunal has already been dealt with[5] by the High Courts Arrears Committee and the Law Commission in its 58th Report, sent in 1974, we do not propose to say anything further in the matter. *No further comments.*

[1]High Courts Arrears Committee Report (1972), page 60, para 43.
[2]Law Commission of India, 58th Report (Structure and Jurisdiction of the Higher Judiciary), para 6.13 and 6.23.
[3]Section 257, Income Tax Act, 1961.
[4]See also para 17.11, *supra.*
[5]Para 17.15 and 17.16, *supra.*

CHAPTER 18

APPEALS TO COURTS SUBORDINATE TO THE HIGH COURT

I. CIVIL AND CRIMINAL APPEALS IN SUBORDINATE COURTS

Civil appeals in subordinate courts. **18.1.** First appeals in the courts subordinate to the High Court constitute an important stage of litigation in quite a large number of cases. In order to cut short the chequered course of litigation, one of the major steps which will have to be taken would be to reduce the time consumed for the disposal of appeals in the courts subordinate to the High Court. The chart given on page No. 71 indicates the number of appeals pending at the district level in the various States in the country in 1978.

Criminal appeals to subordinate courts. **18.2.** The chart given on page No. 71 also indicates the number of criminal appeals and revisions pending in the Sessions Courts in the various States during the year 1978.

Forum of civil appeals and criminal appeals. **18.3.** So far as civil appeals from decrees passed by the trial courts are concerned, they lie to the High Court or the District Judge or the Subordinate Judge, by whatever name he is described in the State, depending upon the valuation of the suit as provided in the Civil Court Act in force in that particular State.

Criminal appeals lie to the Court specified in the Code of Criminal Procedure.

Any person convicted on a trial held by a sessions judge or an additional session judge can appeal to the High Court. Any person convicted on a trial held by any other court in which a sentence of imprisonment for more than 7 years has been passed can appeal to the High Court.

Any person convicted on a trial held by an Assistant Session Judge or a Metropolitan Magistrate or a Magistrate of the first or the second class may appeal to the court of session.[1] There are certain limitations as to appeals in petty cases.[2]

Appeals against a sentence on the ground of its inadequacy and appeals against acquittals lie to the High Court, subject to certain conditions.[3]

II. PECUNIARY LIMITS OF APPELLATE JURISDICTION OF THE DISTRICT JUDGE

Present law. **18.4.** Coming more specifically to the pecuniary limits of the appellate jurisdiction of the District Judge, we may state that the limits of such jurisdiction vary from State to State.[4] For example, the appellate jurisdiction of the District Judge in Gujarat, Himachal Pradesh, Kerala and Rajasthan is Rs. 10,000/-. In Andhra Pradesh, it is Rs. 15,000/-, but a proposal to raise it further is stated to be under consideration. In Maharashtra[5] according to the Bombay Civil Courts Act, 1869, the appellate limit has been raised to Rs. 25,000/-.

Need for change in valuation. **18.5.** The regulation of appellate jurisdiction on the basis of valuation is sound in principle, but it has to be kept in mind that the amount for the purpose of jurisdiction has to be fixed according to the conditions as they prevail when the fixation is made; and such amount ought to be revised with the changing conditions. As far back as 1949, the High Court Arrears Committee,[6] set up by the Government under the Chairmanship of Mr. Justice S. R. Das for enquiring

---

[1]Section 374, Cr. P.C., 1973.

[2]Section 376, Cr. P.C., 1973.

[3]Sections 377 and 378, Cr. P..C., 1973.

[4]See Appendix 1.

[5]For details of appellate jurisdiction of District Judge, see Appendix 1.

[6]High Courts Arrears Committee Report (1949), quoted in 14th Report, Vol. I, page 370, para 12.

70

Position of Institution, Disposal and Pendency In Criminal and Civil Courts During 1976, 1977 and 1st Half Year of 1978.

| | Institution | | | | | Disposal | | | | | Pendency as on | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1-1-76 to 30-6-76 | 1-1-76 to 31-12-76 | 1-1-77 to 30-6-77 | 1-1-77 to 31-12-77 | 1-1-78 to 30-6-78 | 1-1-76 to 30-6-76 | 1-1-76 to 31-12-76 | 1-1-77 to 30-6-77 | 1-1-77 to 31-12-77 | 1-1-78 to 30-6-78 | 30-6-76 | 31-12-76 | 30-6-77 | 31-12-77 | 30-6-78 |
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| **CRIMINAL** | | | | | | | | | | | | | | | |
| *Sessions Courts* | | | | | | | | | | | | | | | |
| Original | 31,267 | 62,920 | 36,791 | 92,763 | 53,258 | 25,769 | 53,955 | 34,899 | 89,838 | 52,338 | 60,264 | 64,548 | 66,716 | 67,992 | 68,975 |
| Revision | 19,470 | 37,401 | 16,343 | 36,848 | 21,210 | 18,542 | 35,553 | 17,272 | 35,920 | 19,938 | 19,552 | 19,239 | 18,035 | 19,841 | 21,104 |
| Appeals | 33,878 | 79,853 | 34,750 | 71,990 | 34,082 | 30,377 | 64,436 | 34,960 | 71,741 | 32,996 | 38,035 | 42,098 | 41,620 | 42,103 | 43,184 |
| TOTAL | 84,615 | 1,71,174 | 87,884 | 2,01,601 | 1,08,550 | 74,688 | 1,53,944 | 87,131 | 1,97,499 | 1,05,272 | 1,17,851 | 1,25,885 | 1,26,371 | 1,29,936 | 1,33,263 |
| *Magisterial Courts* | | | | | | | | | | | | | | | |
| Police challans | 28,96,670 | 58,96,900 | 25,54,903 | 49,55,288 | 24,31,578 | 26,85,136 | 56,89,229 | 26,21,523 | 50,83,161 | 22,46,893 | 26,14,391 | 27,32,279 | 26,40,119 | 25,75,815 | 27,57,897. |
| Complaint cases | 13,18,638 | 27,00,166 | 11,61,536 | 23,56,947 | 11,19,061 | 12,53,847 | 25,05,150 | 11,64,839 | 22,57,253 | 11,11,522 | 16,09,226 | 17,39,866 | 17,08,739 | 17,78,975 | 17,86,328 |
| TOTAL | 42,15,308 | 85,97,066 | 37,16,439 | 73,12,235 | 35,50,579 | 39,38,583 | 81,94,419 | 37,86,362 | 73,80,414 | 33,58,415 | 42,23,617 | 44,72,145 | 43,48,858 | 43,54,790 | 45,44,225 |
| **CIVIL** | | | | | | | | | | | | | | | |
| *Original side* | | | | | | | | | | | | | | | |
| Regular Suits | 4,53,004 | 9,26,851 | 4,57,592 | 9,76,634 | 4,79,245 | 4,12,664 | 9,12,121 | 4,36,860 | 9,23,747 | 4,31,700 | 13,46,867 | 13,17,821 | 13,37,966 | 13,70,671 | 14,17,002 |
| Miscellaneous cases | 5,86,352 | 12,89,583 | 5,75,068 | 12,92,314 | 5,95,607 | 5,42,359 | 12,48,554 | 5,63,683 | 12,73,621 | 5,74,945 | 7,19,263 | 7,18,225 | 7,31,506 | 7,39,915 | 12,14,196* |
| TOTAL | 10,39,356 | 22,16,439 | 10,32,660 | 22,68,948 | 10,74,222 | 9,55,003 | 21,60,715 | 10,00,463 | 21,56,768 | 10,66,645 | 20,60,070 | 20,36,046 | 20,69,872 | 21,09,986 | 26,31,198 |
| *Appellate Side* | | | | | | | | | | | | | | | |
| Regular appeals | 61,596 | 1,27,051 | 63,574 | 1,36,901 | 66,284 | 54,980 | 1,22,071 | 62,312 | 1,32,922 | 64,140 | 1,37,710 | 1,34,659 | 1,36,363 | 1,39,086 | 1,41,156 |
| Miscellaneous appeals | 37,967 | 85,012 | 34,279 | 70,066 | 33,673 | 35,711 | 80,741 | 36,220 | 75,803 | 33,473 | 55,985 | 57,660 | 55,493 | 51,696 | 51,862 |
| TOTAL | 99,563 | 2,12,063 | 97,853 | 2,06,967 | 99,957 | 90,691 | 2,02,812 | 98,532 | 2,08,725 | 97,613 | 1,93,695 | 1,92,319 | 1,91,856 | 1,90,782 | 1,93,018 |

*This increase in pendency is due to 454463 Karnataka Agriculturist Debt. Relief Act cases which were not included previously.

72

and reporting, besides other matters, as to the advisability of curtailing the right of appeal and revision and the extent and method by which such curtailment should be effected, observed that 30 to 40 per cent of the first appeals in the High Court arose out of suits valued at Rs. 10,000/- or less, and that "considering the depreciation which has taken place in the value of money and the consequent rise in the market value of the property generally, there does not appear to be any cogent reason why the District Court should not be vested with jurisdiction to dispose of first appeals upto Rs. 10,000/-". It may be mentioned that the jurisdiction of the District Judge for purposes of civil appeals was Rs. 5,000/- in most States when the above observations were made.

**18.6.** In the Report of the High Courts Arrears Committee, presided over by Mr. Justice Shah, this aspect was again stressed.[1] The Committee stated that disputes concerning transactions in immovable property and commodities that were then brought before the High Court by way of first appeals were such as did not reach the High Court in the earlier decades. The Committee also recommended Rs. 20,000/- as the minimum for the appellate jurisdiction of the High Court.

Need to raise appellate jurisdiction of District Judges.  **18.7.** The pecuniary appellate jurisdiction of the District Judge was fixed long ago in most of the States. Since then, there has been a considerable depreciation in the value of the rupee and we feel that it would be appropriate if the pecuniary appellate jurisdiction of the District Judge is raised. This would also have the effect of relieving the workload in the High Courts. No doubt it would give rise to a corresponding rise in the workload of the District Judge and this might, in its turn, entail the appointment of more persons as District Judges or Additional District Judges. Despite this, we are of the view that the pecuniary appellate jurisdiction of the District Judge should be raised, because we find that the time normally taken for the disposal of an appeal in the court of District Judge is less than the time taken in the High Court and also because the cost involved in an appeal in the District Court is less than that in the High Court.

Whether uniform figure feasible.  **18.8.** This takes us to the next question as to what should be the pecuniary jurisdiction of the District Judge, and whether we should have a uniform figure for the different areas in the country. We have given our thought to the matter and are of the view that it would not be desirable to fix a uniform figure for the entire country. The circumstances vary from State to State and place to place. The impact of the depreciation in the value of the rupee is also not felt to the same extent in different areas.

Recommendation.  **18.9.** We have, therefore, refrained from suggesting a uniform figure for the pecuniary appellate jurisdiction of the District Judge. All that we can point out[2] is that the pecuniary appellate jurisdiction of the District Judge has been raised to Rs. 25,000/- in one State and that in some other States it has been raised to Rs. 20,000/-. As already mentioned,[3] it would depend on local conditions in each State as to what figure should be fixed for the purpose of appellate jurisdiction of the District Judge. Accordingly, we leave the matter to the authorities in each State.

These remarks would also hold good so far as the question of enhancing the appellate jurisdiction of subordinate judges (by whatever nomenclature they are described) is concerned.

Appeals of higher value to continue to be heard by High Courts.  **18.10.** At the same time, we are averse to increase inordinately the pecuniary appellate jurisdiction of the District Judge. Appeals in cases of higher values in our opinion, should continue to be decided by the High Courts, because the High Courts, by and large, inspire greater confidence.

## III. NUMBER OF COURTS AND ALLOTMENT OF DAYS

Number of appellate courts and allotment of days for civil appeals— Recommendation.  **18.11.** One important step which will have to be taken with a view to curtailing the time taken for the disposal of civil appeals is to ensure that the number of appellate courts in each district is sufficient to deal with the volume of appeals instituted in the district. As it is, we find that these appeals remain pending

[1]High Courts Arrears Committee Report (1972), page 63, para 55
[2]See Appendix 1.
[3]See para 18.8. *supra.*

in the courts subordinate to the High Court for a long time because of the low priority which is accorded to them in the matter of disposal. It has been common experience that the appeals fixed in the court of District Judge are seldom taken up for hearing on the first or second date of hearing. The parties and their counsel attend the court on those dates and after waiting for a considerable time have to go back because the presiding officer of the court is pre-occupied with the recording of evidence in a sessions case or has to deal with some other matter to which preference is shown for the purposes of disposal. It is one thing if such a situation were to arise on a few occasions or in a small number of cases. Where, however, it becomes almost a matter of rule and civil appeals get repeatedly adjourned for want of time because of the pre-occupation of the presiding officer with other cases, the inevitable effect is to create a feeling of dissatisfaction and frustration amongst the litigant public. It also results in what we regard as unnecessary and avoidable prolongation of the course of litigation. We recommend that the courts subordinate to the High Court vested with appellate jurisdiction should set apart a number of days every month for the disposal of civil appeals. On those days, except for some compelling reason, the only cases, apart from miscellaneous matters, to be listed before the court should be civil appeals. Where, however, the workload of the pending file in a particular court (that is to say, the general workload apart from appeals) is so heavy as not to permit the setting apart of a number of days in a month exclusively for the disposal of civil appeals, recourse should be had to increasing the number of appellate courts in the district, so that the appeals can be disposed of without undue delay.

**18.12.** It needs to be emphasised that the time required for the disposal of an appeal is much less compared with that taken for the disposal of the original suit. So far as appeals in the courts subordinate to the High Court are concerned, generally they are not of a very complicated nature, and if a number of days were earmarked in each month for dealing exclusively with such appeals we see no particular reason as to why they should remain pending for an unduly long time. Normally, in our opinion, it should be possible to dispose of most of the civil appeals in the courts subordinate to the High Court within six to nine months of their institution. The objective of expeditious disposal of appeals in those courts, in our opinion, can be attained without much difficulty if only proper attention is given for this purpose. The problem in this respect is not intractable. Of the three problems of delay which face us, namely, those relating to— <span style="float:right">Time required for disposal of civil appeals.</span>

    (i) disposal of suits in trial courts,

    (ii) disposal of appeals in courts subordinate to the High Court, and

    (iii) disposal of appeals in the High Courts,

we feel that the problem at No. (ii) is the easiest of solution. It can be tackled by just increasing the number of the appellate courts and the increase which would be needed for this purpose would be rather small and insignificant compared with the increase in the number of courts necessary for dealing with problems at No. (i) or (iii).

**18.13.** What we have said above about civil appeals also holds good for criminal appeals in the courts subordinate to the High Court. We have already given[1] the number of those appeals pending in the various States. With a little increase in the number of those courts, it would be possible not only to keep the disposal abreast of the institution but also to reduce the backlog of arrears. Criminal appeals too are accorded low priority. Experience tells us that quite often they have to be adjourned because the presiding officer of the court is pre-occupied with the disposal of some sessions or other important case. Whatever steps we have indicated above regarding civil appeals[2] can also be adopted for the disposal of criminal appeals. Increase in the number of courts of Additional District and Sessions Judges would be helpful in expediting disposal of both civil and criminal appeals, as these courts can deal with both types of appeals. It can also sometimes happen that there is not enough work for the court of Additional District and Sessions Judge which may be created for one district. In such an event, the Additional District and Sessions Judge can look after the appeals in two adjoining districts. <span style="float:right">Number of courts and allotment of days for criminal appeals.</span>

[1]Para 18.2. *supra*.

[2]Para 18.3 to 18.12, *supra*.

74

**Number of Public Prosecutors.**

**18.14.** One difficulty which sometimes has been encountered in the disposal of criminal appeals is that there are not enough number of public prosecutors for each district. Most often one public prosecutor has to look after criminal cases in more than one Sessions Court. This actually leads to the situation that when criminal cases are called in both the courts, the public prosecutor can attend to cases in only one of them. The result is that the cases in one of the courts either proceed without effective representation of the public prosecutor, or have to be adjourned. Either of the results is undesirable. We are, therefore, of the opinion that there should be as many public prosecutors in each district as are adequate to deal with criminal cases as and when they are called in the different courts.[1]

## IV. CONCISE NOTE OF ARGUMENTS

**Concise note of arguments not necessary in civil appeals in subordinate courts.**

**18.15.** In the Chapter dealing with arguments and judgments[2] we have made a recommendation that in regular first appeals to the High Court the parties should file a concise note of arguments. We have considered the question whether the filing of a concise note of arguments should be similarly made compulsory in regard to civil appeals in the courts subordinate to the High Court, and have decided against such a course. The reason is that generally, appeals in those courts are, as already mentioned,[3] not of a very complicated nature. The time taken for arguments in those courts is also much less compared with that taken for arguments in regular first appeals in High Courts. Stenographic assistance is also not available in those courts to the same extent as in the High Courts. Taking all these circumstances into consideration and keeping in view the existing conditions we do not regard it proper at present to make the filing of concise notes of arguments compulsory for civil appeals in these courts.[4]

---

[1]*Cf.* 77th Report, para 12.14.
[2]Para 6.19, *supra.*
[3]See para 18.12, *supra.*
[4]See also para 6.25, *supra.*

CHAPTER 19

## HIGH COURT FOR GOA, DAMAN AND DIU

**19.1.** While the territories throughout the length and breadth of Union of India are subject to the jurisdiction of some High Court, the Union Territory of Goa, Daman and Diu stands in a different position. The highest court for this territory is that of the Judicial Commissioner. Appeals against the judgments of the Judicial Commissioner can, of course, lie to the Supreme Court as against judgments of High Courts. Income tax references relating to the above territory lie to the High Court at Bombay.[1] Apart from that, writ petitions relating to that territory are filed in, and disposed of by, the court of the Judicial Commissioner.[2] Likewise, civil and criminal appeals against the judgments of District and Sessions Judges and subordinate courts lie to the court of the Judicial Commissioner. *Present position as to Goa, Daman and Diu.*

**19.2.** In our opinion, the present disparity[3] between the Union Territory of Goa, Daman and Diu and other parts of India, which is primarily due to the accident of history, should be done away with as soon as possible, and the above territory should also be made subject to the jurisdiction of a High Court. Considering the fact that the population of the territory is not very large, it may not be feasible to have a separate High Court for it. It seems to us more appropriate to extend the jurisdiction of another High Court to the territory. A circuit Bench of that High Court can sit in the territory for the disposal of cases arising in the territory. Creation of such a circuit Bench would obviate the necessity of people belonging to the territory being forced to go to any other State for approaching the High Court. It would also prevent the chance of cases arising in the territory getting submerged in the large number of cases of the State wherein the High Court already exercises jurisdiction. Not to post a circuit Bench of the High Court in this territory would necessarily cause heart-burning in the people belonging to the territory. *Recommendation.*

**19.3.** Members of the Bench and the Bar in the Union Territory with whom the Chairman of the Commission held discussion during his visit to the Union Territory were definitely of the view that for this Union Territory, jurisdiction should be conferred on some High Court, so that its inhabitants may have access to justice of the same quality as the inhabitants of the rest of India at every level. *View of the Bench and the Bar.*

**19.4.** It may also be mentioned that for the Union Territory of Dadra and Nagar Haveli, jurisdiction has been conferred on the Bombay High Court.[4] The Dadra and Nagar Haveli Act provides that as from such date as the Central Government may, by notification in the Official Gazette, specify, the jurisdiction of the High Court at Bombay shall extend to Dadra and Nagar Haveli. The requisite notification was issued[5] so as to take effect from 1st July, 1965. *Dadra and Nagar Haveli.*

---

[1]Sections 256 and 269(vi), Income Tax Act, 1961.

[2]Judicial Commissioners (Declaration as High Courts) Act, 1950.

[3]Para 19.1, *supra.*

[4]Section 11, Dadra and Nagar Haveli Act, 1961. (35 of 1961).

[5]S.O. No. 1957, dated 15th June, 1965. Gazette of India, dated 17th June, 1965, Part II, section 3(ii), Extraordinary page 579.

75

CHAPTER 20

## CONCLUSION

*Details avoided.* **20.1.** We are now coming to the close of our Report. We have deliberately avoided burdening this Report with too much of detail or too many statistics. Having regard to the paramount importance of prompt action for implementing such of our recommendations as may be found acceptable, and bearing in mind the need for presenting our views in a form that may facilitate such prompt action, we have considered it wise to confine ourselves to the essentials of the problem.

*Search for solutions to be regarded as a quest.* **20.2.** It should not, however, be assumed that the adoption of the various measures recommended in this Report will solve the problem of arrears for all times to come. We have no such illusions, and would prefer to be a little sceptic till the implementation of our recommendations. The search for a permanent solution to the problem would be futile. In human history, in the long run, there are no solutions—only problems. The search for a solution must, therefore, be a continuous process. It is a quest, not a discovery.[1]

In the affairs of men—and particularly in a field in which many complex factors operate together and in which a satisfactory solution postulates a consideration of several aspects in conflict with each other—a permanent solution would be difficult. This or that aspect may with the passage of time, become prominent and others may shade into insignificance. No solution, even if it is satisfactory for the needs of the moment, would be effective for all times to come. Experience may reveal the inadequacy, or even the total inappropriateness, of a particular assumed solution; and fresh efforts may then have to be made to devise measures for dealing with the problem. This is precisely the reason why in most countries with whose legal systems we are familiar, the problem of delay and arrears in courts had to be examined more than once in the course of, say, the last half a century.

*Periodical re-definition of methods.* **20.3.** In this sense, the quest for a solution must be continuous and the system must be kept under constant review. Each fresh effort must assess the gains that might have already been made, take into account the shortcomings which might have come to the surface and the deficiencies which have made themselves manifest, and in the light of that, re-define the methods and seek new solutions.

*Similarity with past recommendations and need for implementation.* **20.4.** Perusal of this Report would show that though we have made a number of new fresh recommendations, there are certain other matters about which our recommendations are more or less similar to those that have been made already by the various Committees and Commissions which have, in the past, dealt with the question of delay and arrears. The similarity of those recommendations, in the very nature of things, is inevitable and cannot be helped. The response of those who have spent many years in the world of law to some of the problems faced in the working of the judicial system cannot be very dissimilar or much different, and it should not be surprising if we find a trend towards similarity of the remedies suggested by them. The fact that, like other Committees and Commissions appointed for the purpose in the past, we have had to pin-point attention to the desirability of resorting to substantially similar steps and measures in quite a number of fields goes to show that much remained to be done in the matter of implementing the recommendations made in the past by the various Committees and Commissions. It is in the above context that we wish to emphasise that, unless there be positive will and strong desire to give concrete and practical shape to the recommendations, the problem of delay and arrears would dog our steps in the judicial field. It is also plain that there cannot be much satisfaction in having Reports of Committees and Commissions, if those Reports are ultimately to be shelved in pigeon holes to gather dust and to be taken out only when a future Committee or Commission is again entrusted with the task of dealing with delays and arrears.

---

[1] Daniel Borstin (Librarian of Congress) "Democracy and its Discontents", extracted in "Technology and Democracy" (Autumn 1978) American Review, 66, 72.

76

**20.5.** Finally, we may add that any report that deals with the question of delay in the disposal of judicial cases and the heavy backlog of arrears can bear fruit only if prompt action is taken on the report and there is speedy implementation of such of the recommendations contained therein as are found to be acceptable. A report dealing with the question of delay must be distinguished from a report dealing with the review of a particular enactment or code. A report of the former kind has an urgency of its own, and it is but imperative that there should be no undue delay in taking action on report which itself deals with the question of eliminating delay.

*Need for speedy implementation.*

CHAPTER 21

## SUMMARY OF MATTERS DEALT WITH

Following is a summary of matters dealt with in the Report.

1. **Introductory.**

(1) The High Courts in India exercise a variety of jurisdictions, affording a variety of remedies; these are necessary for ensuring the proper administration of justice and enforcement of legal rights. However, the problem of piling arrears, aggravated by increased institution and delay in appointing judges, requires to be attended to without delay.[1]

(2) Speedy justice is essential to an organised society. At the same time, the basic norms for ensuring justice cannot be dispensed with.[2] The judicial process in India has commanded the confidence of the Indian community.[3] To maintain the confidence, delay and arrears should be attended to.

(3) Various efforts have been made so far to solve the problem.[4] Mere legal amendments cannot, however, solve a problem created by increased institution. Nor can mere statutory reforms achieve improvement, as there are human factors involved,[5] and improvements operating within the judicial system can have only a limited impact.

(4) To prevent arrears, disposal must maintain pace with institution. The backlog must also be attended to. There have been legal as well as extra-legal factors, leading to increased workload. Nevertheless, the problem is curable if all concerned set their hearts at it.[6]

(5) Certain norms have to be prescribed to determine the cases which can be treated as old. (Specific periods of durations are set out).

(6) A good deal of litigation being one to which the Government is a party, its departments should afford all reasonable co-operation to the judicial process.[7]

(7) The figures show that arrears have been continuous; that their rate itself has gone up; and that they are of an all-India extent.[8]

2. **Jurisdiction of High Courts and City Civil Courts.**

(8) High Courts in the three Presidency towns exercise ordinary original civil jurisdiction, and also several other species of jurisdiction,[9] though their burden has been somewhat reduced by establishing City Civil Courts.

All High Courts have extra-ordinary original jurisdiction, original jurisdiction in election petitions, and appellate and revisional jurisdiction, writ jurisdiction and power to punish for contempt.[10]

(9) High Courts hear references under various laws and also have civil revisional and supervisory jurisdiction.[11]

(10) For historical and other reasons, judicial business in the High Courts also presents considerable variety.[12]

(11) The writ jurisdiction has played a notable part in the development of constitutional and administrative jurisprudence.[13]

---

[1] Para 1.1 to 1.4.
[2] Para 1.5 to 1.6.
[3] Para 1.7.
[4] Para 1.8 to 1.14; also para 1.20.
[5] Para 1.15 to 1.17.
[6] Para 1.3 and 1.29.
[7] Para 1.30.
[8] Para 1.31 to 1.37.
[9] Para 2.1, 2.2 and 2.14 to 2.17.
[10] Para 2.3 to 2.5.
[11] Para 2.6 and 2.7 to 2.10.
[12] Para 2.11 and 2.12.
[13] Para 2.12.

78

3.    **Strength of High Courts : numerical and qualitative aspects.**

(12) Institution being in excess of disposal, any scheme for improvement must ensure that:—

(i) the disposal is not less than the institution; and

(ii) the heavy backlog is reduced—one quarter be cleared in one year 'Increase in judges' strength is unavoidable.[1]

(13) Permanent strength of each High Court should be fixed and reviewed, keeping in view the average institution during the preceding three years.[2]

(14) For clearing arrears, additional and *ad hoc* judges should be appointed. However, it is not advisable to have only additional judges for the purpose as, ordinarily, persons so appointed should not be sent back to the profession or to their substantive judicial posts.[3]

(15) Recommendation of the Chief Justice (for the appointment of Judges) should be attended to promptly. An outside limit of six months should be observed in this regard.[4]

(16) For clearing arrears, Article 224A of the Constitution may be availed of. Retired Judges, who had a reputation for efficiency and quick disposal, and who retired within three years, be reappointed *ad hoc* under this article. Persons who have retired from other High Courts can also be considered.[5] The appointments should be normally for one year, to be extended by further periods of one year each, upto a total of three years.

(17) The Chief Justice can play a pivotal role in securing disposal.[6]

(18) The best persons should be appointed on High Court benches, the over-riding consideration being merit.[7]

(19) Service conditions of judges should also be improved in order to attract persons of the right calibre.[8]

(20) Increase in the number of judges must also take into account the need for more court rooms, staff, and law books.[9]

(21) Punctuality should be adhered to, and court timings duly observed.[10]

4.    **Appellate jurisdiction**

(22) Giving finality to decisions of the trial courts may solve congestion in courts, but every litigant expects the best possible justice. Hence the need for 'one good appeal on facts and on law.[11]

(23) The Indian procedural law has provided for appeals in original suits, according to a pattern now well known.[12]

It is not advisable to curtail the right of appeal under the present scheme (one appeal on facts and law, and second appeal on a substantial question of law).[13]

Ways and means of expediting the hearing of appeals constitute the real remedy.[14]

---

[1]Para 3.1 to 3.7.
[2]Para 3.8.
[3]Para 3.9.
[4]Para 3.10.
[5]Para 3.12 and 3.13.
[6]Para 3.14.
[7]Para 3.15.
[8]Para 3.16.
[9]Para 3.17.
[10]Para 3.18.
[11]Para 4.1 to 4.3.
[12]Para 4.4 to 4.7.
[13]Para 4.9 and 4.10.
[14]Para 4.11.

5.    **Procedure in appeals : General**

(24) Delay occurs in making the appeal ready  for hearing at various stages.[1]

(a) As to time taken in  obtaining copy  of the judgment, Order 20, Rules 6A and 6B, Code of Civil Procedure (newly inserted) would expedite the filing of appeal without waiting for certified copies[2] of the judgment and decree.

(b) If an appeal is filed beyond the prescribed time, Order 4, Rule 3A of the Code now requires that the application for extension of time should be first decided.[3]

(25) As to scrutiny, the court should register the memorandum of appeal within seven days of its presentation and, within that period, the office should note all the defects therein.   The appellant should be directed to cure the defect within a specified time limit (not exceeding fifteen days), subject to extension by the Registrar for further fifteen days failing that the appeal[4]  should, without further delay, be placed before the court for necessary order.

(26) Administrative  machinery for the  scrutiny of appeals should be toned up.[5]

(27) Elimination of preliminary hearing of appeals is not favoured.   It would encourage the filing of frivolous appeals,  particularly to seek interim relief.[6]

(28) (a) The appellant should be required to produce,  along with the memorandum of appeal, printed forms furnished in duplicate, duly filled up.[7]

(b) The appellant should also file as many copies of the memorandum as there are respondents, and additional number of copies for the court.[8]

(c) Charges or process fee for service should also be paid when the appeal is presented.  The notice can be sent to the  respondents by registered post, within a time to be fixed under the rules.[9]

(d) Early service of the notice of appeal will undoubtedly enable quick disposal of appeal.[10]

(29) Paper books are essential for  ensuring proper hearing of appeals (particularly, hearing by benches), but there is scope for improvement in certain matters of detail.[11]

(30) Record of the lower court, where required for appeal, should be promptly sent for by the High Court.   Except in appeals against interlocutory orders, this should be done immediately on admission.[12]

(31) In appeals against interlocutory orders, the record should be sent for only if specifically ordered by the High Court.[13]

(32) The party who has to file a document etc. should get it translated by counsel.  If that translation is questioned, the official translator will translate the document.[14]

(33) Except where the High Court  otherwise  directs, parties may be allowed to type or cyclostyle the records.[15]

---

[1]Para 5.1 and 5.2.
[2]Para 5.3 and 5.4.
[3]Para 5.5.
[4]Para 5.6.
[5]Para 5.7 (Order 41, rule 11, Code of Civil Procedure referred to).
[6]Para 5.8 and 5.9.
[7]Para 5.10 and 5.11.
[8]Para 5.11.
[9]Para 5.12.
[10]Para 5.13 and 5.14.
[11]Para 5.15.
[12]Para 5.16.
[13]Para 5.17.
[14]Para 5.18.
[15]Para 5.19.

(34) (a) On receipt of the record (from the lower court), the parties should be intimated.

(b) The appellant in all regular first civil appeals should file copies of the documents (listed in the Report) within four months of receipt of the record, or such further time as the court may allow.[1]

(c) Within two weeks of filing (as above) of the paper books, the copies should be supplied to counsel for the respondent.[2]

(d) Within two months of the receipt of the above (or such further time as the court may allow), the respondents should file their paper books, containing copies of depositions, documents, etc. upon which they wish to rely and which have not been already filed by the appellant.[3]

(c) The respondent's paper books so filed should, within a week, be supplied to counsel for appellant and counsel for other respondents.[4]
[Reference to 'copies' above would include reference to translations.][5]

(f) Documents exempted by the High Court for the purpose of printing need not be included in the paper book.[6]

(35) The above suggestions have been made for introducing uniformity and accelerating the process of preparation of paper books.[7]

(36) Powers regarding preparation of paper books may be delegated to the appropriate officer of the High Court, subject to a provision for orders of the court in cases of non-compliance. These orders would include dismissal of the appeal, award of costs or direction to hear the appeal without filing of further papers, so that the papers not filed will be barred from being referred to at the hearing.[8]

(37) Scrutiny by the office should see that unnecessary documents do not burden the paper book. If the court finds in the paper book irrelevant documents, it may order payment of the cost occasioned by their inclusion, irrespective of the ultimate result of the appeal.[9]

(38) In appeals or revisions against interlocutory orders, records of the court below should not be sent for, unless expressly ordered by the court. The petitioner or appellant should be required to file attested copies.[10]

(39) In such appeals or revisions, service may be effected on the counsel representing the respondent in the suit or proceeding in trial court[11] except in the case of injunction.[12]

6.    **Arguments and judgment in appeals**

(40) A comparison of the English, American and Canadian system of arguments is made.[13] The American system of written briefs was not favoured in England by the Evershed Committee, nor has the idea of dispensing with oral arguments found favour with Commonwealth jurisdiction.[14]

It would not be desirable to give up the system of oral arguments in India.[15] Neither the Law Commission (in its 14th Report) nor the High Courts Arrears Committee, presided over by Mr. Justice Shah, favoured the substitution of written "briefs" in place of oral arguments.[16]

---

[1]Para 5.20.
[2]Para 5.21.
[3]Para 5.22.
[4]Para 5.22.
[5]Para 5.23.
[6]Para 5.23.
[7]Para 5.24.
[8]Para 5.25.
[9]Para 5.25.
[10]Para 5.26.
[11]Para 5.27 and 5.28.
[12]Para 5.28 (0.3, R. 43, C.P.C. to be amended).
[13]Para 6.1 to 6.11.
[14]Para 6.12 to 6.16.
[15]Para 6.17 to 6.20.
[16]Para 6.17 to 6.21.

(41) However, a concise statement of arguments filed in the High Courts before the commencement of the oral arguments would reduce the time taken by oral arguments and improve their quality,[1] and is recommended. Doing away with oral arguments is not contemplated.[2]

(42) Imposition of a time limit on arguments is not favoured. It may result in miscarriage of justice.[3]

(43) The scheme recommended (as to filing a concise statement of arguments) may be tried in the High Courts in regard to regular first appeals and petitions under Article 226 of the Constitution other than those seeking habeas corpus.[4] The scheme will, however, be successful only if the Bar and the Bench work it in its true spirit.[5]

(44) Judgment should be pronounced within a reasonable time. It should be pronounced within a week of the conclusion of arguments, and the interval should not, in any case, exceed one month. A statement of cases in which judgments have not been pronounced within two months of the arguments should be circulated.[6]

(45) When dismissing a regular second appeal or a civil revision, the judges should write short judgments only.[7]

(46) Certain points concerning judgments discussed in detail in the 77th Report may also be seen.[8]

7.  **Grouping and listing of appeals.**

(47) The system of listing should be such that matters which require prompt attention get it, and the situation of old cases getting older while new cases receive priority is avoided.[9]

(48) (a) Cases involving common questions of law should be grouped and posted together for hearing before the same Bench.[10]

In particular, appeals in land acquisition cases relating to different parcels of land in the same locality should preferably be put up together.[11]

(b) Appeals involving points which, since the filing of the memorandum of appeal, have been settled by authoritative decisions should also be listed in one batch for disposal.[12]

(49) (a) The normal system should be that of a continuous list. There should be a ready list, containing particulars of all cases ready for hearing in chronological order according to the date of institution.

(b) From this ready list, the daily list should be drawn up in the same manner, and with reference to the date of institution. Cases should be taken up from this daily list seriatim, deviation being made only in exceptional circumstances.

(c) Adjournment of cases in the daily list should be an exception, not a rule.[13]

(50) Priority should be given to certain types of cases, which, because of their nature, require early disposal.[14]

---

[1] Para 6.22.
[2] Para 6.23.
[3] Para 6.24.
[4] Para 6.25.
[5] Para 6.26.
[6] Para 6.27 and 6.28.
[7] Para 6.29.
[8] Para 6.30.
[9] Para 7.1 and 7.2.
[10] Para 7.3 and 7.4.
[11] Para 7.5.
[12] Para 7.6.
[13] Para 7.7 and 7.8.
[14] Para 7.9 to 7.11.

83

(51) Cases should be assigned to judges with experience in the particular branches of law.[1]

(52) (a) Benches constituted for particular classes of cases should be allowed to function for a reasonable length of time, so as to avoid part-heard cases being left when the Bench is disbanded.[2]

(b) Cases not disposed of by a disbanded Bench should be posted before the successor Bench or (if that is not immediately possible), posted for hearing without delay.[3]

**8.    First appeals (including appeals from City Civil Courts) to High Courts.**

(53) Where the final hearing of an appeal is to be before a Division Bench, it should for admission also, be placed before a Division Bench.[4]

(54) Regular first appeals should be placed before a Division Bench for admission, hearing and disposal.[5]

(55) Decisions of a single judge on appeal should not be appealable to a Division Bench.[6]

(56) The structure and composition of City Civil Courts and the forum of appeal from their judgments, vary from State to State. In some States, there is provision for appeal from a judge of the City Civil Court to the Principal Judge or Chief Judge.

(57) No change in this respect is recommended. Local Legislation can deal with the matter, if necessary.[7]

(58) Dismissal of a regular first appeal in the High Court at the preliminary stage should be accompanied by brief reasons.[8-9]

**9.    Appeals under special Acts.**

(59) As regards appeals under certain special Acts, rules made for the purpose should be observed scrupulously.[10]

(60) Typed copies supported by an affidavit may be accepted for paper books in such appeals.[11]

(61) Appeals to the High Court under matrimonial legislation should be given priority.[12] The present procedure under the Indian Divorce Act, 1869 requiring confirmation of a decree of divorce causes delay and unnecessary expense, and should be done away with.[13]

**10.    Second Appeals.**

(62) The search for absolute truth has to be reconciled with the doctrine of finality. At some stage, the decision on facts should become final. At the same time, any rational system of law should provide for taking cases to a specified superior court on a question of law, so that the 'immense unity of the law' may be maintained.[14]

(63) This aspect has a vital relation to the basic principle of law, namely, that there shall be a superior court to determine questions of law, whose decisions shall be binding precedents.

[1]Para 7.12 to 7.15.
[2]Para 7.16.
[3]Para 7.17.
[4]Para 8.1 and 8.2.
[5]Para 8.3.
[6]Para 8.4.
[7]Para 8.5 to 8.10.
[8]0.41, R. 11, C.P.C.
[9]Para 8.11 and 8.12.
[10]Para 9.1.
[11]Para 9.1.
[12]Para 9.2 and 9.3.
[13]Para 9.4 and 9.5
[14]Para 10.2.

12—253 LAD/ND/79

These principles are implicit in section 100 of the Code of Civil Procedure.[1]

(64) The object of section 100 is to achieve certainty of law; the mere dissatisfaction of a litigant with a judgment does not afford him a ground for second appeal.[2]

(65) Practical considerations (such as, the consideration that the amount involved is not large), have, however, necessitated a curb on the right of second appeal.[3]

## 11.    Appeals against judgments of single judges.

(66) An appeal under the Letters Patent of the High Court (or corresponding instrument) lies to a Bench of the High Court against the decision of a single judge given in original proceeding, or in first appeals.  In the latter case, it is virtually a second appeal.[4]

(67) The reason why hearing by a Division Bench is recommended in an earlier Chapter for regular first appeals is that there should be an application of plurality of minds.[5]  Other appeals may be heard by single judges, unless otherwise provided by law or directed by the judge.[6]

(68) Since judgments of a single judge on second appeal from subordinate courts are binding, even on matters of law, it is anomalous that the judgments of single judges lose their binding force when the matter is heard in first appeal. Judgments in first appeals decided by a single judge should be final, except where certificate or special leave is granted for appeal to Supreme Court.[7]

(69) Above discussion is not intended to affect the maintainability of appeals against the decisions of single judges *on the original side*.[8]

## 12.    Civil Revisions.

(70) The scope of section 115 of the Code of Civil Procedure and its limitations should be borne in mind, since a rule *nisi* in revision holds up proceedings in the lower court.  Greater care should be taken at the stage of admission of revisions.[9]

(71) As recommended in an earlier Chapter, in revisions against interlocutory orders, records of the court below should not be sent for, unless expressly ordered by the High Court.  The petitioner should file copies of required pleadings, documents etc.[10]

## 13.    Certificate for appeal to Supreme Court under article 133.

(72) In the past, applications for certificate of fitness for appeal to the Supreme Court against the judgment of a High Court were made some days after the pronouncement of the judgment, necessitating issues of notice to the opposite party and hearing of the application.  A provision permitting an oral application on pronouncement of the judgment would have been more appropriate.  However, now under the Constitution (44th Amendment) Act, the time previously consumed in proceedings for obtaining the certificate would be eliminated.[11]

---

[1]Para 10.3.
[2]Para 10.6.
[3]Para 10.7.
[4]Para 11.1 to 11.4.
[5]Para 11.4.
[6]Para 11.5 to 11.7.
[7]Para 11.4 to 11.7.
[8]Para 11.9.
[9]Para 12.1 and 12.2.
[10]Para 12.2 and 12.3.
[11]Para 13.1 to 13.3.

## 14.   Criminal appeals, revisions and references.

(73) Measures for expediting the hearing of criminal appeals will have to be mostly administrative. However, on certain matters, amendment is needed.[1]

(74) A court dismissing a first appeal from conviction (whether it be the High Court or any lower court) should record a brief order, giving reasons for dismissal at the preliminary stage.[2]

(75) Single judges of High Courts should have power to dispose of all criminal appeals against convictions, except where a sentence of death or imprisonment for life has been passed.[3]

(76) The orders against which revisions may be filed are of infinite variety.

The jurisdiction of the Magistrate to award maintenance[4] and the powers of the High Court to revise such orders, are assuming greater importance every day. Exercise of revisional jurisdiction in these proceedings has remedied serious injustice.[5]

## 15.   Ordinary original civil jurisdiction of High Courts.

(77) At present, the High Courts of Delhi, Himachal Pradesh, Madras, Bombay and Calcutta try suits exceeding Rs. 50,000 in value.[6]

(78) The debate on the utility of such ordinary original civil jurisdiction is summarised. No change in the matter is, however, recommended.[7]

(79) Of the suggestions made in the 77th Report, such as are applicable in regard to proceedings in High Courts should be adopted to eliminate delay.[8]

## 16.   Extraordinary original civil jurisdiction of High Courts : writs.

(80) (a) High Courts have extraordinary original civil jurisdiction derived from a number of sources.[9] Occasions for the exercise of such jurisdiction may (in particular) arise on the withdrawal of a case by, or its transfer to, a High Court.[10]

(b) The Constitution has now also conferred on all High Courts power to issue writs.[11]

With increased activities of the State, the writ jurisdiction has assumed importance.[12] The existing strength of judges is obviously not enough to cope with the pendency and to clear the backlog. Ways and means are needed to expedite the disposal of writ petitions.[13]

(81) To avoid delay in the disposal of writ petitions resulting from service where the respondent is a Government Department, the Advocate-General or Central Government Standing Counsel should accept notice on behalf of the Government. Consequential additional expenditure on staff would be worthwhile.[14]

---

[1]Para 14.1 to 14.3.

[2]Para 14.5.

[3]Para 14.6.

[4]Section 125, Cr. P.C., 1973.

[5]Para 14.6 to 14.8.

[6]Para 15.1 to 15.6.

[7]Para 15.8 to 15.10.

[8]Para 15.11.

[9]Para 16.1.

[10]Para 16.2.

[11]Para 16.3.

[12]Para 16.4.

[13]Para 16.4.

[14]Para 16.5 and 16.6.

(82) In service matters, where a large number of individual officers are impleaded, service of the notice of writ petition on them takes time, because of the frequent transfer of the officers. Instructions may be issued to the various departments of the Government that court notices, instead of being sent back to the court with the report that the officer is transferred should be re-directed to the new station of posting.[1]

(83) To facilitate quick disposal, writ petitions should be required to be accompanied by a chronological statement of necessary facts.[2]

(84) Dismissal of writ petitions at the preliminary stage by a one-word order—'dismissed' causes delay, as later on the case is remanded on appeal. Issue of a show-cause notice is desirable and would narrow down the controversy.[3]

The notice should, however, be made returnable early, to avoid abuse of the provision for interim relief.[4]

(85) The High Court, while dismissing a writ petition, should record a short order giving reasons.[5]

(86) (a) For filing the counter-affidavit in writ petitions, rules should prescribe a time limit not exceeding three months from date of service of notice of admission.[6] This time limit could be extended by the court, for sufficient cause, for a period generally not to exceed one month.[7]

(b) In every writ petition, the respondent must serve an advance copy of the counter-affidavit on the petitioner. A counter-affidavit not complying with the above requirements should not be accepted, and the case should be listed for hearing without the counter-affidavit; the respondent should not then be allowed to file a counter-affidavit without special permission of the court.[8]

(87) Rules should also provide for filing a replication (where it is to be filed) within four weeks from service of copy of the counter affidavit.[9]

(88) Writ petitions should be included in the ready list of cases in chronological order according to the date of institution, except where the petition has, for sufficient reason, to be listed for a future date, and except petitions belonging to a class needing priority. Apart from that, the daily list should be prepared strictly according to the order in the ready list, subject to the order of the court as to actual date in any matter.[10]

(89) A concise note of arguments should be filed in writ petitions (except petitions for *habeas corpus* before the date of hearing. Its contents should be the same as recommended for regular first appeals.[11]

(90) The above is only a suggested general pattern. High Courts may frame their own rules with variations. The object should be to obtain a regular procedure, conforming to natural justice and, at the same time, securing quicker disposal.[12]

(91) Sittings of writ Benches should continue for a reasonable length of time.[13]

(92) Writ petitions involving the same questions of law should be grouped together.[14]

---

[1] Para 16.7.
[2] Para 16.8.
[3] Para 16.9.
[4] Para 16.9.
[5] Para 16.10.
[6] Para 16.10.
[7] Para 16.11.
[8] Para 16.12.
[9] Para 16.13.
[10] Para 16.14.
[11] Para 16.15.
[12] Para 16.16.
[13] Para 16.17.
[14] Para 16.18.

(93) Listing of writ petitions should not be deferred on the ground that other petitions of the same nature may follow. Such a petition, when filed should be given precedence—if need be with the permission of the Chief Justice. This would minimise the filing of similar petitions. If the petition succeeds, the department may possibly take similar action in regard to persons similarly aggrieved.[1]

(94) (a) Decision of writ petitions should be as quick as possible. The writ Rules should be framed with that object in view.

(b) For expeditious disposal of writs, whole-hearted co-operation of the Government is necessary. Special attention should be paid to this aspect at Government level.[2]

17.    **Jurisdiction under special Acts : Tax cases.**

(95) While the Income Tax Appellate Tribunal is the final authority on facts, a reference lies to the High Court on a question of law in taxation matters. This Jurisdiction has been extensively resorted to. But the rate of disposal does not keep pace with institution. This situation requires to be remedied, as early disposal is important both to the State and to the assessee.[3]

(96) Strength of judges for dealing with these references should be increased, and also separate benches constituted where the volume of work so justifies.[4] Judges having a grounding in the subject should be posted to those Benches.[5]

(97) A proposal for the creation of a Central Tax Court was rejected by the High Courts Arrears Committee presided over by Mr. Justice Shah and by the Law Commission in its 58th Report.[6] The proposal was, however, favoured by the Direct Tax Laws Committee (Chokshi Committee), whose Report envisages a Central Tax Court with Benches at seven important cities, and with judges who are to be on par with High Court Judges. According to that Committee, amendment of the Constitution would be required. Until it is constituted, Special Tax Benches should according to the Committee, sit continuously.[7]

The Commission would, however, agree with the conclusion reached in earlier Reports against the formation of a Central Tax Court. Disposal of tax cases can be expedited by resorting to continuous sittings in the High Court,[8] without creating a Tax Court. Frequent changes in the Constitution are also not desirable.[9] Moreover, assessees would be subjected to inconvenience if they have to go outside their State for seeking relief against the order of the Appellate Tribunal.[10]

(98) As regards replacing references by appeal in tax cases, there are pros and cons. Substitution of appeal would eliminate the time taken in hearing before the Tribunal of the application for a reference, and obviate the necessity of filing before the High Court applications directing the Tribunal to make a reference.[11]

But an appeal would take more time in hearing than a reference.[12]

Since the matter has been already dealt with by the Law Commission in its 58th Report, and the High Courts Arrears Committee presided over by Mr. Justice Shah, both of which recommended substitution of appeal, this Commission does not propose to say anything further in the matter.[13]

---

[1]Para 16.20.
[2]Para 16.21.
[3]Para 17.1 to 17.4.
[4]Para 17.5.
[5]Para 17.6.
[6]Para 17.7.
[7]Para 17.8.
[8]Para 17.9.
[9]Para 17.10.
[10]Para 17.11. As to direct reference to the Supreme Court, see para 17.12.
[11]Para 17.13 to 17.17.
[12]Para 17.13 to 17.17.
[13]Para 17.13 to 17.19.

18.    **Appeals to courts subordinate to the High Court.**

(99) To relieve the High Courts of their burden regarding first appeals, the pecuniary appellate jurisdiction of District Judges should be raised. More District Judges will, of course, have to be appointed.

Because of variable local conditions, a uniform figure for the whole country as to the pecuniary limits of appellate jurisdiction of District Judges is not feasible. Appeals of higher value should lie to High Courts, which inspire greater confidence.

These remarks apply also to the subordinate judges exercising appellate jurisdiction.[1]

(100) It should be ensured that the number of appellate courts in each district is sufficient to deal with the volume of appeals in that district. Because of the low priority accorded to appeals, such appeals remain pending and the parties have to go back because of the pre-occupation of the judge. To avoid this, the courts subordinate to High Court should set apart a number of days every month exclusively for the disposal of civil appeals. Where the workload does not permit such a course, recourse should be had to increasing the number of appellate courts in the district.[2]

Appeals in subordinate courts generally not being of a complicated nature, they should not remain pending for an unduly long time, if days are earmarked for exclusively dealing with them.[3]

(101) Normally, civil appeals in subordinate courts should be disposed of within six to nine months of their institution.

The problem of disposal of appeals in subordinate courts can be tackled by just increasing the number of the appellate courts. The increase required would be small and insignificant.[4]

(102) Criminal appeals too are accorded low priority. Quite often, they have to be adjourned because the Presiding Officer of the court is pre-occupied with other matters. The steps recommended above regarding civil appeals can also be adopted for the disposal of criminal appeals. Increase in the number of courts of Additional District and Sessions Judges would be helpful in expediting the disposal of both civil and criminal appeals.

Where there is not enough work for the court of Additional District and Sessions Judge which may be created for one district, he can look after appeals in two adjoining districts.[5]

(103) Most often, one public prosecutor looks after cases in more than one court. When cases are called in more courts than one, he can attend to only one of them, necessitating either a hearing without effective representation or an adjournment. The number of public prosecutors in each district should be adequate to deal with cases called in different courts at the same time.[6]

(104) The proposed system of filing a concise note of arguments (recommended in this Report for first appeals in the High Court) need not be made compulsory for civil appeals in subordinate courts.[7]

19.    **High Court for Goa, Daman and Diu.**

(105) The present disparity between the Union Territory of Goa, Daman and Diu and other parts of India in regard to the highest Court in the territory should be removed and jurisdiction of some High Court be extended to that territory. A circuit Bench of that High Court can sit in the territory. This would avoid delay in travelling as well as heart-burning.[8]

[1]Para 18.1 to 18.10.
[2]Para 18.11.
[3]Para 18.12.
[4]Para 18.12.
[5]Para 18.15.
[6]Para 18.14.
[7]Para 18.15.
[8]Para 19.1 to 19.4.

89

## 20.    Conclusion.

(106) To facilitate implementation, this Report confines itself to the essentials of the problem.[1] However, the recommended measures will not solve the problem for all times to come.    The search for a solution has to be continuous. It has to be a quest, not a discovery.[2] Where so many complex factors operate together, a permanent solution would be difficult.    This or that aspect may, with the passage of time, become prominent, and others may shade into insignificance.    Each fresh effort must assess the progress achieved and suggest appropriate action for the future.[3]

(107) A report dealing with arrears and delay can bear fruit only if prompt action is taken thereon.    It must be distinguished from a report dealing with the review of a particular enactment.    There should be no undue delay in taking action on a report which itself deals with eliminating delay.[4]


H. R. KHANNA                                     ......   *Chairman*

S. N. SHANKAR                                    ......   *Member*

T. S. KRISHNAMOORTHY IYER                        ......   *Member*

P. M. BAKSHI                                     ......   *Member-Secretary*


*May* 10, 1979.

---

[1]Para 20.1.
[2]Para 20.2.
[3]Para 20.2 and 20.3.
[4]Para 20.4 and 20.5.

APPENDIX 1

## APPELLATE JURISDICTION OF DISTRICT JUDGES IN VARIOUS STATES

| | | |
|---|---|---|
| 1. | Andhra Pradesh. | (1) Rs. 15,000 (District Judge). (Proposal raise to Rs. 20,000 under consideration). |
| | | (2) Rs. 10,000 (Subordinate Judge). |
| 2. | Gujarat. | Rs. 10,000 (District Judge). |
| 3. | Haryana. | Rs. 20,000 (District Judge). |
| 4. | Himachal Pradesh. | Rs. 10,000 (District Judge). |
| 5. | Karnataka. | |
| | (1) District Courts (Appellate Jurisdiction). | Regular, execution and miscellaneous Appeals from the decisions of the civil judges, involving monetary value upto Rs. 20,000. |

[Civil Judges' courts in Karnataka have original jurisdiction as follows:—

(a) All original suits with the monetary value *exceeding Rs.* 10,000 (unlimited).

(b) Small cause suits upto the monetary value of Rs. 2,000. Separate small cause courts are existing at Bangalore and Mysore presided over by the officer in the cadre of civil judge. The jurisdiction of these courts is upto Rs. 3,000.

| | | |
|---|---|---|
| | (2) Civil Judges (Appellate Jurisdiction). | Regular, execution and miscellaneous appeals from the decisions of munsiffs. |

Munsiff's courts in Karnataka have jurisdiction in original suits upto the monetary value of Rs. 10,000 and small causes suits upto Rs. 500.].

| | | |
|---|---|---|
| 6. | Kerala. | Rs. 10,000 (District Judge). |
| 7. | Maharashtra. | Rs. 25,000 (District Judge). |
| | (Bombay Civil Courts Act, 1869). | (Amendment made in January, 1978) |
| 8. | Manipur. | Rs. 5,000 (District Judge). |
| 9. | Nagaland. | Administration of justice is governed by special rules. |
| 10. | Punjab. | Rs. 20,000 (District Judge). |
| 11 | Rajasthan | Rs. 10,000 (District Judge). |
| 12. | Sikkim. | Rs. 5,000 (District Judge). |

(In Sikkim, the original court next lower than the District Court is the court of civil Judge-cum-Judicial Magistrate. Its jurisdiction is only Rs. 5,000. Suits of a higher value go to the District Judge on the original side).

| | | |
|---|---|---|
| 13. | Tamil Nadu. | Appellate jurisdiction. |
| | | (a) District Judge—Rs. 10,000. |
| | | (b) Subordinate Judge—Rs. 5,000. |
| 14. | Tripura. | Rs 10,000 (District Judge). |
| 15. | West Bengal | Rs. 15,000 (District Judge). |

91

APPENDIX 2

LIST OF SECTIONS OF THE INDIAN SUCCESSION ACT, 1925, UNDER WHICH
THE HIGH COURTS HAVE TESTAMENTARY JURISDICTION

### PART I

Section 2(bb)—                                        The definition of "District Judge" includes
                                                     High Court in original Jurisdiction.

### PART IX

Sections 218, 219, 222 to 225, 228, 229, 232, 236 to 243, 255 to 260, 261 to 267,
299, 300, 301, 302.

[Jurisdiction of District Judge under section 300 is concurrent with the High
Court.].

### PART X

Sections 371, 372, 374, 375, 383, **384**, 388.

[Section 384 deals with appeals to the High Courts.]

APPENDIX 3

## APPEALS TO THE HIGH COURTS[1,2] UNDER SPECIAL ACTS BESIDES THOSE MENTIONED IN THE BODY OF THE REPORT

**1.    Workmen's Compensation Act, 1923.**

Section 30 provides for appeals to the High Court from certain orders of the Commissioner.  This is a first appeal.

**2.    The Copyright Act, 1957.**

Section 71 provides for appeals against certain orders of Magistrates.

Under section 72, an appeal lies to the Copyright Board from the decision of the Registrar, and a second appeal lies to the High Court from the decision of the Copyright Board.

**3.    The Foreign Exchange Regulation Act, 1973.**

Section 52 provides for first appeal to the Appellate Board, from the orders of the adjudicating officer.

Section 54 provides for appeal to High Court on questions of law from the decision or order of the Appellate Board.

---

[1] This is an illustrative list only.

[2] For Companies Act, Trade Marks Act, Insolvency Act and Matrimonial Law, See the body of the Report.

## APPENDIX 4

### JURISDICTION OF THE HIGH COURT UNDER GUARDIANS & WARDS ACT, 1890

Definition of District.    Section 2(4) of the Guardians and Wards Act, 1890 defines the expression "District Court". It has the same meaning as assigned to it in the Code of Civil Procedure, and includes a High Court in the exercise of its ordinary original civil jurisdiction. According to section 2(4) of the Code of Civil Procedure, "district" means the local limits of a Principal Civil Court of original jurisdiction, and includes the local limits of the ordinary original civil jurisdiction of a High Court.

Nature of the powers to be exercised by the Court under various sections of the Guardians and Wards Act, 1890, can be gathered from the following illustrative list:—

| | |
|---|---|
| Section 9 : | Court having jurisdiction to entertain application with respect to the guardianship of the person of a minor as also guardianship of the property. |
| Section 14(2): | If simultaneous proceedings are being held in different courts, the High Court shall determine which court shall deal with the matter. |
| Section 25: | Title of guardian to custody of ward. |
| Section 26: | Removal of ward from jurisdiction |
| Section 29: | Limitation of powers of guardian. He shall not mortgage or sell or lease the property without the previous permission of the court. |
| Section 31: | Practice with respect to permitting transfers under section 29. |
| Section 32: | Variation of powers of guardian appointed by the court. |
| Section 33: | Right of the guardian so appointed to apply to the court for opinion in respect of management. |
| Section 34A : | Power to award remuneration for auditing accounts. |

Sections 44 and 45 of the Act are penal sections

Section 47 provides for appeal to the High Court from decisions of the District Court under the Act.

94

APPENDIX 5

ORAL ARGUMENTS IN FRANCE

The following extract from a mimeographed publication states the position as to the French Cour de Cassation[1]:—

(b) **Proceedings of appeal:**

Proceedings before the "Cour de Cassation" are in writing, the pleadings being stated in request.

--**in civil proceedings:**

Ordinary proceedings (articles 1 through 20 of the decree Nr. 67-1210 as December 22, 1967).

It is based on the principle that the parties are not exempt by the law from being assisted or represented by an "advocate a la cour de Cassation".

The appeal is entered by a request concerning the decision challenged and such request is filed with the Court's clerk who serves thereafter the appeal to the defendant within fifteen days from the date of said filing.

Subject to forfeiture, the claimant must file with the Court's office within a maximum period of five months from the filing of the appeal, a pleading called 'memoire ampliatif' comprising the legal remedies against the contested decision; the claimant must serve within one month after the filing of the pleadings, the 'memoire ampliatif' to the defendant or to the defendant's counsel, when such counsel has filed his authority with the Court's office.

The court's registrar states that the appeal has not been filed or served by drafting a report and the forfeiture is decided *ipso facto* by the court.

The defendant must file with the court's office, not later than three months from the date of the 'memoire ampliatif', pleadings which he has to serve to the claimant's counsel not later than fifteen days after the lodging of such 'memoire'.

In case of default of filing of pleadings within the allotted time, the Court's registrar drafts a report.

As soon as the defendant has filed his pleadings and, upon expiration of such period, the case is deemed ready and delivered to the Court's sections.

The case is submitted by the President of the competent section to a judge or to "Counsellers referendaires" who is appointed as recording judge. The parties have no right to add supplementary pleadings once such a report has been filed with the registrar. Thereafter, the case is submitted to the Public Prosecutor (Ministere Public) who must draft his pleadings within the next four days and propose to enter it on the register.

The Court hears the report of the judge, the counsel's pleadings and the pleading of the prosecution; then the Court considers the case and makes a decision.

The claimant may withdraw his appeal, provided he obtains the agreement in writing of his opponent otherwise, the court has to state the withdrawal of, appeal in a decision which is equivalent to a dismissal and entails a sentence of guilty against the claimant who has to pay the Court's expenses and, if any, a fine and damages as compensation to the defendant.

--**proceedings without counsel:**

(Articles 21 through 25 of the decree Nr. 67-1210 as of December 22, 1967 and general rulings of articles 1 through 20 of said decree).

The filing and the notice of appeal as well as the lodging of the 'memoires' must comply with the requirements of such decree. The period for lodging the 'memoire ampliatif' and for giving notice of said 'memoire' to the defendant are reduced respectively to four months and fifteen days. The Court's registrar is in charge of giving notice of the 'memoire'.

Proceedings before the Court are the same as in the case of ordinary affairs.

---

[1]The French 'Cour de Cassation' (Mimeographed), page 13.

## APPENDIX 6

### [THE] U.P. HIGH COURT (ABOLITION OF LETTERS PATENT APPEALS) ACT, 1962

#### (U.P. ACT NO. 15 OF 1962)

[13th November, 1962.]

**An Act to provide for Abolition of Letters Patent Appeals in the High Court of Judicature at Allahabad**

It is hereby enacted in the Thirteenth Year of the Republic of India as follows:

**1.    Short title and commencement :**

(1) This Act may be called The Uttar Pradesh High Court (Abolition of Letters Patent Appeals) Act, 1962.

(2) It shall come into force at once.

**2.    Definition of High Court :**

In this Act "High Court" means the High Court of Judicature at Allahabad as constituted by the U.P. High Courts (Amalgamation) Order, 1948.

**3.    Abolition of appeals from the Judgment or order of one Judge of the High Court made in the exercise of appellate jurisdiction.**

(1) No appeal, arising from a suit or proceeding instituted or commenced, whether prior or subsequent to the enforcement of this Act, shall lie to the High Court from a judgment or order of one Judge of the High Court, made in the exercise of appellate jurisdiction, in respect of a decree or order made by a court subject to the superintendence of the High Court, anything to the contrary contained in clause ten of the Letters Patent of Her Majesty, dated the 17th March, 1866, read with clause 17 of the U.P. High Courts' (Amalgamation) Order, 1948, in any other law, notwithstanding.

(2) Notwithstanding anything contained in sub-section (1) all appeals pending before the High Court on the date immediately preceding the date of enforcement of this Act shall continue to lie and be heard and disposed of as heretobefore, as if this Act had not been brought into force.

96

**APPENDIX 7**

PENDENCY OF CASES IN HIGH COURTS DURING 1976 TO 1978

*Institution of Cases in High Courts*

| Sl. No. | Name of the High Court | Institution | | | | | |
|---|---|---|---|---|---|---|---|
| | | 1-1-1976 to 30-6-1976 | 1-1-1976 to 31-12-1976 | 1-1-1977 to 30-6-1977 | 1-1-1977 to 31-12-1977 | 1-1-1978 to 30-6-1978 | 1-1-1978 to 31-12-1978 |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) | (8) |
| 1 | Allahabad | 26,838 | 56,693 | 22,708 | 57,571 | 32,930 | 64,734 |
| 2 | Andhra Pradesh | 17,319 | 38,903 | 17,152 | 43,956 | 22,064 | 48,760 |
| 3 | Bombay | 23,485 | 43,693 | 20,202 | 38,864 | 15,701 | 35,898 |
| 4 | Calcutta | 27,102 | 53,015 | 22,951 | 43,339 | 24,021 | 50,449 |
| 5 | Delhi | 10,115 | 20,108 | 10,065 | 21,661 | 11,597 | 23,424 |
| 6 | Gauhati | 1,215 | 2,297 | 1,065 | 1,966 | 980 | 2,097 |
| 7 | Gujarat | 5,770 | 15,091 | 6,748 | 13,993 | 7,242 | 14,972 |
| 8 | Himachal Pradesh | 2,127 | 3,844 | 1,454 | 3,599 | 2,434 | 4,517 |
| 9 | Jammu & Kashmir | 1,373 | 2,610 | 1,261 | 2,783 | 1,530 | 4,285 |
| 10 | Karnataka | 13,468 | 28,438 | 17,206 | 37,014 | 17,987 | 36,920 |
| 11 | Kerala | 23,991 | 47,001 | 18,429 | 36,540 | 17,854 | 34,275 |
| 12 | Madhya Pradesh | 11,612 | 27,711 | 11,910 | 29,132 | 16,506 | 34,043 |
| 13 | Madras | 25,449 | 55,605 | 23,772 | 54,320 | 26,799 | 55,472 |
| 14 | Orissa | 2,451 | 4,936 | 2,123 | 4,872 | 2,503 | 5,269 |
| 15 | Patna | 8,082* | 21,029@ | 10,571@ | 23,562@ | 10,439* | 22,506* |
| 16 | Punjab & Haryana | 17,485 | 37,146 | 15,139 | 32,092 | 16,394 | 34,402 |
| 17 | Rajsthan | 5,462 | 10,962 | 4,215 | 9,420 | 6,045 | 13,831 |
| 18 | Sikkim | 29 | 67 | 36 | 49 | 10 | N.A. |
| | TOTAL | 2,23,373 | 4,67,154 | 2,07,007 | 4,54,733 | 2,33,036 | 4,85,854 |

*Disposal of Cases in high Courts*

| Name of the High Court | Disposal | | | | | |
|---|---|---|---|---|---|---|
| | 1-1-1976 to 30-6-1976 | 1-1-1976 to 31-12-1976 | 1-1-1977 to 30-6-1977 | 1-1-1977 to 31-12-1977 | 1-1-1978 to 30-6-1978 | 1-1-1978 to 31-12-1978 |
| (1) | (2) | (3) | (5) | (5) | (6) | (7) |
| Allahabad | 22,327 | 45,593 | 17,283 | 44,844 | 26,364 | 60,020 |
| Andhra Pradesh | 17,235 | 44,266 | 16,210 | 42,459 | 21,216 | 44,597 |
| Bombay | 16,643 | 41,579 | 16,853 | 36,571 | 13,368 | 33,668 |
| Calcutta | 25,351 | 51,185 | 24,894 | 47,757 | 27,089 | 47,770 |
| Delhi | 8,941 | 19,390 | 8,243 | 18,310 | 9,238 | 19,881 |
| Gauhati | 1,033 | 2,397 | 809 | 1,608 | 801 | 1,520 |
| Gujarat | 5,279 | 13,489 | 6,706 | 14,560 | 6,644 | 13,704 |
| Himachal Pradesh | 1,258 | 2,686 | 1,158 | 2995 | 2,890 | 4,255 |
| Jammu & Kashmir | 851 | 1,669 | 763 | 1,952 | 868 | 2,622 |
| Karnataka | 9,748 | 20,489 | 12,977 | 24,992 | 12,589 | 29,263 |
| Kerala | 13,758 | 37,694 | 17,640 | 36,931 | 23,204 | 42,462 |
| Madhya Pradesh | 9,125 | 24,039 | 10,461 | 25,242 | 16,467 | 37,450 |
| Madras | 22,247 | 51,952 | 18,925 | 44,635 | 23,643 | 57,079 |
| Orissa | 2,080 | 4,963 | 2,489 | 4,794 | 1,596 | 3,412 |
| Patna* | 7,670 | 15,807 | 6,616 | 14,510 | 7,441 | 16,127 |
| Punjab & Haryana | 12,753 | 26,009 | 17,116 | 29,565 | 19,864 | 42,193 |
| Rajasthan | 4,360 | 10,330 | 4,764 | 9,116 | 3,639 | 12,339 |
| Sikkim | 20 | 51 | 35 | 63 | 12 | N.A. |
| TOTAL | 1,80,679 | 4,13,588 | 1,83,942 | 4,00,704 | 2,189,33 | 4,68,362 |

*Main cases only.

@The institutions in Patna High Court for the period 1-1-1976 to 31-12-1976; 1-1-1977 to 30-6-1977 and 1-1-1977 to 31-12-1977 include 3,457; 3,251 and 6,992. Miscellaneous cases respectively. These cases have not been taken into account by the Patna High Court while working out the pendency of cases.

97

98

*Pendency of Cases in High Courts*

| Name of the High Court | Pendency as on | | | | | |
|---|---|---|---|---|---|---|
| | 30-6-1976 | 31-12-1976 | 30-6-1977 | 31-12-1977 | 30-6-1978 | 31-12-1978 |
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |
| Allahabad | 1,13,428 | 1,20,022 | 1,25,447 | 1,32,749 | 1,39,315 | 13,6978 |
| Andhra Pradesh | 19,837 | 14,390 | 15,332 | 15,887 | 16,735 | 20,050 |
| Bombay | 54,827 | 50,099 | 53,448 | 52,592 | 54,925 | 54,822 |
| Calcutta | 76,787 | 76,866 | 74,923 | 72,448 | 69,380 | 75,127 |
| Delhi | 23,364 | 22,908* | 25,058 | 26,587 | 28,946 | 40,130 |
| Gauhati | 6,472 | 6,190 | 6,446 | 6,548 | 6,727 | 7,125 |
| Gujarat | 13,178 | 12,289 | 12,331 | 11,722 | 12,320 | 12,990 |
| Himachal Pradesh | 4,126 | 4,415 | 4,711 | 5,019 | 4,563 | 5,281 |
| Jammu & Kashmir | 3,427 | 3,846 | 4,344 | 4,677 | 5,339 | 6,340 |
| Karnataka | 20,198 | 24,427 | 28,656 | 36,449 | 41,847 | 44,106 |
| Kerala | 44,056 | 43,130 | 43,919 | 42,739 | 37,369 | 34,552 |
| Madhya Pradesh | 41,538 | 42,723 | 44,172 | 46,613 | 46,652 | 43,206 |
| Madras | 41,627 | 42,078 | 46,925 | 51,763 | 52,919 | 50,156 |
| Orissa | 6,362 | 5,964 | 5,598 | 6,042 | 6,953@ | 7,908 |
| Patna** | 26,022 | 30,832* | 28,079 | 29,435 | 32,433 | 35,814 |
| Punjab & Haryana | 37,137 | 43,542 | 41,565 | 46,069 | 42,599 | 39,278 |
| Rajasthan | 20,724 | 20,254 | 19,705 | 20,558 | 22,954 | 22,050 |
| Sikkim | 25 | 32* | 36 | 21 | 19 | 14 |
| TOTAL | 5,53,135 | 5,64,007 | 5,80,695 | 6,079,18 | 6,22,030 | 6,24,927 |

*These figures were revised by the Delhi, Patna and Sikkim High Courts to 23,236; 27,375 and 35 cases respectively. As a result the total pendency in the Country on 1-1-1977 was revised to 5,60,881 cases.

@The increase of 9 cases is due to restoration of 6 second appeals and 3 miscellaneous first appeals during 1st half year of 1978.

** Main cases only.