COOK | ROOS | WILBUR | THOMPSON LLP
TRACY THOMPSON, CBN 88173
MICHAEL E. WILBUR, CBN 152361
221 Main Street, Suite 1600
San Francisco, California 94105
Telephone:    415-362-7071
Facsimile:    415-362-7073

Attorneys for Defendant
PRAVEEN CHAKRAVARTY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS WEISEL PARTNERS LLC, a Delaware limited liability company, and THOMAS WEISEL INTERNATIONAL PRIVATE LIMITED, an Indian company,<br><br>Plaintiffs,<br><br>vs.<br><br>BNP PARIBAS, a French corporation, BNP PARIBAS SECURITIES (ASIA) LIMITED, a Hong Kong company, and PRAVEEN CHAKRAVARTY, an individual,<br><br>Defendants. | Case No.: C 07-06198 MHP<br><br>DEFENDANT CHAKRAVARTY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS<br><br>Hearing: August 18, 2008<br>Time: 2:00 p.m.<br>Courtroom:    15<br>The Honorable Marilyn Hall Patel |

**REDACTED**

THOMAS WEISEL v. BNP PARIBAS, et al.
CASE NO. C 07-06198 MHP

DEF. CHAKRAVARTY'S REPLY BRIEF
IN SUPP. OF MOTION TO DISMISS

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 2

    A. TWP LACKS STANDING. ....................................................................................... 2

        1. Plaintiffs' Opposition Misstates the Applicable Test for Shareholder Standing. .......... 2

        2. Ninth Circuit Case Law, Which the Plaintiffs Completely Ignore, Consistently Reaffirms that Claims By a Parent Corporation or Other Shareholder Are Carefully Scrutinized to Determine Whether the Shareholder's Alleged Injury is Truly Both Direct *And* Independent, and if Not, the Shareholder Lacks Standing. ........................ 4

        3. TWP Has Made No Showing of A Direct or Independent Injury. ............................... 7

    B. CHAKRAVARTY IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA. ...................................................................................................... 9

        1. Chakravarty does not have sufficient minimum contacts to subject him to jurisdiction in California. ................................................................................................................ 9

            a. Plaintiffs have not established that Chakravarty expressly aimed any tortious conduct at California ................................................................................ 10

            b. The claims in this case do not arise out of Chakravarty's agreement ................. 11

        2. The exercise of jurisdiction over Chakravarty would be unreasonable. ...................... 11

    C. THIS ACTION SHOULD ALSO BE DISMISSED BASED ON THE DOCTRINE OF FORUM NON CONVENIENS. ......................................................................... 13

III. CONCLUSION .................................................................................................................. 14

## TABLE OF AUTHORITIES

Page

**Cases**

*Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1986) .................................................. 12

*Core-Vent v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993) ............................................. 12, 13

*Doe v. Geller*, 533 F.Supp. 2d 996 (N.D. Cal. 2008) ........................................................................ 12

*Erlich v. Glasner*, 418 F.2d 226 (9th Cir. 1969) ............................................................................ 4, 5

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997) ............................................ 10, 11

*Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd*, 493 U.S. 331 (1990) ................................. 1, 2, 3

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*, 284 F.3d 1114 (9th Cir. 2002) ....... 13

*Integral Development Corp. v. Weissenbach*, 99 Cal.App.4th 576 (2002) ......................................... 11

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) ................................................................................ 5, 6

*Ramakrishna v. Besser*, 172 F.Supp. 2d 926 (E.D. Mich. 2001) ....................................................... 14

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991) .................................................................... 13

*Shell Petroleum, N.V. v. Graves*, 709 F.2d 593 (9th Cir. 1983) ............................................... 1, 2, 4, 9

*Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002) ............................................................................ 2, 3

*Usa (India) Ltd. v. Honeywell International Inc.*,
   2004 U.S. Dist. Lexis 4236 (S.D. N.Y. 2004) ............................................................................ 14

*Vigilante.com, Inc. v. Argus Test.com, Inc.*, 2005 U.S. Dist. LEXIS 45999 (D. Or. 2005)... 1, 2, 6, 7, 8

*Von Brimer v. Whirlpool Corp.*, 536 F.2d 838 (9th Cir. 1976) ................................................. 1, 2, 4, 5

I. INTRODUCTION

Despite having conducted discovery relating to the issues raised by this motion, and having submitted well over a thousand pages of materials to the Court in opposition to the motion, plaintiffs have nonetheless completely failed to make a showing sufficient to establish any of the following: (a) that Thomas Weisel Partners LLC ("TWP") has standing; (b) that Praveen Chakravarty is subject to personal jurisdiction in California; or (c) that this action should not be dismissed based on the doctrine of *forum non conveniens*.

It is undisputed that TWP and Thomas Weisel International Private Limited ("TWIPL"), the Indian company, are separate legal entities, and TWP is a shareholder of TWIPL.[1] As such, the shareholder standing rule bars TWP from suing unless plaintiffs can show both of the following: (1) that TWP suffered a direct injury, <u>and</u> (2) that TWP's injury was independent of, or distinct from, the injury to TWIPL. *See e.g. Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd*, 493 U.S. 331 (1990); *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976); *Vigilante.com, Inc. v. Argus Test.com, Inc.*, 2005 U.S. Dist. LEXIS 45999 (D. Or. 2005). Plaintiffs have not made the necessary showing. In fact, plaintiffs do not even address the independent injury requirement anywhere in their voluminous submission, and, as a result, they make no attempt whatsoever to show that TWP suffered any injury that is independent of the alleged injury to TWIPL. Plaintiffs instead base their entire standing argument solely on the contention that TWP suffered a "direct injury," which, they claim, suffices to establish standing. It does not. Plaintiffs misstate the test, and they fail to satisfy the requirements of the correct test. Therefore, TWP lacks standing. And since TWP does not have standing, neither the fact that it has its headquarters in California, nor the generalized assertion that TWP somehow felt the "effects" of defendants' alleged conduct here, suffices to establish that any of the defendants are subject to personal jurisdiction in California or that California is a proper forum for this dispute.

---

**REDACTED**

Try as they might, plaintiffs simply cannot escape the fact that TWP and TWIPL are separate legal entities, whose separate legal existence must be recognized. Plaintiffs readily admit that TWIPL was organized as a separate corporation under Indian law because that provided certain advantages to TWP. (Plaintiffs' Interrogatory Response attached as Exhibit B to the Declaration of Michael E. Wilbur filed herewith.) Thus, having reaped the benefits of TWIPL's separate existence as an entity organized under Indian law, TWP cannot seriously contend that its relationship with TWIPL gives TWP standing to sue or provides a basis for subjecting Chakravarty to jurisdiction in California, nor can plaintiffs seriously contend that India's interest in this dispute should be completely ignored. This action should be dismissed.

## II.     ARGUMENT

### A.     TWP LACKS STANDING.

#### 1.     Plaintiffs' Opposition Misstates the Applicable Test for Shareholder Standing.

Plaintiffs argue that in order to have standing, TWP (the shareholder) need only show that it suffered a "direct injury." This misstates the test. The shareholder standing rule bars a shareholder from suing unless the shareholder shows that it suffered a direct injury <u>and</u> that its injury was independent of the injury to the corporation. *See e.g. Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir. 1983); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976); *Vigilante.com, Inc. v. Argus Test.com, Inc.*, 2005 U.S. Dist. LEXIS 45999 (D. Or. 2005).

In their Consolidated Opposition, plaintiffs do not address a single one of the Ninth Circuit cases that state the proper test for shareholder standing. Instead, plaintiffs rely on only two cases – *Franchise Tax Bd. of Calif. v. Alcan Aluminum Ltd.*, supra and *Strougo v. Bassini*, 282 F.3d 162, 172-176 (2d Cir. 2002). However, neither case supports a finding that TWP has standing.

In *Alcan*, the Supreme Court explained that standing has two related components: (1) the constitutional requirements of Article III, and (2) nonconstitutional "prudential considerations."[2]

---

[2] Article III is satisfied by a showing that the plaintiff "personally has suffered some actual or threatened injury." *Alcan, supra*, 493 US. at 335. Chakravarty's argument that TWP lacks standing is not based on the constitutional requirements, but is instead based on one of the "prudential considerations," namely the shareholder standing rule.

> One of these [prudential requirements] is the requirement that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin,* [422 U.S. 490, 499 (1975)]. Related to this principle we think is the so-called shareholder standing rule.

*Alcan, supra,* 493 U.S. at 336.

The Supreme Court held that the parent corporations in the *Alcan* case met the Article III standing requirements, but the Court did not decide whether the parent corporations met the prudential requirements. In fact, the Court noted that "the more difficult issue is whether respondents can meet the prudential requirements of the standing doctrine." The Court did not decide that issue because it held that the claims were barred for another reason.

The plaintiffs here quote only a portion of one sentence from the decision in *Alcan*. However, other portions of the Court's opinion in *Alcan* make clear, as do the Ninth Circuit cases decided before and after *Alcan*, that the shareholder standing rule requires a parent corporation to show not only a "direct injury," but also an injury that is independent of the injury to the subsidiary.

> Respondents claim to fall within this exception, arguing that they have suffered direct injuries <u>independent of</u> their status of shareholders of Alcancorp and Americas. Specifically, respondents complain of the burden of complying with California's information demands, the alleged burden of double taxation caused when California taxes foreign affiliate income that is already subject to taxes in other jurisdictions, and the burden on their choice to use an American subsidiary as an instrumentality of foreign commerce. Petitioners insist that respondents' injuries are entirely <u>derivative of</u> their ownership interests in Alcancorp and Americas.

*Alcan, supra,* 493 U.S. at 336-337, emphasis added.

The Second Circuit's decision in *Strougo v. Bassini, supra,* similarly explains that the shareholder standing rule requires more than a showing of a "direct injury" by the shareholder. *Strougo* involved claims by shareholders against the directors of a mutual fund alleging that the fund's "rights offering" was coercive. The court in *Strougo* applied Maryland law, explaining that Maryland courts require that the shareholder show an injury that is "distinct" from that suffered by the corporation for the shareholder to have standing. *Strougo,* 282 F.3d at 170.[3] The court in *Strougo*

---

[3] Like the Ninth Circuit cases discussed below and in Chakravarty's opening brief, the court in *Strougo* explained that Maryland courts consider the shareholder standing rule to be advantageous because it avoids a multiplicity of suits. In addition, one Maryland court (as quoted in *Strougo*) has explained that requiring shareholders to sue only through the corporation (in a derivative action)

did conclude that some of the shareholders (those who did not participate in an allegedly "coercive" rights offering) had standing to sue directors, officers, and an investment manager for distinct injuries sustained by that group of shareholders. However, that conclusion was based on the unique facts presented in that case. TWP's allegations here are not analogous.

    2.    <u>Ninth Circuit Case Law, Which the Plaintiffs Completely Ignore, Consistently Reaffirms that Claims By a Parent Corporation or Other Shareholder Are Carefully Scrutinized to Determine Whether the Shareholder's Alleged Injury is Truly Both Direct *And* Independent, and if Not, the Shareholder Lacks Standing.</u>

In *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593 (9th Cir. 1983), the Ninth Circuit affirmed this Court's finding that a parent corporation lacked standing to challenge the Franchise Tax Board's method of determining subsidiary's taxable income. There, as here, the issue turned not on the constitutional requirements of Article III, but on the prudential considerations. "Although SPNV has thoroughly briefed the Constitutional aspects of standing, the district court's decision in this case was based on prudential rather than Constitutional grounds." *Id.* at 595.

> Generally, a shareholder does not have standing to redress an injury to the corporation. *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439-40 (9th Cir. 1979) (sole shareholder had no standing to assert either federal or state law claims); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) (majority shareholder may not assert state law claims despite economic injury to him); *Erlich v. Glasner*, 418 F.2d 226 (9th Cir. 1969)(sole shareholder could not maintain an action under 42 U.S.C. § 1983).
>
> To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. *Von Brimer v. Whirlpool Corp.*, 536 F.2d at 846. <u>A shareholder must be injured directly and independently of the corporation.</u> *Id.* ; *Erlich v. Glasner*, 418 F.2d at 228. The method of taxation that SPNV seeks to enjoin does not injure SPNV directly or independently of the corporation.

*Id.*, emphasis added.

---

unless they can show an injury that is "distinct" from the injury to the corporation means that "any damages so recovered will be available for the payment of debts of the corporation, and, if any surplus remains, for distribution to the stockholders in proportion to the number of shares held by each." *Id.* In other words, the rule not only recognizes the separate existence of each corporate entity and avoids multitudinous litigation, but also provides protection to creditors of the corporation. By allowing a shareholder to sue in his/its individual capacity for injuries to the corporation, the recovery is diverted to the shareholders and away from the corporation, where it could be used to pay creditors.

Similarly, in *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838 (9th Cir. 1976), the Ninth Circuit held that the plaintiff shareholder did not have standing to sue even though he claimed that the defendant's actions caused: (a) a loss of income to the corporation, (b) a decline in the value of his stock, *and* (c) a reduction in the amount of money he would have received from the corporation as a result of his having assigned a patent to the corporation.

> Von Brimer's effort to bring himself within [the] exception [to the shareholder standing rule] was limited to the bald and unsubstantiated assertion that he had suffered 'unique injury not characteristic of that suffered by other VBR&D shareholders.' The trial judge was unpersuaded by this line of argument, 362 F.Supp. 1195., n. 6. As an appellate court, we are even less persuaded.

*Id.* at 846.

The Ninth Circuit's reasoning and conclusion were similar in *Erlich v. Glasner*, 418 F.2d 226 (9th Cir. 1969), where the court held that the sole shareholder of a poultry processing operation could not bring an action under 42 U.S.C. § 1983 against a health inspector who had filed two criminal complaints against the shareholder.

> In the final analysis, appellant charges that appellee Glasner's interference with the business of West Coast Poultry Company 'is a direct interference with plaintiff's right to operate his business and earn a livelihood for himself and family . . .' and that appellee Glasner's interference 'with the business of West Coast Poultry Company is a direct interference with the right of the plaintiff to peacefully operate his business and earn a livelihood for himself and family * * *', and that as a direct result of 'overt acts hereinabove set forth, plaintiff has sustained damage and injuries to *his business* and right and ability to earn a livelihood for himself and his family, all to plaintiff's damage in the sum of $250,000.00.' (Emphasis supplied.) He also claims punitive damages. Nothing in the affidavits filed in opposition to the motion for summary judgment changes the nature of the appellant's demand for damages. For that matter, on the record before us, aside from a possible state action for malicious prosecution, it is difficult to even imagine any claim for damages, other than those suffered by the corporation, if any.

*Id.* at 227-228.

And in *Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998), the Ninth Circuit again affirmed a finding by this Court that a shareholder lacked standing to sue the directors of a corporation and the FDIC on claims alleging that the directors had violated their duties of care and loyalty.

> [T]he mere presence of an injury to the corporation does not necessarily negate the simultaneous presence of an individual injury. Still, the pivotal question is whether the injury is incidental to or an indirect result of a direct injury to the corporation or to the whole body

of its stock or property. [citation omitted] If a corporation suffers a direct injury to the whole of its assets, any corresponding injury to the value of an individual's stockholder's shares (assuming the stockholder suffers no truly independent injury), is merely incidental to, or an indirect result of, the direct injury to the corporation's assets. An action by stockholders for that injury must be brought derivatively if at all.

* * *

Pareto did not allege injury to a right he possessed as an individual, separate and distinct from the injury to the value of the bank's stock and property due to its closure. [citation omitted.] He did not allege a majority stockholders' breach of a fiduciary duty to minority stockholders, which resulted in the majority stockholders retaining a disproportionate share of the corporation's ongoing value. [citations omitted.] Nor did he allege he was fraudulently induced to buy or sell stock. [citations omitted.] While Pareto does make vague allegations about misrepresentations that caused him to support the unsuccessful merger attempt and initiation of a receivership, his only injury from those misrepresentations was the devaluation of his stock when Barbary Coast was taken over by the FDIC. But that is an injury that fell on every stockholder, majority and minority alike, and fell on each on a per share basis.

In fine, this action is one against the former directors for allegedly delivering a fatal blow to the bank. It is clearly derivative, and is all it is.

*Id.* at 699-700.

Finally, the decision in *Vigilante.com, Inc. v. Argus Test.com, Inc.*, 2005 U.S. Dist. LEXIS 45999 (D. Or. 2005), illustrates that where, as here, the parent company is not claiming a misappropriation of its own separate assets, but is instead basing its claims on the alleged misappropriation of the assets of its subsidiary, the parent's alleged injuries are necessarily derivative and not independent of the alleged injuries to the subsidiary. In *Vigilante*, the parent corporation (Vigilante) brought claims against its former CEO and others alleging a scheme to misappropriate assets belonging the parent and other assets belonging to the subsidiary (VSA). The court held that the parent had standing only with respect to its claim of a scheme to misappropriate the parent's own assets (the rights to certain computer software) but not with respect to claims involving alleged injuries to the subsidiary.

The question remains, however, whether Vigilantes' claims are viable to the extent they assert injuries related to VSA's bankruptcy and loss of assets. Vigilante responds that the shareholder standing rule has no application to the instant case because the Complaint alleges a fraudulent conspiracy that specifically targeted Vigilante, rather than its French subsidiary. But the fact that the conduct may have been aimed at Vigilante is insufficient to confer it standing in the absence of a direct *injury* to Vigilante independent from the diminution of the value of its stock in VSA. *Shell*, 709 F.2d at 595. [footnote omitted]

> Vigilante further argues its injury was not simply the diminution of the value of its stock in VSA, but the total loss of VSA by virtue of that company's bankruptcy and liquidation. As a result, Vigilante lost an asset – namely, VSA itself – that was critical to the operation of Vigilante's own business. . . . .
>
> VSA unquestionably suffered its own injury from being driven into bankruptcy and thereby losing its assets. <u>While Vigilante may have been badly injured by VSA's bankruptcy, that injury is purely economic and flows only from the injury to the subsidiary.</u> *Shell*, 709 F.2d at 595. <u>In this circumstance, the court would have to disregard VSA's independent corporate existence to allow Vigilante to bring this suit.</u>

*Id.* at *24-25, emphasis added.

The same rationale applies equally here. TWP, like Vigilante, alleges that it was badly injured when TWIPL closed. However, that alleged injury to TWP is both "purely economic and flows only from the injury to the subsidiary." *See Vigilante, supra*. Thus, to hold that TWP has standing would require this Court to disregard TWIPL's separate corporate existence and would violate the shareholder standing rule.

### 3. TWP Has Made No Showing of A Direct or Independent Injury.

Again, TWP never even argues that it suffered injuries independent of TWIPL's injuries. TWP merely asserts that it suffered six types of "direct" injury. (See plaintiffs' Consolidated Opposition at pp. 28 to 29.) But the facts do not even support TWP's assertion of "direct" injury.

First, TWP asserts that it suffered direct injury because *its* trade secrets were allegedly misappropriated. However, the alleged trade secrets that are the subject of the claims in this case were TWIPL's, not TWP's. The alleged "trade secrets" at issue in this case are compensation data and other information about TWIPL's employees. (See p. 15 of plaintiffs' Consolidated Opposition.)

**REDACTED**

**REDACTED**

Second, TWP asserts that it suffered direct injury because it shares its computer system with TWIPL and "plaintiffs allege that Chakravarty and BNPP Asia used the combined TWIPL/TWP LLC computer system to gain access to" the alleged trade secrets. However, the mere fact that the two entities share a computer system does not does not establish that TWP suffered either a direct injury or that it suffered any injury that is independent of the alleged injury to TWIPL. Again, TWP is relying on the alleged misappropriation of TWIPL's, not TWP's, "trade secrets."

Third, TWP asserts that it suffered direct injury due to Chakravarty's alleged breaches of his contract with TWP and the implied covenant of good faith and fair dealing. However, TWP's contract with Chakravarty obligates Chakravarty not to use or disclose TWP's trade secrets. There is no evidence, or even any allegation, that Chakravarty misappropriated TWP's trade secrets. Chakravarty had no contract relating to TWIPL's alleged trade secrets, which are the subject of this case.

Fourth, TWP asserts that it suffered direct injury because defendants allegedly interfered with "employment relationships between Discovery Research employees and TWIPL," which destroyed Discovery Research and in turn "eliminated TWP LLC's ability to sell Discovery Research reports." However, this is the very same type of argument that was rejected in *Vigilante, supra*. As the court explained in *Vigilante,* the parent company in that case argued that "its injury was not simply the diminution of the value of its stock in VSA, but the total loss of VSA by virtue of that company's bankruptcy and liquidation." *Vigilante*, 2005 U.S. Dist. LEXIS at *25. "As a result," the court explained, the parent company was arguing that it "lost an asset – namely, [the subsidiary] itself – that was critical to the operation of Vigilante's own business. . . . ." *Id.* However, the court rejected

THOMAS WEISEL v. BNP PARIBAS, et al.
CASE NO. C 07-06198 MHP

8

DEF. CHAKRAVARTY'S REPLY BRIEF
IN SUPP. OF MOTION TO DISMISS

the argument, reasoning that the subsidiary "unquestionably suffered its own injury from being driven into bankruptcy and thereby losing its assets." *Id.* "While [the parent company] may have been badly injured by [its subsidiary's] bankruptcy, that injury is purely economic and flows only from the injury to the subsidiary." *Id., citing Shell*, 709 F.2d at 595. The court further explained that it "would have to disregard [the subsidiary]'s independent corporate existence to allow [the parent] to bring this suit." *Id.*

Fifth, TWP asserts that it suffered direct injury due to Chakravarty's alleged breach of fiduciary duty. However, this argument (on p. 30 of plaintiffs' Consolidated Opposition) also rests on the premise that TWIPL's "trade secrets" all belonged to TWP, which is not supported by the evidence for the reasons explained above.

Finally, TWP asserts it suffered direct injury as a result of defendants' alleged "civil conspiracy." However, this argument fails because it merely incorporates by reference "all the wrongful conduct described above that harmed TWP LLC."

In sum, every alleged injury that TWP points to is derivative of, and wholly dependent upon, the alleged injury(ies) to the Indian subsidiary. As such, TWP lacks standing and its presence in California can be used as a justification for asserting jurisdiction over any of the defendants in California or for a finding that California is the most convenient forum for this dispute.

B.  <u>CHAKRAVARTY IS NOT SUBJECT TO PERSONAL JURISDICTION IN CALIFORNIA.</u>

    1.  <u>Chakravarty does not have sufficient minimum contacts to subject him to jurisdiction in California.</u>

Plaintiffs devote only two paragraphs of their 39-page brief to the contention that Chakravarty is subject to jurisdiction in California. And each of those two paragraphs makes a different contention. Plaintiffs first contend that Chakravarty's alleged tortious conduct in Asia toward TWIPL subjects him to jurisdiction in California because he allegedly understood that his conduct would injure TWP in California. Plaintiffs separately contend that Chakravarty is subject to jurisdiction in California solely by virtue of his employment agreements with TWP. However, since TWP suffered no direct injury and it suffered no injury sufficient to give it standing, its alleged injury cannot provide a basis for subject any of the defendants to jurisdiction in California. Similarly,

Chakravarty's agreement with TWP provides no basis for subjecting him to jurisdiction in this case because the claims in this case do not arise out of that agreement.

  a. <u>Plaintiffs have not established that Chakravarty expressly aimed any tortious conduct at California.</u>

Again, TWIPL and TWP are separate entities, and all of the tort claims in this case involve alleged torts of which TWIPL is the alleged victim. All of the shareholder standing cases recognize that harm to a corporation always results in harm to its shareholders, but that harm does not even confer standing on the shareholder. Based on the same rationale, any derivative harm to a corporation's shareholders cannot possibly provide a basis for finding that the defendants who allegedly caused the harm are subject to personal jurisdiction wherever the shareholders reside. Thus, it matters not whether Chakravarty or BNPP Asia may have known about the "close relationship" between TWP and TWIPL. Notwithstanding their "close relationship," TWP and TWIPL are separate legal entities, and the claims in this case all involve alleged tortious conduct toward and alleged injury to TWIPL. As such, TWP's California headquarters simply cannot provide a basis for subjecting any defendant to jurisdiction here.

Where, as here, the claims involve the alleged misappropriation of trade secrets, the mere fact that a plaintiff feels the effect of the alleged misappropriation in the forum state does not suffice to establish that the defendants are subject to jurisdiction there. *See e.g. ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997). In *ESAB*, the court held that the defendants, whose conduct occurred in New Hampshire and Florida, were not subject to personal jurisdiction in South Carolina under the "effects" test, even though the plaintiff company was headquartered in South Carolina and the defendants knew that the information they allegedly misappropriated would cause harm to the plaintiff.

> All relations among the three [defendants] were carried out in and between New Hampshire and Florida. The only South Carolina "contact" related to this suit is that Centricut and Aley knew that the sales leads that Bergen supplied might, if fruitful, ultimately result in less sales to the ESAB Group, which was headquartered in South Carolina. . .
>
> This activity, standing alone, does not support proof of intent by Centricut to avail itself of the privilege of conducting activities in South Carolina. See *Hanson*, 357

> U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state"). Nor does it manifest behavior intentionally targeted at and focused on South Carolina, see *Calder v. Jones*, 465 U.S. 783, 789-90, 79 L.Ed. 2d 804, 104 S.CT. 1482 (1984) (jurisdiction of forum state upheld where libel "expressly aimed" at forum state with knowledge that "potentially devastating impact" would be felt there). . . .

*Id.*[4]

Here, the plaintiffs present an even less compelling set of facts than was presented in *ESAB* because the plaintiff whose trade secrets were allegedly misappropriated here is not even located in California. The California connection in this case is indirect, attenuated, and derivative.

### b. The claims in this case do not arise out of Chakravarty's agreement with TWP.

The claims in this case do not arise out of Chakravarty's agreement with TWP because that agreement only obligated him not to use or disclose TWP's trade secrets. This case involves the alleged misappropriation of TWIPL's trade secrets. This case arises not out of Chakravarty's employment by TWP in California, but out of his secondment to India to work for TWIPL. As a result, the case cited by plaintiffs, *Integral Development Corp. v. Weissenbach*, 99 Cal.App.4th 576 (2002), is distinguishable. In *Integral Development*, the American parent company hired a German citizen to work for its German subsidiary. However, the dispute that ultimately arose between the parent company and the German citizen involved the alleged misappropriation of the parent's trade secrets, to which the employee was given access when he worked for the subsidiary. In this case, by contrast, the trade secrets that were allegedly misappropriated consisted of information about the subsidiary's employees, and they belonged to the subsidiary, not the parent.

### 2. The exercise of jurisdiction over Chakravarty would be unreasonable.

Even when a defendant has sufficient minimum contacts, the court should decline to exercise jurisdiction where, as here, the exercise of jurisdiction would be unreasonable. On balance,

---

[4] Although the court in *ESAB* held that the defendants were not subject to general or specific jurisdiction in South Carolina, their motion to dismiss was denied because the action against them included a RICO claim, which authorizes nationwide service of process. Plaintiffs here assert no such claim.

application of the seven "reasonableness" factors here demonstrates that the exercise of jurisdiction over Chakravarty in California would be unreasonable.

(a) The extent of the defendant's purposeful interjection. Plaintiffs argue that the extent of Chakravarty's supposed "purposeful interjection" is high because, they contend, he "expressly aimed" his conduct at TWP, knowing its effects would be felt by TWP in California. However, the flaw in this theory is discussed above. Because TWP cannot even establish that it suffered a direct injury that is independent of any injury to its Indian subsidiary, TWP does not have standing to sue, the alleged injury to TWP does not establish that any defendant "expressly aimed" any conduct at California, and it does not support a finding of any defendant's "purposeful interjection" into California. Moreover, even if the court were inclined to find that the indirect and derivative injuries allegedly suffered by TWP were enough "interjection" by defendants to satisfy the purposeful availment requirement, the degree of interjection must still be taken into account in assessing the overall reasonableness of jurisdiction. *Core-Vent v. Nobel Industries AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). The "smaller the element of purposeful interjection, the less jurisdiction is to be anticipated and the less reasonable its exercise." *Id.*; *see also Doe v. Geller*, 533 F.Supp. 2d 996 (N.D. Cal. 2008).

(b) The extent to which the exercise of jurisdiction would be unduly burdensome. Plaintiffs assert that defendants have not shown any "special burden" of defending in California given "modern transportation." However, the fact that modern transportation makes it easier than it once was to travel from Asia to the United States does not completely eliminate the burden of requiring an Indian citizen who resides in India to litigate his claims in the United States. Indeed, the Supreme Court has specifically noted that the "burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 114 (1986).

(c) The extent to which the exercise of jurisdiction would conflict with Indian sovereignty. The entity that is claiming direct injury is an entity organized under Indian law. And that entity is suing an Indian citizen for conduct that allegedly occurred in Asia. "Where, as here, the defendant is

from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co*, 284 F.3d 1114, 1126 (9th Cir. 2002).

(d) The extent of California's interest in this dispute. California's interest is minimal. The only California connection is through the shareholder, which does not even have standing.

(e) The most efficient forum. India is the most efficient forum for resolution of this dispute. Plaintiffs do not dispute that most of the witnesses are in Asia.

(f) Convenient and effective relief for plaintiffs. Obviously this factor weighs in favor of one of the plaintiffs (TWP). However, this factor cannot be controlling and the courts have not given it much weight. "Neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the plaintiff," because "trying a case where one lives is almost always a plaintiff's preference." *Core-Vent*, 11 F.3d at 1490 (*quoting Roth v. Garcia Marquez*, 942 F.2d 617, 622 (9th Cir. 1991)). The Ninth Circuit held in *Core-Vent* that "[a] mere preference on the part of the plaintiff for its home forum does not affect the balancing; indeed, this factor is insignificant in this case." *Id.*

(g) The existence of an alternative forum. India is an alternative forum and the most efficient forum for resolution of this dispute.

C. THIS ACTION SHOULD ALSO BE DISMISSED BASED ON THE DOCTRINE OF FORUM NON CONVENIENS.

Plaintiffs' response to the motion to dismiss based on the *forum non conveniens* doctrine glosses over two important facts: (1) that TWP chose to locate TWIP in India and to incorporate TWIPL under Indian law; and (2) that one of the defendants here, Mr. Chakravarty, is an Indian citizen who currently resides in India and who resided in India at all times pertinent.

TWIPL was established as a separate legal entity, organized under Indian law, and it operated in India.

**REDACTED**

Thus, TWP's presence in San Francisco comes nowhere close to outweighing this case's very substantial connection to India, particularly since one of the named defendants is an individual who is an Indian citizen. In addition, having

chosen to avail themselves of the advantages of Indian law in setting up and operating TWIPL, plaintiffs can hardly be heard to now complain that the Indian legal system is too burdensome for TWIPL to be required to pursue its claims there. Moreover, plaintiffs' argument concerning the backlog in India's court system completely ignores the cases holding that India provides an adequate alternative forum. *See, e.g., Usa (India) Ltd. v. Honeywell International Inc.*, 2004 U.S. Dist. Lexis 4236 (S.D. N.Y. 2004); *Ramakrishna v. Besser*, 172 F.Supp. 2d 926 (E.D. Mich. 2001); *see also* Chakravarty's Memorandum of Points and Authorities filed April 24, 2008 and BNP Paribas' Reply Memorandum.

In sum, application of the public interest and private interest here weighs heavily in favor of dismissal of this action based on *forum non conveniens*. The case should be dismissed for this reason as well.

### III. CONCLUSION

For all of the foregoing reasons, Chakravarty's motion to dismiss should be granted.

Dated: August 4, 2008.

COOK | ROOS | WILBUR | THOMPSON LLP

By _____
MICHAEL E. WILBUR
Attorneys for Defendant
PRAVEEN CHAKRAVARTY