1  LEIV BLAD (State Bar No. 151353)
2  CLIFFORD CHANCE US LLP
   2001 K Street NW
3  Washington, D.C. 20006
   Telephone:      (202) 912-5000
   Facsimile:      (202) 912-6000
4  leiv.blad@cliffordchance.com

5  JOSEPH E. ADDIEGO III (State Bar No. 169522)
6  DAVIS WRIGHT TREMAINE LLP
   505 Montgomery Street, Suite 800
7  San Francisco, California 94111-6533
   Telephone:      (415) 276-6500
   Facsimile:      (415) 276-6599
8  joeaddiego@dwt.com

9  Attorneys for Defendants
   BNP PARIBAS and BNP PARIBAS
10 SECURITIES (ASIA) LIMITED

11          IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                   SAN FRANCISCO DIVISION

14 THOMAS WEISEL PARTNERS LLC, a Delaware            Case No. CV-07-06198 MHP
   limited liability company, and THOMAS WEISEL
15 INTERNATIONAL PRIVATE LIMITED, an Indian          **DEFENDANTS BNP PARIBAS**
   company,                                          **AND BNP PARIBAS**
16                                                    **SECURITIES (ASIA) LTD.'S**
                                                      **REPLY IN SUPPORT OF**
17                        Plaintiff,                  **MOTION TO DISMISS;**
                                                      **MEMORANDUM OF POINTS**
18        vs.                                         **AND AUTHORITIES IN**
                                                      **SUPPORT THEREOF**
19 BNP PARIBAS, a French corporation, BNP
   PARIBAS SECURITIES (ASIA) LIMITED, a Hong         **DATE:  August 18, 2008**
20 Kong company, and PRAVEEN CHAKRAVARTY,            **TIME:  2:00 p.m.**
   an individual,                                    **PLACE: Courtroom 15, 18th Fl.**
21                                                    **       Hon. Marilyn Hall Patel**

22 Defendant.

23

24

25                              **REDACTED**

26

27

28

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
Case No. CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

1

**TABLE OF CONTENTS**

2    INTRODUCTION ...................................................................................................1

3    ARGUMENT .........................................................................................................2

4    I.    DOCUMENTS PLAINTIFFS ATTACH TO THEIR OPPOSITION BRIEF
      DEMONSTRATE THAT TWP LLC INTENDED FOR DISPUTES JUST LIKE
5      THIS TO BE HEARD IN INDIA...........................................................................2

6        A.    TWP LLC Made a Conscious Decision to Opt Out of California's Legal and
            Framework in Favor of India's Lower Cost and Less Stringent Legal Regime.................2

7        B.    Employment Agreements Between TWIPL and the Research Analysts Show that a
            Significant Element of Plaintiffs' Claims Is Governed By Indian Law and Subject
8            to Binding Arbitration in India ...........................................................................3

9    II.    PLAINTIFFS FAILED TO DEMONSTRATE THAT THIS COURT HAS GENERAL
        OR SPECIFIC JURISDICTION OVER BNPP ASIA...........................................................5

10
        A.    Plaintiffs Cannot Establish General Jurisdiction By Relying on the California
11            Presence of BNP Paribas ...................................................................................5

12        B.    Plaintiffs Cannot Establish Specific Jurisdiction Because They Cannot Show that
            BNPP Asia Engaged in Any Conduct in California Relevant to this Dispute....................8

13    III.    PLAINTIFFS FAILED TO DEMONSTRATE THAT THIS COURT IS A
        CONVENIENT FORUM FOR A DISPUTE INVOLVING COMPANIES,
14        DOCUMENTS, AND WITNESSES IN INDIA AND HONG KONG...................................11

15        A.    Plaintiffs' Argument Regarding India's Court System is Based on Outdated
            Information and Is Immaterial ...........................................................................12
16
        B.    Plaintiffs' Other Arguments Are Unavailing ........................................................13
17
    CONCLUSION.....................................................................................................15

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
Case No. CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Bauer v. Interpublic Group of Companies, Inc.*, 255 F. Supp. 2d 1086 (N.D. Cal. 2003) .................. 4

4

*Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220 (3d Cir. 1995) ................................................12

5

*Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984) ......................................8

6

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)..........................................................9, 10

7

*Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299 (9th Cir. 1986) ............................................6

8
9

*Holland Am. Line Inc., et al. v. Wartsila N. Am., Inc., et al.*, 485 F.3d 450, 459 (9th Cir. 2007) ..........................................................................................................................................6

10

*Imo Industries, Inc. v. Kiekert AG*, 155 F.3d 254 (3rd Cir. 1998) ........................................10, 11

11

*Meridian Seafood Products, Inc. v. Fianzas Monterrey, S.A.*, 149 F.Supp.2d 1234 (S.D. Cal. 2001).............................................................................................................................14

12

*Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992).........................................................7

13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).........................................................13, 14

14

*Ramakrishna v. Besser Co.*, 172 F. Supp. 2d 926 (E.D. Mich. 2001) ..............................5, 12, 13, 14

15

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).........................9, 10

16

*Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156 (E.D.N.Y. 2006) .........................................6

17

*Uston v. Hilton Casinos, Inc.*, 564 F.2d 1217 (9th Cir. 1977)..............................................6

18

*Von Brimer v. Whirlpool Corp.*, 536 F.2d 838 (9th Cir. 1976) ..............................................11

19

**STATE CASES**

20
21

*Kiobel v. Royal Dutch Shell Petroleum Co.*, No. 02 CIV. 7618 KMWHBP, 04 CIV 2665 KMWHBP, 2008 WL 591869 (S.D.N.Y. Mar. 4, 2008)...................................................6

22

*Pavlovich v. Superior Court*, 29 Cal. 4th 262, 58 P.3d 2 (Cal. 2002) .........................................10

23

*Shin-Etsu Chemical Co., Ltd., v. 3033 ICICI Bank Ltd.*, 9 A.D.3d 171, 777 N.Y.S.2d 69 (N.Y.A.D. 2004) .............................................................................................................13

24
25

*Usha (India), Ltd. v. Honeywell Int'l, Inc.*, No. 03 Civ. 0494 (DC), 2004 WL 540441 (S.D.N.Y. Mar. 17, 2004), *aff'd as modified and remanded by* 421 F. 3d 129 (2nd Cir. 2005)..............................................................................................................12, 13, 14

26
27

*Vigilante.com, Inc. v. Argus Test.com, Inc.*, Number CV04-413-MO, 2005 WL 2218405 (D. Or. Sept. 6, 2005)..............................................................................................11

ii

28

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Case No. CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

1

**MISCELLANEOUS**

2

Michael G. Albano, *Agency as a Means of Obtaining Jurisdiction in New York over Foreign Corporations; A Failed Theory*, 20 Brook. J. Int'l L. 169 (1993).......................................................7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
Case No. CV-07-06198 MHP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

**INTRODUCTION**

BNP Paribas Securities (Asia) Limited's ("BNPP Asia") motion to dismiss demonstrated that there is simply no connection between this matter and California. The recruited research analysts are Indian nationals who left an Indian company with no California presence--plaintiff Thomas Weisel International Private Limited ("TWIPL")--for BNPP Asia. BNP Paribas has a California presence, but none of its California employees or their activities are relevant to this dispute. Praveen Chakravarty was technically employed by a California company--Thomas Weisel Partners LLC ("TWP LLC")--but he was seconded to TWIPL, is an Indian national, and lives and works in India. All of the relevant conduct took place in Asia and virtually all of the relevant witnesses and documents are in Asia.

Plaintiffs' opposition brief fails to rebut any of these points and admits most of them. While that is sufficient reason to grant the motion, plaintiffs' opposition provides additional reasons to do so. First, documents plaintiffs produced reveal that in offshoring its research analysis function TWP LLC intentionally opted out of California's legal system in favor of a lower-cost, less stringent Indian regulatory environment. Second, other documents reveal that TWIPL and the research analysts agreed that a significant element of plaintiffs' claims is subject to Indian law and binding arbitration in India.

Plaintiffs' opposition brief does not even mention these issues, but instead makes a series of arguments that are just not credible. For example, plaintiffs argue that BNPP Asia intentionally aimed its conduct not at TWIPL, but at TWP LLC. There is not a shred of evidence to support this, just an allegation and a series of inferences. Plaintiffs also argue that BNP Paribas--one of the world's largest banks--is actually the agent of one of its subsidiaries--BNPP Asia--that operates within a limited geographic area. Plaintiffs offer no reason why the Court should ignore the separate corporate status of BNP Paribas and BNPP Asia. Finally, plaintiffs argue that India's court system is impermissibly clogged, but cite outdated statistics and ignore important reforms that have drastically reduced the number of cases filed and the time to trial.

1

1    Despite a prolonged period of jurisdictional discovery, plaintiffs have nothing more to offer

2    in support of their jurisdictional allegations than when they filed the complaint.  This remains an

3    Indian employment law dispute that should be tried in Indian courts.  California has no legitimate

4    interest in deciding how India structures its employment law, and permitting the State to do so will

5    undermine the efforts of a country managing the transition from a controlled economy to one of the

6    world's largest and most dynamic market economies.

7                                    **ARGUMENT**

8  **I.    DOCUMENTS PLAINTIFFS ATTACH TO THEIR OPPOSITION BRIEF
         DEMONSTRATE THAT TWP LLC INTENDED FOR DISPUTES JUST LIKE THIS**

9  **TO BE HEARD IN INDIA**

10    Plaintiffs attached to their opposition brief documents that prove the very arguments they

11   oppose.  Those documents show that: (1) TWP LLC adopted a strategy of opting out of California

12   in favor of a less costly and less stringent legal and regulatory market and (2) a significant element

13   of plaintiffs' claims against BNPP Asia is governed by Indian law and must be arbitrated in India.

14   Together, these documents demonstrate that this case does not belong in California; indeed, they

15   show that TWP LLC never intended for cases like this to be tried here.

16  **A.    TWP LLC Made a Conscious Decision to Opt Out of California's Legal and
           Framework in Favor of India's Lower Cost and Less Stringent Legal Regime**

17
18    TWP LLC cannot claim the jurisdiction of this Court because it opted out of California's

19   legal framework to obtain the cost benefits of moving to a jurisdiction--India--that lacked

     California's expensive legal and regulatory framework.  TWP LLC offshored its research function to
20
     reduce its costs. (Opp. at 5.)  To do so, TWP LLC created an Indian company--TWIPL--with no
21
     California presence. (Addiego Decl. Ex. 1 at 3, 7-8 & Ex. 2 at 3.)  TWIPL employed Indian
22
     nationals as research analysts, paid their payroll taxes, and operated the research business in India
23
     just as it had been run in California. (Opp. at 4; Dhillon Decl. ¶ 5; Addiego Decl. Ex. 1 at 7 & Ex. 2
24
     at 3.)  To lower its costs even further, TWP LLC owned only a miniscule portion of TWIPL and
25
     created a new company headquartered in the Republic of Mauritius to own TWIPL. (Addiego Decl.
26

27                                           2
28

DAVIS WRIGHT TREMAINE LLP

1    Ex. 3 at 1.)  TWP LLC had less than one percent ownership in TWIPL, while the Mauritius company

2    owns more than 99% of the Indian company.  (*Id.*)

3    All of the steps TWP LLC took to opt out of the California market show that it is, at best, a

4    tertiary player in a dispute that has nothing to do with the State.  The Mauritius company--not TWP

5    LLC--owned TWIPL.  TWIPL--not TWP LLC--hired and employed the Indian research analysts.

6    (Opp. at 4; Dhillon Decl. ¶ 5.)  And TWIPL--not TWP LLC-- signed employment agreements with

7    them providing that any dispute relating to the termination of their employment--by either TWIPL or

8    the analysts themselves--would be subject to Indian law and arbitrated in India (Solani Decl. Exs. E

9    &. F.)

10    TWP LLC's offshoring strategy produced the very cost benefits the company sought.

11    TWIPL was able to do the same research analysis TWP LLC previously had done at a much lower

12    cost.[1]  Plaintiffs now fear that this same strategy will deprive them of a California claim in this case,

13    but that is the consequence of their decision to flee the State to lower their costs and offshore

14    California jobs.  The law permitted TWP LLC to opt out of California's legal framework, but not to

15    opt back in only for the limited purpose of seeking a bigger damages award in an Indian employment

16    law dispute.

17    **B.    Employment Agreements Between TWIPL and the Research Analysts Show that**

18    **a Significant Element of Plaintiffs' Claims Is Governed By Indian Law and**
     **Subject to Binding Arbitration in India**

19    Exhibit F to the Declaration of Lisa Sorani, TWP LLC's Vice President and Associate

20    Director of Human Resources, is a "new hire binder" TWIPL gave to the research analysts that

21    eventually left TWIPL for BNPP Asia.  (Sorani Decl. ¶ 7.)  That binder contained an agreement

22    providing "that any and all controversies, claims, disputes with anyone . . . arising out of, relating to,

23    or resulting from . . . the termination of [the research analysts'] employment with [TWIPL] . . . shall

24

25    [1]  *See Thomas Weisel Partners Group, Inc.* (Form 10-K), at Part I, Item 7 (March 16, 2007) ("We

26    believe that providing research in India allows us to leverage the qualified and low-cost research
     professionals available in India.").

27

3

28

DAVIS WRIGHT TREMAINE LLP

1    be subject to binding arbitration under [The Indian Arbitration and Conciliation Act, 1996]." (Sorani

2    Decl., Ex. F at 9-10.)  The agreement is "governed by the laws of . . . India," and the employees

3    "consent[ed] to the personal jurisdiction of the courts located in the city of Bangalore in the state of

4    Karnataka for any lawsuit filed by . . . the company."  (*Id.*)[2]

5         The Court must construe those employment agreements in rendering a decision in this case.

6    This is because Count 6 alleges intentional interference with contract.  To prove that claim, plaintiffs

7    must prove all of the following:

        1)    TWIPL had a valid contract with the research analysts;

8

9        2)    BNPP Asia had knowledge of that contract;

10       3)    BNPP Asia committed an intentional act designed to induce breach of or disrupt the
              contractual relationship between TWIPL and the research analysts;
11

12       4)    an actual breach or disruption of that contractual relationship occurred; and

13       5)    TWIPL suffered damages as a result of the breach.

14    *See Bauer v. Interpublic Group of Companies, Inc.*, 255 F. Supp. 2d 1086, 1094 (N.D. Cal. 2003).

15    Thus, plaintiffs' intentional interference with contract claim requires proof that the analysts breached

16    a term of their employment agreements with TWIPL.  *Id.*  Whether there was such a breach can be

17    determined only after reviewing the employment agreements, which define the rights and obligations

18    of TWIPL and the research analysts.  And because those employment agreements contain choice of

19    law, choice of venue, and arbitration provisions, Indian law will apply to the alleged Sixth Cause of

20    Action and the claim is subject to binding arbitration in India.

21         The Sorani Declaration establishes therefore that BNPP Asia's motion to dismiss must be

22    granted.  TWIPL agreed that any claim arising out of the termination of the research analysts'

23    employment would be governed by Indian law and arbitrated in India.  Moreover, the agreements

24    confirm that this Court must determine and apply unfamiliar Indian law and regulations in reviewing

25

26    [2]    Another agreement plaintiffs produced reveals that the research analysts were free to leave
            TWIPL for any reason or for no reason at all.

27                                                        4

28    REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
      MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
      Case No.  CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

1    plaintiffs' claims.  This is an important factor weighing in favor of dismissal on *forum non*

2    *conveniens* grounds.  *See Ramakrishna v. Besser Co.*, 172 F. Supp. 2d 926, 933 (E.D. Mich. 2001).

3    **II.    PLAINTIFFS FAILED TO DEMONSTRATE THAT THIS COURT HAS GENERAL
4            OR SPECIFIC JURISDICTION OVER BNPP ASIA**

5           Plaintiffs' opposition brief is remarkable in what it does not contest:  (1) BNPP Asia--the

6    entity that allegedly recruited the research analysts unlawfully--has no presence in California;

7    (2) none of BNPP Asia's alleged conduct occurred in California; (3) although BNPP Asia's

8    corporate parent and affiliate--BNP Paribas--has operations in California, none of its California

9    employees engaged in any of the alleged conduct; and (4) the Thomas Weisel entity from whom the

10   employees were hired--TWIPL--is an Indian company with no California presence.  These now

11   undisputed facts are sufficient, by themselves, to grant BNPP Asia's motion to dismiss on

12   jurisdictional grounds.

13   **A.    Plaintiffs Cannot Establish General Jurisdiction By Relying on the California
             Presence of BNP Paribas**

14          Unable to cite any evidence of continuous, substantial, and systematic contacts between

15   BNPP Asia and California, plaintiffs attribute to BNPP Asia the California contacts of its corporate

16   parent and affiliate--BNP Paribas and BNP Paribas Securities Corp. ("BNPP Securities").  (Opp. at

17   20.)  Trying to add badly needed credibility to their argument, plaintiffs make the incredible claim

18   that BNP Paribas, an international financial conglomerate, and BNPP Securities, a U.S. broker-

19   dealer, are actually BNPP Asia's agents.  (Opp. at 22-23.)

20          This argument turns the relationship between BNPP Asia, BNP Paribas, and BNPP Securities

21   on its head.

22

23   **REDACTED**                              **REDACTED**

24

25

26          And the only service plaintiffs claim BNPP Securities performs for BNPP Asia in California is

27                                          5

28   REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
     MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
     Case No.  CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

1    to facilitate and "generate international financial transactions that BNPP Asia would complete."

2    (Opp. at 23.)

3

4    **REDACTED**                              **REDACTED**

5

6

7        The Ninth Circuit has rejected plaintiffs' breathtakingly broad argument.  The court has held

8    that a parent or affiliate corporation's ties to a forum state do not, standing alone, establish personal

9    jurisdiction over a subsidiary or affiliate.  *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299,

10   301-02 (9th Cir. 1986), *citing Uston v. Grand Resorts, Inc.*, 564 F.2d 1217, 1218 (9th Cir. 2001).

11   Rather, where a parent and an affiliate are separate and distinct corporate entities, the presence of

12   one in a forum may not be attributed to the other.[3]         **REDACTED**

13   **REDACTED**

14       Plaintiffs' attempt to circumvent this rule through an agency argument has no support in

15   California law or in the Ninth Circuit.  No California court has held that a parent or affiliate

16   company may be an "agent" of a subsidiary or affiliate for jurisdictional purposes absent an *alter ego*

17   relationship.  Plaintiffs' only support for this argument are a few cases from courts in other

18   jurisdictions, mostly New York.  (Opp. at 20-23.)  However, even the New York courts have found

19   there to be no agency relationship in cases like this one.[4]  And in the case on which plaintiffs

20   principally rely--*Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992)--there was an intertwining

21

22   [3]   *See Holland Am. Line Inc., et al. v. Wartsila N. Am., Inc., et al.*, 485 F.3d 450, 459 (9th Cir.
23         2007) (*citing Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001).

     [4]   *See, e.g., Kiobel v. Royal Dutch Shell Petroleum Co.*, No. 02 CIV. 7618 KMWHBP, 04 CIV
24         2665 KMWHBP, 2008 WL 591869, *7 (S.D.N.Y. Mar. 4, 2008) (finding no agency between a
           domestic corporation who engaged in sales and recruiting on behalf of a foreign affiliate); *see*
25         *also Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156, 162-63, 166 (E.D.N.Y. 2006) (finding no
           agency relationship between a foreign defendant and its domestic affiliate despite plaintiff's
26         allegations that the affiliate exclusively sold defendant's products in the forum).

27                                                    6

DAVIS WRIGHT TREMAINE LLP

between the affiliates **on sales in the United States** that is absent here.[5]  In finding jurisdiction over the foreign affiliates, the *Palmieri* court found that the New York company signed recording artists to contracts and distributed and marketed recordings of those artists in the United States on behalf of these affiliates.  These U.S. sales were a substantial percentage of the overall sales by the foreign affiliates.

]

REDACTED                          REDACTED

REDACTED            REDACTED

REDACTED                REDACTED

REDACTED                REDACTED

REDACTED                    REDACTED

REDACTED                    REDACTED

---

[5]  *Palmieri* has been widely criticized for creating confusion and uncertainty in the jurisdictional analysis.  *See, e.g.*, Michael G. Albano, *Agency as a Means of Obtaining Jurisdiction in New York over Foreign Corporations; A Failed Theory*, 20 Brook. J. Int'l L. 169 (1993).

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
Case No.  CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

REDACTED REDACTED

REDACTED REDACTED

REDACTED REDACTED

REDACTED REDACTED

REDACTED REDACTED

United States through an affiliate or agent without submitting to jurisdiction. "[N]o court has ever held that the maintenance of even a substantial sales force within the state [by an affiliate] is a sufficient contact to assert jurisdiction in an unrelated cause of action." *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (no jurisdiction over a West German corporation on a claim that arose out of activities in Europe, where the corporation's contacts with California consisted of sales and marketing efforts through an agent that did business in California).

**B.    Plaintiffs Cannot Establish Specific Jurisdiction Because They Cannot Show that BNPP Asia Engaged in Any Conduct in California Relevant to this Dispute**

Specific jurisdiction requires a showing that BNPP Asia engaged in conduct in California that is relevant to the dispute. Plaintiffs do not even try to show that BNPP Asia engaged in any such conduct. Rather, they argue that BNPP Asia's conduct in Asia was "expressly aimed" at California and therefore can be counted for jurisdictional purposes as conduct within the State. (Opp.

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
Case No. CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    at 18.)  To satisfy their burden under an "express aiming" theory, plaintiffs must demonstrate that

2    California was "the focal point" of the tortious activity:  (1) BNPP Asia committed an intentional

3    tort; (2) BNPP Asia expressly aimed the tortious conduct at California; and (3) BNPP Asia caused

4    harm that it knew was likely to be suffered in California.  *See Schwarzenegger v. Fred Martin Motor*

5    *Co.*, 374 F.3d 797 (9th Cir. 2004), *citing Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.

6    2002).  Merely showing an effect within the State is insufficient:  an intentional act is expressly

7    aimed at the forum when "the defendant is alleged to have engaged in wrongful conduct targeted at a

8    plaintiff whom the defendant knows to be a resident of the forum state."  *Dole Food Co. v. Watts*,

9    303 F.3d at 1111 (*quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th

10   Cir. 2000).  Plaintiffs satisfy their burden only by proving that BNPP Asia's alleged acts were

11   "performed for the very purpose of having their consequences felt in the forum state."  *Dole*, 303

12   F.3d at 1112 (*quoting Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259-60 (9th

13   Cir. 1989).

14        Plaintiffs have not satisfied this heavy burden.  They have offered no evidence whatsoever

15   regarding BNPP Asia's purpose or intent regarding TWP LLC.  Plaintiffs rely on internal TWP LLC

16   documents and on documents filed with regulators, but these documents cannot support even an

17   inference that BNPP Asia intended to harm a California company.  For example, plaintiffs rely on an

18   Intercompany Services Agreement between TWP LLC and TWIPL, on "TWP Group's public filings

19   stat[ing] that TWIPL was both a subsidiary and NYSE-approved branch of TWP LLC," and on

20   regulatory filings showing that certain TWIPL employees were registered with FINRA as associated

21   persons of TWP LLC.  (Opp. at 18-19 (emphasis removed)).  Notably, plaintiffs do not assert that

22   anyone at BNPP Asia ever saw these documents, and there is no evidence (nor any reason to believe)

23   that BNPP Asia had access to internal TWP LLC documents or was monitoring TWP LLC's public

24   filings.  Moreover, had BNPP Asia secretly been monitoring TWP LLC's regulatory filings, it would

25   not have known the true nature of the relationship between TWP LLC and TWIPL.

26   **REDACTED**                    **REDACTED**

27                                          9

28   REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
     MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Case No.  CV-07-06198 MHP

1    **REDACTED**                    **REDACTED**

2

3        Unable to cite any evidence of BNPP Asia's purpose or intent, plaintiffs argue only that

4    BNPP Asia "undoubtedly knew of the [parent-subsidiary] connection between" TWIPL and TWP

5    LLC. (Opp. at 19.) Plaintiffs cite no BNPP Asia document and no BNPP Asia statement

6    demonstrating such knowledge. The only support they provide is an email from Mssrs. Rousseau

7    and Harris to Mr. Chakravarty stating that they assumed the research analysts would "resign from

8    Thomas Weisel enmass." (Opp. at 19; Dhillon Decl. Ex. E.) Given that the analysts worked for

9    TWIPL, this email is irrelevant to an intent to harm TWP LLC. Moreover, it merely states the

10   obvious: Chakravarty and the research analysts would resign from TWIPL and move to BNPP Asia.

11   The email refers to the possible effect on TWIPL, but says nothing about the possible effect on TWP

12   LLC, and nothing in the email refers to any purpose or intent to injure TWP LLC.

13       The Ninth Circuit has already held that this type of "must have known" argument is

14   insufficient to satisfy a plaintiff's burden under an express aiming theory. Plaintiffs must show that

15   BNPP Asia not only knew that TWP LLC was a California company, but that BNPP Asia "targeted"

16   its conduct at TWP LLC. *See Dole Food Co.*, 303 F.3d at 1111. *See also Pavlovich v. Superior*

17   *Court*, 29 Cal.4th 262, 278, 58 P.3d 2, 13 (Cal. 2002) (holding that knowledge alone is insufficient

18   to establish express aiming express aiming at the forum state as required by the effects test); *Imo*

19   *Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3rd Cir. 1998) ("Simply asserting that the defendant

20   knew that the plaintiff's principal place of business was located in the forum would be insufficient in

21   itself" to establish express aiming). This they have not tried to do.

22       The Ninth Circuit has affirmed dismissal of a complaint in a situation like this. In

23   *Schwarzenegger*, the court held that Arnold Schwarzenegger's argument that a Ohio car dealer must

24

---

25   [6]  Foreign companies may establish a branch in India only with permission from the reserve Bank
26        of India. See http://business.gov.in/growing_business/opening_branch.php. Plaintiffs did not
         present any evidence showing that they have done so.

27                                                              10

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1    have known that Schwarzenegger lived in California failed to satisfy his burden, even if the dealer's

2    advertisement caused harm in California and even if the dealer may have known that

3    Schwarzenegger lived in California. Because the plaintiff failed to demonstrate that the defendant

4    intentionally targeted a California entity, dismissal was appropriate. *See* 374 F.3d at 807; *see also*

5    *Imo Indus.*, 155 F.3d at 265 (holding that plaintiff failed to satisfy burden of establishing express

6    aiming even if damage was felt in New Jersey and plaintiff put defendant on notice that it would file

7    suit in New Jersey). This is consistent with the Ninth Circuit's repeated rulings that the status of a

8    company as the parent of an allegedly injured subsidiary does not confer standing to sue on the

9    parent, unless the parent suffers injuries that are independent of the injuries to the subsidiary, which

10    TWP does not allege. *See, e.g.*, *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976);

11    *see also Vigilante.com, Inc. v. Argus Test.com, Inc.*, No. CV04-413-MO, 2005 WL 2218405 at *8

12    (D.Or. Sept. 6, 2005).

### III. PLAINTIFFS FAILED TO DEMONSTRATE THAT THIS COURT IS A CONVENIENT FORUM FOR A DISPUTE INVOLVING COMPANIES, DOCUMENTS, AND WITNESSES IN INDIA AND HONG KONG

15    Plaintiffs do not dispute that (1) the complaint fails to allege any fact that took place in

16    California; (2) all of the conduct alleged in the complaint occurred in either India or Hong Kong; (3)

17    India regulates the conduct at issue; (4) Indian law provides a remedy for plaintiffs' claims; and (5)

18    it would be inconvenient for witnesses in Asia to travel to California. Although plaintiffs contest

19    that Indian law will apply to this case, they failed to inform the Court that TWIPL agreed that it

20    apply to at least part of plaintiffs' claims and that those claims be arbitrated in India.

21    These now undisputed facts demonstrate that this is not a case in which there are two equally

22    acceptable alternative forums. Rather, there is no reason to conclude that this case should be heard

23    in a California court. It is an Indian employment law dispute governed by Indian law. India has a

24    compelling interest in managing these types of employment law issues as it manages the transition

25    toward a market economy. By contrast, California has no interest in the rules that apply in India to

26    the recruitment of Indian nationals employed by Indian and Asian companies.

27

11

28

A.    **Plaintiffs' Argument Regarding India's Court System is Based on Outdated Information and Is Immaterial**

Plaintiffs' *forum non conveniens* argument is premised on one argument:  that a backlog of cases in India's legal system renders the Indian courts an inadequate alternative forum.  (Opp. at 31.)  Plaintiffs' argument should be ignored for two reasons.  First, plaintiffs **agreed** that at least part of their claims would be subject to Indian law and binding arbitration in India, and in offshoring TWP LLC's research function opted out of California's legal and regulatory market.  Having chosen India and its legal and regulatory system, they cannot claim now that India is not an adequate alternative forum.  *See Ramakrishna*, 172 F. Supp. 2d at 932-33.

Second, plaintiffs fail to mention a number of recent important developments in India's court system.  First, India increased the amount in controversy required for Indian High Court jurisdiction from approximately $11,000 USD to approximately $43,500 USD.  *Usha (India), Ltd. v. Honeywell International Inc.*, No. 03 Civ. 0494 (DC), 2004 WL 540441 at *4 (S.D.N.Y. Mar. 17, 2004) ), *aff'd as modified and remanded by* 421 F. 3d 129 (2nd Cir. 2005).  Second, India amended its Code of Civil Procedure "to reduce delays and streamline case management.  (Gopal Decl. ¶¶ 12-16.); *Usha (India)*, at *4.  Third, India increased significantly the number of judges in the trial courts.  (Gopal Decl. ¶ 17 .)  These reforms have reduced at least one High Court's docket by 75%, *see Usha (India)* at 2004 WL 540441 at fn. 4, and have been continuously reducing the delay in the Bombay High Court.  (Gopal Decl. ¶8, Exs. C-G.)  In turn, these reforms have reduced the average time to trial drastically, and it is now common for cases to proceed to trial within 3-4 years.  (Gopal Decl. ¶ 11 & 18.)  Moreover, delays of a few years are of no legal significance in the *forum non conveniens* calculus.  *Bhatnagar, v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1227 (3d Cir. 1995).

Plaintiffs failed to inform the Court of these developments either in their brief or in the supporting declaration of Justice Desai.  The declaration is based on Justice Desai's experience as a judge, but he last served as a judge in 1990.  Thus, his statement that "in my experience, the typical case takes at least 15 years" is based on experience that is now 20 years old.  (Desai Decl. ¶¶ 3, 7 &

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Case No.  CV-07-06198 MHP

DAVIS WRIGHT TREMAINE LLP

32.) Moreover, plaintiffs provide no evidence showing that a "complex international case like the present one" would take more time than a typical civil case in India. (Desai Decl. ¶ 7.)[7]

Plaintiffs' reliance on *Bhatnagar* is misplaced. *Bhatnagar* found that a delay of 15-20 years rendered India an inadequate alternate forum, but was decided thirteen years ago, before India enacted the court reforms. Moreover, it was a personal injury, not a commercial case, and it was non-commercial cases that were clogging India's courts and that were the principle target of India's reforms. *See Shin-Etsu Chemical Co., Ltd., v. 3033 ICICI Bank Ltd.*, 9 A.D.3d 171, 179, 777 N.Y.S.2d 69, 75 (N.Y.A.D. 2004) (noting that it is the non-commercial cases that clog the Indian court calendars). Subsequent cases have declined to follow *Bhatnagar* for just these reasons and have held that India is an adequate alternative forum. *See Usha*, 2004 WL 540441 at *5; *Shin-Etsu*, 9 A.D.3d at 179; *Ramakrishna*, 172 F. Supp. at 931. Plaintiffs also rely on outdated reports (from 2003) of the Criminal Commission (not Civil), a Law Commission of India report from 1988, and various commentaries and news articles, none of which are relevant now that India has addressed the congestion within its courts. (Desai Decl. Exs. N-S.)

For these reasons, plaintiffs failed to demonstrate that India's courts currently are so clogged that they do not represent an alternative forum. Even assuming that "India's courts may be more clogged" than some U.S. courts, they are still "able to provide a reasonable and fair forum for the adjudication of plaintiffs' claim." *See Ramakrishna*, 172 F. Supp. at 932.

### B.    Plaintiffs' Other Arguments Are Unavailing

Plaintiffs make a series of other arguments, none of which have any merit. First, plaintiffs argue that their choice of forum is entitled to substantial deference. However, Ninth Circuit courts have held that they may decline to exercise jurisdiction, even though they may have jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice

---

[7]    None of the exhibits provided by Justice Desai distinguish between various types of cases, therefore, it is unclear what the actual delay for a commercial or employment law based civil case would be.

13

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

1  indicate that the action should be tried in another forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S.

2  235, 249-50 (1981). Ninth Circuit courts hold that a resident's forum choice should not be given

3  dispositive weight "[i]f the balance of convenience suggests that trial in the chosen forum would be

4  unnecessarily burdensome for the defendant or the court [then] dismissal is proper." *See Meridian*

5  *Seafood Products, Inc. v. Fianzas Monterrey, S.A.*, 149 F.Supp.2d 1234 (S.D. Cal. 2001) (noting that

6  the litigation was likely a result of plaintiff's "attempt to circumvent the choice of law and forum

7  selection clauses" in the parties' contracts).

8      Second, plaintiffs argue that TWP LLC as a California company is the principal plaintiff that

9  allegedly suffered damage. This is false. TWP LLC did not employ the research analysts and did

10  not even own a significant share of TWIPL. (*See supra* at p. 2-3.) It is TWIPL, not TWP LLC, that

11  is the principal plaintiff that allegedly suffered damage. Any damage TWP LLC allegedly suffered

12  is entirely derivative of the damage suffered by TWIPL.

13      Third, plaintiffs argue that the burden on witnesses traveling from India to California would

14  be no greater than the burden on witnesses traveling to India from either Hong Kong or California.

15  This argument is not credible for a number of reasons. It obviously would be much more convenient

16  for witnesses either in Hong Kong or India to appear at a trial in India than a trial in California, and

17  there are far more percipient witnesses in India or Hong Kong than there are in California. Since

18  "India is not a signatory to the Hague Convention on taking discovery through letters rogatory or

19  letters of request," it is unlikely that discovery could be obtained from all of these witnesses if the

20  case was tried in California. *See Usha*, 2004 WL 540441 at *6. Thus, a weighing of the relative

21  burden demonstrates that the inconvenience created by a trial in California would be much greater

22  than that created by a trial in India.

23      Finally, as recently pointed out by one court, it is "disingenuous" to undertake a project in

24  India, execute numerous contracts with Indian nationals in India that provide that Indian law governs

25  and that disputes will be heard in an Indian forum, and then claim that delay makes India an

26

27                                          14

28  REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
    MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
    Case No. CV-07-06198 MHP

unreasonable judicial forum. *See Ramakrishna*, 172 F. Supp. 2d at 931. Plaintiffs' attempt to do so should be considered in light of the choice they already made, which does not involve California.

## CONCLUSION

For the foregoing reasons, BNP Paribas and BNPP Asia respectfully request that the Court grant their motion to dismiss for lack of personal jurisdiction and *forum non conveniens*.

DATED: August ____, 2008

DAVIS WRIGHT TREMAINE LLP

By: _____
Joseph E. Addiego III

Leiv Blad
CLIFFORD CHANCE US LLP

Attorneys for Defendants
BNP PARIBAS, BNP PARIBAS, and BNP
SECURITIES (ASIA) LIMITED

15

REPLY IN SUPPORT OF DEFENDANTS BNP PARIBAS AND BNP PARIBAS SECURITIES (ASIA) LTD.'S
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Case No. CV-07-06198 MHP