UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS WEISEL PARTNERS LLC, et al., | No. C 07-6198 MHP |
| Plaintiffs, | |
| v. | **OPINION** |
| BNP PARIBAS, et al., | **Re: Defendant Chakravarty's Motion to Dismiss Plaintiffs' Third and Fourth Claims** |
| Defendants. | |

Plaintiffs Thomas Weisel Partners LLC ("TWP LLC") and Thomas Weisel International Private Limited ("TWIPL") (collectively "plaintiffs") brought this action against defendants BNP Paribas ("BNP Paribas"), BNP Securities (Asia) Limited ("BNP Paribas Asia") and Praveen Chakravarty ("Chakravarty") (collectively "defendants"). Plaintiffs allege that defendants' efforts to solicit plaintiffs' employees violated California contract and tort law and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030. Now before the court is defendant Chakravarty's motion to dismiss the second amended complaint's third and fourth claims, which are claims for breach of contract and breach of the implied covenant of good faith and fair dealing, directed solely against Chakravarty. Having considered the parties' arguments and submissions, and for the reasons discussed below, the court enters the following order.

## BACKGROUND

The following background is taken from the allegations of the operative complaint, which are assumed to be true for the purposes of the instant motion to dismiss. Plaintiff TWP LLC is an investment bank and broker-dealer headquartered in San Francisco, California. Docket No. 159 ("Second Amended Complaint" or "SAC") ¶ 11. In August 2003, TWP LLC hired defendant Chakravarty. *Id.* ¶ 19. Chakravarty signed a document on August 25, 2003, entitled "ACKNOWLEDGMENT OF RECEIPT OF EMPLOYEE HANDBOOK AND AGREEMENT TO EMPLOYMENT AT WILL, CONFIDENTIALITY, NON-SOLICITATION, AND AGREEMENT TO ARBITRATE." *Id.* ¶ 20; Docket No. 162 (Calabria Dec.), Exh. A ("Agreement").[1] The agreement contains several sections. One section, titled "Confidentiality and Trade Secrets," contains the following provision:

> I will not at any time, either during or after the term of my employment with TWP, in any fashion, form or manner, either directly or indirectly, unless expressly consented to in writing by TWP, use, divulge, disclose or communicate to any person or entity any confidential information of any kind, nature or description concerning any matters affecting or relating to TWP's business. The definition of "confidential information" is very broad. It includes but is not limited to, computer processes, programs and codes; the names, addresses, buying habits or practices of any TWP clients or customers; marketing methods, programs and related data, or other written records used in TWP business; compensation paid to other employees and independent contractors and other terms of their employment or contractual relationships; or any other confidential information of, about or concerning TWP business, manner of operations, or other data of any kind, nature or description. I understand the above information and items are important, material and confidential trade secrets that affect the successful conduct of TWP business and its good will, and that any breach of any term of this section is a material breach of this agreement. All equipment, notebooks, documents, memoranda, reports, files, samples, books, correspondence, lists or other written and graphic records, and the like, including tangible or intangible computer programs, records and data, affecting or relating to TWP business, which I might prepare, use, construct, observe, possess or control, shall be and shall remain TWP's sole property. I agree that on or before the last day of my employment I will not remove confidential information, whether physical or electronic without the express written permission of Human Resources.

SAC ¶ 20; Agreement at 1. A second section, titled "No Solicitation of Employees," contains the following provision:

> I agree that for as long as I am employed by TWP and for 12 months after the cessation of my employment I will not recruit, hire or attempt to recruit or hire, directly or by assisting others, any of TWP's employees with whom I had contact

2

> during my employment with TWP. For the purposes of this paragraph, "contact" means any interaction whatsoever between the other employee and me.

SAC ¶ 21; Agreement at 2.

From August 2003 to October 2005, TWP LLC employed Chakravarty in its San Francisco office. SAC ¶¶ 19-24. In October 2005, TWP LLC made Chakravarty Director of Discovery Research at TWIPL, a subsidiary located in Mumbai, India, and wholly-owned by TWP LLC either directly or indirectly through a Mauritius holding company. *Id.* ¶¶ 24-25. TWIPL provided services to TWP LLC including the preparation of research reports on undercovered companies whose stocks traded on U.S. stock exchanges. *Id.* ¶ 13. A committee chaired by TWP LLC personnel decided the areas that Discovery Research would cover, and TWP LLC approved reports issued by Discovery Research before publication. *Id.* ¶ 26.

In mid-October 2007, Chakravarty met in Mumbai with Pierre Rousseau, BNP Paribas's Global Head of Equity Brokerage and a director and Chief Executive Officer of BNP Paribas Asia, and Jonathan Harris, BNP Paribas Asia's Regional Head of Company Research. *Id.* ¶¶ 27-30. At the meeting, Rosseau, Harris and Chakravarty made a plan to induce Discovery Research employees to "resign from Thomas Weisel enmass." *Id.* ¶ 30. Subsequently, Chakravarty provided confidential information about key Discovery Research Personnel to BNP Paribas and scheduled interviews of Discovery Research personnel with BNP Paribas, among other things. *Id.* ¶ 31. Between October 31 and November 6, 2007, seventeen Discovery Research employees gave notice of their intent to resign from TWIPL. *Id.* ¶ 33. Chakravarty was terminated for cause on November 7, 2007, after plaintiffs discovered emails describing Chakravarty's plans. *Id.* ¶ 34. On December 4, 2007, BNP Paribas announced that BNP Paribas Asia had created a twenty-seven person securities research team in India under the leadership of Chakravarty. *Id.* ¶ 49. Due to the departure of most of its licensed analysts, Discovery Research could not produce timely research reports on many of the stocks it covered. *Id.* ¶¶ 37-39, 51-54. Plaintiffs were forced to shut down Discovery Research on December 6, 2007. *Id.* ¶ 51.

3

LEGAL STANDARD

A motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Since Rule 12(b)(6) is concerned with a claim's sufficiency rather than its substantive merits, when faced with a motion to dismiss courts typically "look only at the face of the complaint." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). However, the doctrine of incorporation by reference allows a district court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

Pursuant to Federal Rule of Civil Procedure 8, a court will grant a motion to dismiss if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's complaint may be dismissed either for failing to articulate a cognizable legal theory or for not alleging sufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In *Ashcroft v. Iqbal*, ___U.S. ___, ___, 129 S.Ct. 1937 (2009), the U.S. Supreme Court held that a court can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## DISCUSSION

Plaintiffs allege that defendant Chakravarty violated his obligations under the August 2003 agreement by: (1) disclosing confidential information; (2) soliciting TWP employees; and (3) misappropriating corporate opportunities. According to plaintiffs, the obligation not to misappropriate corporate opportunities is contained in the TWP Employee Handbook, the provisions of which Chakravarty allegedly bound himself to follow when he signed the August 2003 agreement. The other two obligations are contained in the August 2003 agreement itself. Chakravarty argues that the non-solicitation provision violates California Business and Professions Code section 16600 ("section 16600") to the extent it operates as a "no hire" agreement. According to Chakravarty, the inclusion of this unlawful provision voids the entire agreement. Separately, Chakravarty argues that any violation of policies articulated in the Employee Handbook cannot give rise to a breach of contract claim.

### I. The "No Hire" Provision

As noted, the agreement contained a promise by Chakravarty that he would "not recruit, hire or attempt to recruit or hire, directly or by assisting others" TWP employees while a TWP employee and for a period of twelve months after the cessation of his employment with TWP. According to Chakravarty, this provision violates section 16600, which provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Chakravarty relies upon California cases holding that certain "no hire" contractual provisions are equivalent to covenants not to compete forbidden by section 16600. Before examining the cases upon which Chakravarty relies, it is crucial to distinguish at the outset among the differing types of contractual provisions that might implicate a section 16600 violation.

One type of provision is a classic covenant not to compete between an employer and an employee in which the employee agrees not to work for competitors for a certain amount of time after termination of the employment. These covenants are, with narrow exceptions, unlawful under section 16600. *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (Cal. 2008). A second

type of provision is one forbidding the solicitation of the employer's customers by the employee for a certain period of time after the termination of employment. Such a clause may also run afoul of section 16600 if it restrains the employee's ability to engage in her profession. *See id.* at 948. A third sort of agreement is a "no hire" provision between a business and its customer. A business that provides the services of its employees directly to a customer may seek to deter the customer from hiring the employees away. In using the third type of agreement, the employer, instead of attempting to bind an employee with a covenant not to compete, attempts to obligate customers not to hire its employees. California law equates this type of "no hire" provision with a covenant not to compete because, like a covenant not to compete, such a provision restricts the ability of the employees in question to engage in their profession. *See VL Systems, Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708, 716-17 (2007) (quoting with approval *Heyde Companies, Inc. v. Dove Healthcare LLC*, 654 N.W.2d 830, 834 (Wis. 2001) ("[I]t is inconsequential whether the restriction is termed a 'no-hire' provision between [Greenbriar's customer] Dove and Greenbriar or a 'covenant not to compete' between Greenbriar and its employees. Greenbriar is not allowed to accomplish by indirection that which it cannot accomplish directly.")). A fourth type of provision restricts an employee or former employee from soliciting the employer's other employees, i.e., approaching them for the purpose of encouraging them to leave their present employer for a competitor. Under California precedent, restrictions on the solicitation of employees are not necessarily treated in the same way as restrictions on the solicitation of customers. Specifically, in *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268 (1985), the California Court of Appeal upheld the validity of a provision prohibiting a former employee from "raiding" the company's employees. *Id.* at 274, 279-80. As discussed in greater detail below, the *Loral* court appears to have construed the prohibition on "raiding" to proscribe the solicitation of employees. Finally, a fifth potential type of provision is an agreement between an employee and an employer stipulating that the employee will not merely refrain from soliciting the employer's employees but will not *hire* those employees. Such a provision forbids the hiring of the company's employees even if they were not solicited but simply approached the former employee on their own initiative. The agreement in the instant action

6

contains both "no solicitation" and "no hire" language. While the "no solicitation" language *a la* the fourth type of provision here discussed does not violate section 16600, Chakravarty contends that the "no hire" language does.

Having distinguished between five separate types of provisions potentially implicating section 16600, it becomes apparent that most of the cases cited by Chakravarty are inapposite. The *Edwards* case, upon which Chakravarty relies, articulates the broad principles and policy considerations behind section 16600; however, the facts of that case did not involve a "no hire" or even a "no solicitation" clause pertaining to the company's employees. The challenged provisions included, rather, an eighteen-month covenant not to compete and a provision precluding the solicitation of the company's *customers* for a period of one year. 44 Cal. 4th at 948. The California Supreme Court held both provisions void. *Id.* Two other cases relied upon by Chakravarty involved covenants not to compete, not "no hire" agreements between a company and its employee. *See D'Sa v. Playhut, Inc.*, 85 Cal. App. 4th 927 (2000) (holding employer cannot lawfully make the signing of an employment agreement, which contains an unenforceable covenant not to compete, a condition of continued employment even if such agreement contains choice of law or severability provisions which would enable employer to enforce the other provisions of the employment agreement); *In re Gault So. Bay Litig*, Case No. C 07-4659, 2008 WL 4065843 (N.D. Cal. Aug. 27, 2008) (Ware, J.) (holding covenant not to compete void under California law).

Although not controlling, *VL Systems*, also relied upon by Chakravarty, is instructive. The provision at issue was of the third type discussed above: a "no hire" agreement between the an employer and its customer. 152 Cal. App. 4th at 710. As noted, the court equated such an agreement with a covenant not to compete because the agreement restricted the opportunities of the company's employees. Moreover, the agreement did so without the employees' knowledge or consent since the employees were not parties to it. *Id.* at 718.

Plaintiffs rely upon one case, *Loral*, whose facts are similar to those of the instant case. In *Loral*, defendant Moyes had been employed by Conic Corporation, a subsidiary of Loral Corporation. 174 Cal. App. 3d at 273. Upon termination of his employment with Conic, Moyes

7

signed a termination agreement. This agreement provided a severance package in exchange for certain promises by Moyes, one of which was to abjure "raiding [Conic's] employees." Moyes subsequently joined Aydin Corporation, where he breached the termination agreement by offering employment with Aydin to several key Conic employees. *Id.* at 274. The court found the "raiding" provision enforceable, writing:

> We need not and do not decide whether this noninterference contract would unreasonably and illegally restrain trade if applied to other conduct at another time. We determine only that there is no statutory problem in applying it to Moyes' conduct within a year of its execution. This restriction only slightly affects Conic employees. They are not hampered from seeking employment with Aydin nor from contacting Moyes. All they lose is the option of being contacted by him first. It does not restrain them from being employed by Aydin, contrary to defendant's argument. Equity will not enjoin a former employee from receiving and considering applications from employees of his former employer, even though the circumstances be such that he should be enjoined from soliciting their applications.

*Id.* at 279-80 (citation omitted). Thus, even though the court cited with approval a Georgia case, *Lane Co. v. Taylor*, 330 S.E.2d 112 (Ga. App. 1985), which the court described as upholding a restriction on "hiring," *see Loral*, 174 Cal. App. 3d at 278, the *Loral* court appears to have considered the "no raiding" clause to be equivalent to a "no solicitation" clause rather than a "no hire" clause. As Chakravarty points out, the case does not squarely hold that a "no hire" clause between a company and its employee is permissible.[2]

Reading *Loral* together with *VL Systems*, and considering the underlying policy concerns of section 16600 as articulated in the California Supreme Court's recent *Edwards* case and other cases, this court concludes that California courts would hold the provision at issue in this case unenforceable to the extent that it attempts to restrain a person from hiring his former colleagues after the cessation of his employment with their employer. An employer has a strong and legitimate interest in keeping current employees from raiding the employer's other employees for the benefit of an outside entity. Such a restriction "only slightly affects [TWP's] employees," who were not hampered from seeking employment with BNP Paribas Asia of their own accord before Chakravarty joined BNP Paribas Asia. *See Loral*, 174 Cal. App. 3d at 279. When, however, an employee has already made the transition from one employer to another, the same interests at issue in *VL Systems* are at play, particularly if the employee in question is a manager with hiring responsibilities. If the

8

"no hire" provision were enforceable as to Chakravarty after he left TWP's employ and began running BNP Paribas Asia's operation, BNP Paribas Asia would likely consider itself restrained from hiring any former TWP employees for a year. This would restrain the mobility of current TWP employees as they would be precluded from obtaining a position with BNP Paribas Asia because Chakravarty would be the person hiring them. A *former employee* "no hire" agreement would serve to restrain mobility in much the same way as a covenant not to compete, albeit perhaps less directly than a *customer* "no hire" provision. Accordingly, the Agreement is void under section 16600 to the extent that it purports to prohibit Chakravarty from *hiring* TWP employees following Chakravarty's transition from TWP to another company.

II. Enforceability of the Employment Agreement

Chakravarty contends that the court must find the entire agreement to be void should it find any part of it void under section 16600. If the entire agreement, including provisions pertaining to confidentiality, non-solicitation and the Employee Handbook, is unenforceable, Chakravarty would be entitled to dismissal of the claims at issue on this motion. In support of his contention that the entire agreement is void, Chakravarty relies primarily upon *Kolani v. Gluska*, 64 Cal. App. 4th 402 (1998). In that case, the court held a broad covenant not to compete void under section 16600. Plaintiffs-appellants urged the court to "save" the non-compete clause by construing it as merely barring misappropriation of confidential customer lists and trade secrets. *Id.* at 406. The language of the clause did not contain any reference to confidential customer lists or trade secrets but, rather, broadly prohibited the employee from "compet[ing] in any manner" with the employer within a 40 mile radius of Van Nuys, California. *Id.* at 405. The court declined to "rewrite the broad covenant not to compete into a narrow bar on the theft of confidential information," holding that doing so would undermine the policy of section 16600:

> Employers could insert broad, facially illegal covenants not to compete in their employment contracts. Many, perhaps most, employees would honor these clauses without consulting counsel or challenging the clause in court, thus directly undermining the statutory policy favoring competition. Employers would have no disincentive to use the broad, illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation.

9

*Id.* at 407. Chakravarty urges that the same rationale and result should apply to the instant case, arguing that this court should void the entire employment agreement.

This harsh remedy is inappropriate for several reasons. Firstly, it contradicts section 16600's plain language concerning the extent to which a contract is to be considered void. *See* Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is *to that extent* void.") (emphasis added). Secondly, nowhere does the *Kolani* court even suggest that the entire agreement must be voided. The *Kolani* court's analysis was focused only upon enforcement of section 6 of the agreement, the covenant not to compete. *See* 64 Cal. App. 4th at 406-07. Similarly, in *Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment (Shanghai) Co.*, 630 F. Supp. 2d 1084 (N.D. Cal. 2009) (Ware, J.), the other case relied upon by Chakravarty, the court held only the clause containing the non-compete provision, an intellectual property assignment clause, to be void and unenforceable. *Id.* at 1091. Thirdly, the clause at issue in *Kolani* did not contain language addressing confidential customer lists and trade secrets; plaintiffs-appellants were asking the court to completely rewrite the provision. *See Kolani*, 64 Cal. App. 4th at 405, 407. In the instant case, the non-solicitation clause contains permissible confidentiality and "no solicitation" language alongside the impermissible "no hire" language. The "no hire" language can simply be voided without requiring any rewriting of the agreement by the court.[3] Fourthly, the deterrence rationale articulated by *Kolani* makes little sense where the employer has inserted a clause that is not clearly violative of California law. As noted, the parties have not presented any case—and the court is aware of none—directly addressing the legality of a "no hire" agreement between a company and its former employee. Nullifying an entire agreement, or even an entire "no solicitation" clause, where the employer likely reasonably believed the clause to be legal, is inequitable and unwarranted in these circumstances. Finally, as plaintiffs point out, to adopt a rule holding that a court must void an entire employment agreement because it contains the sort of impermissible language present in the agreement at issue here, as Chakravarty appears to advocate, would likely often lead to absurd and inequitable results. If a hypothetical agreement provided for an advance payment of $1 million to an

10

employee, to be paid back if the employee left the company, it would make no sense to invalidate the provision requiring her to pay the money back merely because the agreement also contains an unlawful covenant not to compete. Similarly, it would be unfair to invalidate a provision whereby an employer promised to pay an employee a guaranteed bonus because the employee succeeds on a section 16600 challenge to another part of the agreement.

For all of these reasons, the court declines Chakravarty's invitation to invalidate the entire employment agreement or even the entire non-solicitation provision. To the extent the non-solicitation provision restricts Chakravarty's ability to hire TWP employees after Chakravarty made the transition to another company, it is void. Accordingly, plaintiffs can state a claim for breach of contract based upon Chakravarty's alleged violation of the provisions concerning confidentiality and non-solicitation strictly defined.[4] Whether plaintiffs can also demonstrate a breach of contract based on the alleged violation of policies set forth in the Employee Handbook must be discussed separately.

III. The Employee Handbook

In addition to allegedly violating the confidentiality and solicitation provisions spelled out in the August 2003 agreement, Chakravarty also allegedly violated TWP's policy forbidding employees from misappropriating corporate business opportunities. According to the operative complaint, Section 11.A of the "Code of Conduct and Ethics" found in the Employee Handbook forbids such conduct. SAC ¶ 22. Plaintiffs allege Chakravarty contractually bound himself to follow this provision when he signed the August 2003 agreement because the agreement includes the following statement: "You agree to abide by the terms and practices set forth the [sic] TWP Employee Handbook, including but not limited to all employment policies, standards of conduct, employment-at-will, confidentiality, non-solicitation, and arbitration by signing below . . . ." Agreement at 2.

Plaintiffs are incorrect. The Agreement expressly disclaims any understanding of the Employee Handbook as a contract: "I understand that the Employee Handbook is not intended to in any way create a contract of employment, either express or implied." *Id.* at 1. Moreover, the

11

agreement does not evince an intention to contractually bind the employee to the provisions of the Employee Handbook, because the agreement anticipates that the employee will sign the agreement *before he even reads* the Employee Handbook. *See id.* ("I agree to read the Handbook . . . ."). The court is unaware of any principle of contract law that would allow an employer to bind an employee to the terms of an agreement he had not read and had not yet had an opportunity to read. The court's conclusion that the Employee Handbook was not intended to be binding upon the parties as a contract is further bolstered by the August 2003 agreement's statement that "any rules, policies and benefits described in the Employee Handbook may be modified by TWP from time to time . . . ." *Id.* Indeed, the Employee Handbook states on its first page: "The handbook itself is not an agreement or contract of employment or a promise of treatment in any particular manner in any given situation. . . . TWP has reserved the right to revise this Handbook at any time at its sole discretion." Calabria Dec., Exh. B at 1. All of this unambiguous language indicates that the provisions of the Employee Handbook were intended to serve to put employees on notice of their employer's expectations, not to create a binding contract giving rise to monetary damages. Even if the agreement were ambiguous on this point—and it is not—the court would construe the agreement and Employee Handbook against their drafter to find that the provisions of the Employee Handbook are not binding upon Chakravarty as a separate contract. *See* Cal. Civ. Code § 1654; *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 406 (9th Cir. 1992); *Gaines v. Sargent Fletcher, Inc. Group Life Ins. Plan*, 329 F. Supp. 2d 1198, 1216 (C.D. Cal. 2004). Whether Chakravarty breached his fiduciary duty or committed any business tort by misappropriating business opportunities has yet to be determined. *See, e.g.*, *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 352-53 (Cal. 1966) (holding corporate officer who, while still employed, solicited other employees to join him in leaving to work for a competitor to have breached his fiduciary duty to his current employer). In any event, plaintiffs cannot maintain a breach of contract claim for this alleged conduct based upon the provisions of the Employee Handbook.

///

///

12

CONCLUSION

For the foregoing reasons, defendant Chakravarty's motion to dismiss claims three and four of the second amended complaint is DENIED. Plaintiffs' third and four causes of action state claims insofar as they rely upon the confidentiality and non-solicitation provisions of the August 2003 agreement and to the extent discussed above.

IT IS SO ORDERED.

Dated: February 9, 2010

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

13

**ENDNOTES**

1.     Counsel for Chakravarty filed this copy of the agreement with the motion to dismiss. The contents of this document are alleged in the operative complaint, and no party has questioned its authenticity; therefore, the court may consider it. *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). The same is true for the copy of the Employee Handbook provided as Exhibit B to the Calabria Declaration.

2.     Plaintiffs take pains to point out that Chakravarty allegedly violated his contractual duties while still employed by TWP. Chakravarty is correct that the cases discussing section 16600 analyze the contractual language itself to determine whether any part of the language is void. *See, e.g.*, *Edwards*, 44 Cal. 4th at 948. The facts of the alleged breach are not directly relevant to the prior question of the contract's enforceability.

3.     For this reason, Chakravarty errs when he asserts: "California courts have already refused to safeguard an employer's 'confidential information' through an employment agreement that otherwise violates section 16600. As explained in *Kolani* . . . California courts have 'saved' non-violative provisions of a contract that runs afoul of section 16600 only when the parties made a mistake or when section 16601 would apply." Docket No. 169 (Def.'s Mot.) at 6. In fact, the *Kolani* court discussed the appropriateness of writing completely new language to replace an unlawful covenant not to compete, not that of striking provisions that were already in the agreement. *See* 64 Cal. App. 4th at 407.

4.     Since Chakravarty attacks the fourth claim of the complaint, breach of the implied covenant of good faith and fair dealing, solely on the basis that no contract exits, the instant motion will be denied as to both challenged claims.