1   RAGESH K. TANGRI (State Bar No. 159477)        JOSEPH E. ADDIEGO III (State Bar No. 169522)
    JOHANNA CALABRIA (State Bar No. 226222)        DAVIS WRIGHT TREMAINE LLP
2   DURIE TANGRI LLP                               505 Montgomery Street, Suite 800
    217 Leidesdorff Street                         San Francisco, California  94111-6533
3   San Francisco, CA  94111                       Telephone:    (415) 276-6500
    Telephone:    (415) 362-6666                    Facsimile:    (415) 276-6599
4   Facsimile:    (415) 236-6300                    joeaddiego@dwt.com
    rtangri@durietangri.com
5   jcalabria@durietangri.com                      STEVEN T. COTTREAU (*admitted pro hac vice*)
                                                   CLIFFORD CHANCE US LLP
6   Attorneys for Defendant                        2001 K Street NW
    PRAVEEN CHAKRAVARTY                             Washington, D.C.  20006
7                                                  Telephone:    (202) 912-5000
                                                   Facsimile:    (202) 912-6000
8                                                  steve.cottreau@cliffordchance.com

9                                                  Attorneys for Defendants
                                                   BNP PARIBAS and BNP PARIBAS
10                                                 SECURITIES (ASIA) LIMITED

11              IN THE UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                     SAN FRANCISCO DIVISION

| | |
|---|---|
| 14   THOMAS WEISEL PARTNERS LLC, a Delaware limited liability company, and THOMAS WEISEL INTERNATIONAL PRIVATE LIMITED, an Indian company <br><br> Plaintiffs, <br><br> v. <br><br> BNP PARIBAS, a French corporation, BNP PARIBAS SECURITIES (ASIA) LIMITED, a Hong Kong company, and PRAVEEN CHAKRAVARTY, an individual, <br><br> Defendants. | Case No. 3:07-cv-06198 MHP <br><br> **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON (1) PLAINTIFFS' FIRST CLAIM FOR VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030 AND (2) SECOND CLAIM FOR TRADE SECRET MISAPPROPRIATION** <br><br> Date:    June 14, 2010 <br> Time:    2:00 p.m. <br> Ctrm:    15, 18th Floor <br> Judge:   Honorable Marilyn Hall Patel <br><br> Trial Date:  August 17, 2010 |

**TABLE OF CONTENTS**

PAGE NO.

NOTICE OF MOTION AND MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION ......................................................................................................1

II.     STATEMENT OF FACTS .........................................................................................2

        A.      Plaintiffs Authorized Chakravarty To Use Their Computers. ..............................2

        B.      Chakravarty Did Not Access Plaintiffs' Computers Or Computer Systems
                Following His Resignation And Plaintiffs Do Not Allege That He Did. ...........3

        C.      The Alleged Trade Secrets Remaining In This Case Either Are Publicly Available
                Or Is Information That Did Not Come From TWP Or TWIPL. ..........................4

                1.      Names of the research analysts. ..............................................................4

                2.      TWIPL analysts and associates' biographical information and sector
                        specialization. .........................................................................................5

                3.      2007 compensation information. .............................................................6

                4.      Terms of the TWIPL office lease in Mumbai. ........................................7

III.    ARGUMENT ..............................................................................................................8

        A.      Plaintiffs' CFAA Claim Fails Because Chakravarty Had Authorization To Access
                Plaintiffs' Computers. .........................................................................................8

                1.      Plaintiffs' CFAA claim requires Chakravarty to have acted without
                        authorization. ..........................................................................................8

                2.      Plaintiffs' CFAA claim fails because Plaintiffs rely on a rejected legal
                        theory. .....................................................................................................9

                3.      The Court should dismiss this case after dismissing Plaintiffs' CFAA
                        claim. .....................................................................................................10

        B.      Plaintiffs' Trade Secrets Claim Fails As A Matter Of Law. .............................11

                1.      Identifying the analysts is not a trade secret. .......................................12

                2.      The TWIPL employees' biographical information is not a trade secret. ...........13

                3.      The TWIPL employees' base salaries and expected bonuses is not a trade
                        secret. ....................................................................................................14

                4.      The TWIPL office lease is not a trade secret. ......................................17

IV.     CONCLUSION .........................................................................................................17

1

**TABLE OF AUTHORITIES**

2

**PAGE NO.**

3

<u>Cases</u>

4

*American Mortgage Network v. LoanCity.com*,
  No. D044550, 2006 WL 3199291 (Cal. App. Nov. 7, 2006)................................................14

5

*American Paper & Packaging Products, Inc. v. Kirgan*,
  183 Cal.App.3d 1318 (1986) ..........................................................................................14

6

7

*Andersen v. Cate*,
  No. C 09-1055 MHP (pr), 2009 WL 1330809 (N.D.Cal. May 13, 2009) ...........................11

8

*Carmona v. McGrath*,
  No. C 05-2219 MHP (pr), 2006 WL 2168692 (N.D.Cal. July 31, 2006) ...........................11

9

10

*Cytodyn, Inc. v. Amerimmune Pharmaceuticals, Inc.*,
  160 Cal.App.4th 288 (2008) ............................................................................................11

11

*DVD Copy Control Ass'n, Inc. v. Bunner*,
  31 Cal.4th 864 (2003) .......................................................................................................14

12

13

*Faysound Ltd. v. United Coconut Chemicals, Inc.*,
  878 F.2d 290 (9th Cir. 1989) ...........................................................................................10

14

*LVRC Holdings LLC v. Brekka*
  581 F.3d 1127 (9th Cir. 2009) .......................................................................................2, 9

15

16

*Metro Traffic Control, Inc. v. Shadow Traffic Network*,
  22 Cal.App.4th 853 (1994) ...............................................................................................13

17

*Montalet v. Murray*,
  8 U.S. 46 (1807)................................................................................................................10

18

19

*Naulty v. Greenpoint Mortgage Funding, Inc*.,
  Nos. C 09-1542 MHP, C 09-1545 MHP, 2009 WL 2870620 (N.D.Cal. Sept. 3, 2009) ....................11

20

*Rigging Internat. Maint. Co. v. Gwin*,
  128 Cal.App.3d 594 (1982) ..............................................................................................13

21

22

*United Mine Workers of America v. Gibbs*
  383 U.S. 715, 726 (1966)..................................................................................................11

23

*United States v. Nosal*
  No. C 08-0237 MHP, 2010 WL 934257 (N.D.Cal. Jan. 6, 2010) (Patel, J.) ................2, 9, 10

24

25

26

27

28

DEFS.' MOT. FOR PARTIAL SUMM. J. ON PLS.' FIRST AND SECOND CLAIMS
Case No. 3:07-cv-06198 MHP

TABLE OF AUTHORITIES (CON'T)

PAGE NO.

**Statutes**

18 U.S.C. § 1030..............................................................................................................1, 8

28 U.S.C. § 1332..................................................................................................................10

28 U.S.C. § 1367...........................................................................................................10, 11

Cal. Civ. Code § 3426................................................................................................12, 13, 14

Cal. Labor Code. § 232.........................................................................................................15

**Other Authorities**

RESTATEMENT (FIRST) OF TORTS § 757 ..............................................................................14

**Rules**

Fed. R. Civ. P. 56...................................................................................................................8

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 14, 2010, at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 15 of the above-captioned Court located at 450 Golden Gate Avenue, San Francisco, California, Defendants BNP Paribas, BNP Paribas Securities (Asia) Limited, and Praveen Chakravarty (collectively, "Defendants") will, and hereby do, move for partial summary judgment on Plaintiff Thomas Weisel Partners LLC and Thomas Weisel International Private Limited's (collectively, "Plaintiffs") First Claim for Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") and Second Claim for Trade Secret Misappropriation.

This motion is brought pursuant to Federal Rule of Civil Procedure 56 and is based on the grounds that Plaintiffs cannot establish all of the elements of their CFAA claim or their trade secret misappropriation claim, and therefore Defendants are entitled to judgment as a matter of law.

This motion for partial summary judgment is based on this notice, the accompanying memorandum of points and authorities, the pleadings and other papers on file in this action, any matters of which the Court may or must take notice, and any and all documentary evidence and oral argument as may be presented in connection with the hearing on this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants BNP Paribas and BNP Paribas Securities (Asia) Limited (together, "BNP Parties") and Praveen Chakravarty (together, "Defendants") respectfully submit this memorandum of points and authorities in support of their Motion for Partial Summary Judgment on Plaintiffs Thomas Weisel Partners LLC ("TWP") and Thomas Weisel International Private Limited's ("TWIPL") (together, "Plaintiffs") first and second claims.

## I.    INTRODUCTION

Plaintiffs' complaint attempts to throw in every possible claim against the Defendants.  At least two of those claims simply have no merit on the undisputed factual record and should be removed from this case at the summary judgment stage.

*First*, Plaintiffs' cause of action under the federal Computer Fraud and Abuse Act ("CFAA")

suffers from a fundamental defect.  Plaintiffs allege Praveen Chakravarty accessed Plaintiffs' computers "without authorization" or "exceed[ing] authorized access."  But the Ninth Circuit's decision in *LVRC Holdings LLC v. Brekka* and this Court's recent decision in *United States v. Nosal* hold that an employee like Chakravarty does not violate the CFAA when he accesses data his employer permitted him to access during the course of employment.  That is all that Plaintiffs allege here and all that the facts adduced during discovery indicate.  For this reason, this Court should dismiss the CFAA claim.

*Second*, Plaintiffs allege misappropriation of trade secrets, but none of the information that remains at issue is a trade secret.  Plaintiffs previously alleged that proprietary business plans and processes—the general subject of many trade secrets cases—were at issue in this case.  Plaintiffs, however, have abandoned those business process allegations.  All that remains are personal facts related to employees of TWIPL and facts regarding TWIPL's office lease.  Most of those facts were disclosed publicly and therefore are not confidential.  The remainder simply does not involve trade secrets that were misappropriated.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs Authorized Chakravarty To Use Their Computers.

In August 2003, Chakravarty began his employment with TWP LLC in the firm's San Francisco office.[1]  In October 2005, Chakravarty moved to Mumbai, India to work with TWIPL's Discovery Research business.[2]  Upon Chakravarty's arrival in India, Plaintiffs "assigned [Chakravarty] a laptop that he used for his professional activities,"[3] which he accessed using a login account Plaintiffs established for him.[4]  Plaintiffs also intentionally created a "seamless" intranet connection between TWP LLC's and

---

[1] Declaration of Johanna Calabria in Support of Defendants' Motion for Partial Summary Judgment on Plaintiffs' (1) First Claim for Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and (2) Second Claim for Trade Secret Misappropriation ("Calabria Decl.") Ex. 1 [Chakravarty Aug. 7, 2003 Employment Offer Letter].

[2] Calabria Decl. Ex. 2 [Sept. 29, 2005 Int'l Assignment Letter].

[3] Calabria Decl. Ex. 3 [Pl. Thomas Weisel Int'l Pvt. Ltd's Supplemental Resp. To Def. BNP Paribas Sec. (Asia) Ltd.'s 1st Set of Interrogs.] No. 1 at 3:17-18.

[4] *Id*. at 4:13-19.

DEFS.' MOT. FOR PARTIAL SUMM. J. ON PLS.' FIRST AND SECOND CLAIMS
Case No. 3:07-cv-06198 MHP

TWIPL's networks to give Mumbai-based employees, like Chakravarty, "access to the U.S. side."[5] Thus, Plaintiffs provided Chakravarty access to both TWP LLC's and TWIPL's computer networks through his TWP-issued work laptop.[6]

Plaintiffs further gave Chakravarty access to work files—including those that are the subject of Plaintiffs' CFAA claim. Plaintiffs' witness has asserted that "[b]y virtue of his position as Director of Discovery Research, Chakravarty had access to most if not all confidential information about Discovery Research. Using the shared TWP/TWIPL computer system, Chakravarty received and/or reviewed documents showing employee compensation levels, current and projected profit and loss statements, and other financial planning documents."[7]

**B.  Chakravarty Did Not Access Plaintiffs' Computers Or Computer Systems Following His Resignation And Plaintiffs Do Not Allege That He Did.**

"From October 2005 until his employment was terminated in November 2007, Chakravarty had access to both TWP LLC and TWIPL's computers."[8] It was only on or about the same day that Chakravarty departed from his job—but not before then—that Plaintiffs also "disabled Chakravarty's access to the TWP computer system."[9] Chakravarty did not access Plaintiffs' computers following his termination[10] and Plaintiffs also do not allege that Chakravarty inappropriately accessed data following

---

[5] Calabria Decl. Ex. 4 [Mark Fisher (Nov. 11, 2009) Dep. Tr.] at 194:15-195:7 ("Q.  Do you know whether employees in Mumbai had access to the intranet?  A.  Yes, they did.  Q.  How do you know that? A.  Because when they were setting up the office, they wanted everything to be as seamless as possible back to the U.S.")].

[6] Calabria Decl. Ex. 3 at 3:16-24.  *See also* Calabria Decl. Ex. 5 [Karanveer Dhillon (Oct. 12, 2009) Dep. Tr.] at 250:10-23 (Chakravarty's access to Thomas Weisel computers was through his work-issued laptop which allowed him access to the computer network of Thomas Weisel Partners).

[7] Calabria Decl. Ex. 6 [Decl. of Karanveer Dhillon in Support of Pls.' Consolidated Opp'n to Defs.' Mot. to Dismiss the 1st Am. Compl. (Docket No. 54)] ¶ 16.

[8] Calabria Decl. Ex. 3 at 3:16-17.

[9] Calabria Decl. Ex. 7 [Pls.' Consolidated Resp. to Def. Praveen Chakravarty's 3d Set of Interrogs.] No. 24 at 6:18-26.

[10] Declaration of Praveen Chakravarty in Support of Defendants' Motion for Partial Summary Judgment on (1) Plaintiffs' First Claim for Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 and (2) Second Claim for Trade Secret Misappropriation ("Chakravarty Decl.") ¶ 2.

his termination.[11]

Plaintiffs do not allege that the BNP Parties ever accessed any of Plaintiffs' computers.[12]

## C. The Alleged Trade Secrets Remaining In This Case Either Are Publicly Available Or Is Information That Did Not Come From TWP Or TWIPL.

Plaintiffs' Amended Trade Secrets Designation essentially identifies four trade secrets at issue in this case:

(1) The names of the "most qualified and skilled research analysts forming the core group of research analysts at Discovery Research";

(2) The skill levels, capabilities and expertise" of the TWIPL analyst and associates, (specifically, their educational background, number of years of work experience and sector specialization *i.e.*, the industry sector(s) on which the analysts published research);

(3) TWIPL analyst and associates' compensation information (specifically, 2007 base salary, 2007 expected bonus, and 2007 total compensation); and

(4) The terms of the TWIPL office lease in Mumbai (specifically the duration of the lease and the per square foot cost).[13]

### 1. Names of the research analysts.

During the time frame of the analyst resignations, TWIPL employed 14 analysts.[14] Plaintiffs disclosed the names of its analysts on the Discovery Research website which was publicly accessible.[15] Chakravarty initially sent Pierre Rousseau a link to the Discovery Research website and encouraged him to view all of the analysts' profiles which were available at that site.[16] Plaintiffs also disclosed the names

[11] 2d Am. Compl. (Docket. No. 159) at ¶¶ 55-60; *see also* Calabria Decl. Ex. 3 at 6:24-7:3 (identifying only documents sent by Chakravarty to the BNP Parties dated before November 6, 2007 as supporting Plaintiffs' CFAA allegations).

[12] 2d Am. Compl. at ¶¶ 55-60.

[13] Calabria Decl. Ex. 8 [Amended Trade Secret Designation dated April 27, 2010] ("TSD").

[14] Calabria Decl. Ex. 9 [Discovery Research "Analyst Bios" website printout (Oct. 31, 2007)].

[15] *Id*; see also Calabria Decl. Ex. 10 [Pl. Thomas Weisel Int'l Pvt. Ltd.'s 2d Supplemental Resp. to Def. BNP Paribas Sec. (Asia) Ltd.'s 2d Set of Interrogs.] No. 4 at 4:17-20.

[16] Calabria Decl. Ex. 11 [excerpts of Transcript of Telephone Conversation between Pierre Rousseau and Praveen Chakravarty previously filed with the Court by Plaintiffs] at 14:18-23.

of its analysts in its published stock research reports which Plaintiffs made available to all Discovery

Research clients[17] and in marketing materials which Plaintiffs distributed to prospective clients of

Discovery Research.[18]  Of the 14 analysts employed by TWIPL in October 2007, Chakravarty identified

10 of them to the BNP Parties, offered to identify another, and later recommended that the BNP Parties

hire an additional analyst.[19]  Thus, Chakravarty identified or offered to identify all but 2 analysts to the

BNP Parties.  Among those not identified was Dr. Bino Pathiparampil, who was considered by Plaintiffs

to be an experienced and valuable analyst at TWIPL.

 2. **TWIPL analysts and associates' biographical information and sector specialization.**

Plaintiffs marketed the capabilities of Discovery Research to its clients.  As part of that marketing

effort, Plaintiffs distributed a marketing brochure to its clients and prospective clients which contained

the biographical information of each of the analysts, including their educational background and work

experience.[20]  This information was also available on the Internet at Discovery Research's website.[21]

Plaintiffs did not ask or require recipients of this marketing brochure to keep the brochure or its contents

---

[17] Calabria Decl. Ex. 12 ["Superior Offshore International, Inc.—DEEP Acquires Ocean Flow—A Strategic Fit" Discovery Research Report] (by analyst Amit Shah) and Calabria Decl. Ex. 13 ["Discovery Daily" Discovery Research Report] (naming 11 Discovery Research analysts).

[18] Calabria Decl. Ex. 14 ["Investing in New Territory" brochure]; Calabria Decl. Ex. 15 ["About Discovery Research" brochure]; Calabria Decl. Ex. 10 at 4:17-20.

[19] Calabria Decl. Ex. 16 [Email from Praveen Chakravarty to Jon Harris (Nov. 1, 2007)]; Calabria Decl. Ex. 17 [Decl. Of Praveen Chakravarty in Supp. of His Opp'n to Pls.' Mot. for Partial Summ. J. on the 8th Cause of Action for Breach of Fiduciary Duty (Docket No. 191)] at ¶ 36.

[20] Calabria Decl. Ex. 14.

[21] Calabria Decl. Ex. 18 [Paul Slivon (Sept. 29, 2009) Dep. Tr.] at 218:3-5 (employee names disclosed on Discovery Research website are not confidential); Calabria Decl. Ex. 19 [Thomas Weisel (Oct. 21, 2009) Dep. Tr.] at 253:9-25 (regarding competitive advantage of keeping educational background confidential: "I think it's irrelevant.")

confidential.[22]  To the contrary, these marketing materials were distributed by Plaintiffs as widely as possible in order to market and promote the qualifications and experience of the analysts.[23]

The same marketing brochure and website which contained the Discovery Research analysts' biographical information also described each analyst's sector specialization.  Moreover, an analyst's sector specialization was clearly identified in every research report which was published and distributed to Plaintiffs' clients.  Likewise, the analysts joined public earnings calls that revealed their sector specifications.  Thus, the sector specialization of each of the analysts was publicly available information.[24]  And the sector specialization of the associates was based upon the analyst for whom the associate worked.[25]

### 3.    2007 compensation information.

Plaintiffs claim that Chakravarty disclosed the compensation information of the departing TWIPL employees by providing the BNP Parties with three spreadsheets containing this information.[26]  These spreadsheets allegedly consisted of the analyst and associates' 2007 base salaries, 2007 expected bonuses, and 2007 total compensation.[27]  However, the information in these spreadsheets does not match

---

[22] Calabria Decl. Ex. 19 [Weisel Dep. Tr.] at 274:14-20 ("Q. Do you know whether the recipients of any Discovery Research marketing materials were bound by a confidentiality agreement with TWP or any of its affiliates?  Thomas Weisel: I would doubt it. Q .Why would you doubt it?  Thomas Weisel: Because we didn't ask for it."); Calabria Decl. Ex. 20 [Mike McCarthy (Nov. 9, 2009) Dep. Tr.] at 58:2-18 (clients were not asked to sign a non-disclosure agreement before receiving Discovery Research's marketing materials).

[23] Calabria Decl. Ex. 19 [Weisel Dep. Tr.] at 259:7-260:2; Calabria Decl. Ex. 21 [Keith Gay (Oct. 29, 2009) Dep. Tr.] at 263:12-264:8; Calabria Decl. Ex. 22 [Stephen Buell (Sept. 22, 2009) Dep. Tr.] at 157:3-14; Calabria Decl. Ex. 23 [email from Michi Sethavarangura to Praveen Chakravarty (July 24, 2007)] (regarding printing 250 Discovery Research brochures to distribute at events); Calabria Decl. Ex. 24 [email from Alex Gorski to Josh Wilson and KV Dhillon (Feb. 22, 2007)] (allowing employee to forward Discovery Research marketing materials "to whomever you like").

[24] Calabria Decl. Ex. 19 [Weisel Dep. Tr.] at 250:20-25 ("Q. In November 2007, were research analysts who were publishing analysts sector specializations confidential?  A.  Not to my knowledge.  Q.  You believe they were public?  A.  Uh-huh.").

[25] Calabria Decl. Ex. 25 [India Research – Team Structure].

[26] Calabria Decl. Ex. 26 [email from Praveen Chakravarty to Jon Harris (Oct. 15, 2007)]; Calabria Decl. Ex. 27 [email from Praveen Chakravarty to Jon Harris (Oct. 17, 2007)]; Calabria Decl. Ex. 28 [email from Praveen Chakravarty to Jon Harris (Oct. 26, 2007)].

[27] TSD ¶ 1.

the contemporaneous compensation information maintained by Plaintiffs for the employees in question.[28]
Plaintiffs' own computer forensics expert could not determine that Chakravarty had derived that
information from TWP or TWIPL.[29]

In fact, Chakravarty obtained compensation information from the analysts, who instructed
Chakravarty to provide the BNP Parties with their 2007 salary information as well as the 2007 salary
information of the associates working underneath them.[30]  The analysts also instructed Chakravarty to
provide the BNP Parties with inflated 2007 expected bonus information for themselves and for their
associates in order to secure a better negotiating position with the BNP Parties.[31]  The salary numbers
Chakravarty provided to the BNP Parties were inaccurate, and the expected bonus and consequently,
total compensation numbers he provided were grossly inflated.  Importantly, the expected bonus and
expected compensation numbers provided to the BNP Parties as part of the employment negotiation did
not match the internal numbers possessed and developed by Plaintiffs.

### 4.   Terms of the TWIPL office lease in Mumbai.

The details of the TWIPL office lease in Mumbai, as well as the lease itself, are publicly available
through Plaintiffs' own governmental filings.  TWP filed the lease itself as part of its Form S-1
Registration Statement in January of 2006 and also disclosed in the body of the document the square
footage and term of the TWIPL Mumbai lease.[32]  Additionally, commercial lease agreements in Mumbai
such as the one in question were required to be registered with the state government's sub-registrar's
office and the lease agreements are submitted to the department.  As such, these documents were
available readily to the general public.  Chakravarty Decl. ¶ 4.  Chakravarty was aware that TWP and
TWIPL filed the lease with the relevant governmental authorities and that the lease itself was available to
the public when he provided information about the lease to the BNP Parties.  Chakravarty Decl. ¶ 5.

---

[28] *Compare* Calabria Decl. Exs. 26, 27 and 28 *to* Calabria Decl. Ex. 29 [email from Hans Buehlman to
Paul Slivon (Oct. 4, 2007)] at TWPL00144765-66  and 771-72.

[29] Calabria Decl. Ex. 30 [Edward L. Goings (April 22, 2010) Dep. Tr.] at 33:18-34:24.

[30] Calabria Decl. Ex. 17 at ¶ 30.

[31] *Id.* at ¶ 31.

[32] Defendants' Request for Judicial Notice [attaching Thomas Weisel Partners Group, Inc. Form S-1/A,
filed with the Securities and Exchange Commission on January 17, 2006], filed herewith.

## III.   ARGUMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants are entitled to summary judgment on two of Plaintiffs' claims because "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A.   Plaintiffs' CFAA Claim Fails Because Chakravarty Had Authorization To Access Plaintiffs' Computers.

Plaintiffs' CFAA claim requires Chakravarty to have accessed Plaintiffs' computers "without authorization" or for his access to have "exceed[ed] authorized access." 18 U.S.C. § 1030(a).  The undisputed evidence, however, shows that Chakravarty had authorization to access the data he allegedly viewed.   As a result, Plaintiffs' claim fails as a matter of law.

### 1.   Plaintiffs' CFAA claim requires Chakravarty to have acted without authorization.

Plaintiffs allege that Defendants violated the CFAA because "Chakravarty, or others at his direction, intentionally accessed TWP's computers to obtain Confidential Information in order to provide it to the BNPP Defendants." 2d Am. Compl. ¶ 56.  Plaintiffs alleged this conduct violates CFAA sections 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(B).  2d Am. Compl. ¶ 60.

Each of the CFAA subsections upon which Plaintiffs rely require Chakravarty to have acted "without authorization" or in excess of authorized access:

- 1030(a)(2)(C): "intentionally accesses a computer *without authorization or exceeds authorized access*, and thereby obtains … information from any protected computer if the conduct involved an interstate or foreign communication";

- 1030(a)(4): "knowingly and with intent to defraud, accesses a protected computer *without authorization, or exceeds authorized access*, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period";

- 1030(a)(5)(B): "intentionally accesses a protected computer *without authorization*, and as a result of such conduct, recklessly cause damage."

18 U.S.C. § 1030 (a)(2)(C), (a)(4), (a)(5)(B) (emphasis added).

2.      **Plaintiffs' CFAA claim fails because Plaintiffs rely on a rejected legal theory.**

Plaintiffs do not allege that Chakravarty accessed any computer or data that he was not authorized to use during the normal course of his employment.  Instead, Plaintiffs attempt to satisfy the "without authorization" requirement by alleging that "Chakravarty or others at his direction … were acting without authorization or in excess of their authorization because they were acting as agents of the BNPP Defendants in **violation of their confidentiality agreements with TWP and their fiduciary duty** of loyalty to TWP."  2d Am. Compl. ¶ 58.  That theory has been rejected squarely by the Ninth Circuit and this Court.

In *LVRC Holdings, LLC v. Brekka*, the defendant employee e-mailed company documents to his and his wife's personal e-mail accounts while still plaintiffs' employee.  581 F.3d 1127, 1130 (9th Cir. 2009).  The defendant later used this information collected from plaintiffs' computers to build a competing business.  *Id.* at 1134.  The Ninth Circuit affirmed the dismissal of the CFAA claim.  It explained that "an employer gives an employee 'authorization' to access a company computer when the employer gives the employee permission to use it."  *Id.* at 1133.

> When an employer authorizes an employee to use a company computer subject to certain limitations, the **employee remains authorized to use the computer even if the employee violates those limitations**.  It is the employer's decision to allow or to terminate an employee's authorization to access a computer that determines whether the employee is with or "without authorization."

*Id.* at 1133 (emphasis added).  The Ninth Circuit emphasized that "[n]othing in the CFAA suggests that a defendant's liability for accessing a computer without authorization turns on whether the defendant breached a state law duty of loyalty to an employer."  *Id.* at 1135.  It explained that "[n]o language in the CFAA supports [plaintiff's] argument that authorization to use a computer ceases when an employee resolves to use the computer contrary to the employer's interest."  *Id.* at 1133.

In the wake of *Brekka*, this Court interpreted the Ninth Circuit's ruling in *United States v. Nosal*, No. C 08-0237 MHP, 2010 WL 934257 (N.D. Cal. Jan. 6, 2010).  In *Nosal*, this Court explained that "*Brekka* holds explicitly that an employee's intent in accessing a computer … is irrelevant for determining whether the employee acted 'without authorization' and holds implicitly that the same rule applies to the 'exceeds authorized access' prong of section 1030(a)(4)."  *Id.* at *6.  This Court then held

that the company's explicit policies restricting use of information were irrelevant to the analysis: "There is simply no way to read that definition [of "exceeds authorized access"][33] to incorporate corporate policies governing the use of information unless the word alter is interpreted to mean misappropriate. Such an interpretation would defy the plain meaning of the word alter, as well as common sense." *Id*. at *7.

In light of *Brekka* and *Nosal*, Plaintiffs' theory of CFAA liability is a nonstarter. Plaintiffs assert that Chakravarty was acting without authorization because he was acting contrary to Plaintiffs' interests and policies in accessing computer information. That, however, is precisely the same theory of liability explicitly rejected by *Brekka* and *Nosal*. As a result, Plaintiffs' CFAA claim against all of the Defendants must be dismissed.[34]

### 3. The Court should dismiss this case after dismissing Plaintiffs' CFAA claim.

Original subject matter jurisdiction in this case rested solely upon Plaintiffs' CFAA claim.[35] Because that claim is patently without merit, this Court should decline to exercise supplemental jurisdiction over the remaining claims in this case. A "district court[] may decline to exercise supplemental jurisdiction over a [state law] claim … if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

---

[33] The CFAA defines "exceeds authorized access" as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030 (e)(6).

[34] Even if Plaintiffs' CFAA claims were not nonstarters, Plaintiffs lack a valid claim against the BNP Parties for two other independent reasons: no evidence indicates that the BNP Parties ever accessed any of Plaintiffs' computers and no evidence indicates that the BNP Parties ever directed Chakravarty to access any computer or data of the Plaintiffs.

[35] Plaintiffs also half-heartedly assert in their complaint that diversity jurisdiction also exists. *See* 2d Am. Compl. at ¶ 16 ("Jurisdiction in this Court over the non-federal claims is proper under 28 U.S.C. Section 1332(a) ... **and/or** 28 U.S.C. Section 1367(a)" (emphasis added)). That is plainly wrong because TWIPL and the BNP Parties are alien corporations. Chakravarty is also an alien. Thus, diversity jurisdiction under 28 U.S.C. § 1332(a) does not apply: "the courts of the United States have *no jurisdiction over cases between aliens*." *Faysound Ltd. v. United Coconut Chemicals, Inc*., 878 F.2d 290, 294 (9th Cir. 1989) (*quoting Montalet v. Murray*, 8 U.S. 46, 47 (1807)) (holding presence of foreign plaintiff and foreign defendants defeats diversity).

1    Consistent with *Gibbs*, in past cases this Court has appropriately declined to retain jurisdiction

2 over state law claims after dismissing all federal claims.  *See Carmona v. McGrath*, No. C 05-2219 MHP

3 (pr), 2006 WL 2168692, at *9 (N.D. Cal. July 31, 2006) (relying on 28 U.S.C. § 1367(c)(3) to dismiss all

4 state law claims after dismissing plaintiffs' Eighth Amendment claim); *see also Naulty v. Greenpoint*

5 *Mortgage Funding, Inc*., Nos. C 09-1542 MHP, C 09-1545 MHP, 2009 WL 2870620, at *6 (N.D. Cal.

6 Sept. 3, 2009) ("declin[ing] to exercise supplemental jurisdiction over the state law claims … now that

7 the federal question claims have been dismissed"); *Andersen v. Cate*, No. C 09-1055 MHP (pr), 2009

8 WL 1330809, at *3 (N.D. Cal. May 13, 2009) (remanding to state court after dismissing 42 U.S.C. §

9 1983 claims).

10    Indeed, there are good reasons of comity to decline to continue to exercise federal jurisdiction in

11 this case.  Plaintiffs' state law claims involve many questions of first impression that have not been

12 addressed by California courts.  For example, they have asserted trade secrets claims that raise unique

13 questions of state legal protections accorded to workforce information.  *See, e.g.,* Section III.B (below).

14 Likewise, Plaintiffs' claims implicate the reach of California law over foreign conduct and the

15 obligations of a potential employer in the context of hiring employees from a business it believed to be

16 shutting down.  As the Supreme Court instructed in *United Mine Workers of America v. Gibbs*,

17 "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice

18 between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the

19 federal claims are dismissed before trial … the state claims should be dismissed as well."  383 U.S. 715,

20 726 (1966).  For this reason, this Court should decline to exercise supplemental jurisdiction over

21 Plaintiffs' state law claims.

22    **B.    Plaintiffs' Trade Secrets Claim Fails As A Matter Of Law.**

23    Plaintiffs fail to prove the existence or misappropriation of any trade secret in this case.  "[A]

24 *prima facie* claim for misappropriation of trade secrets requires the plaintiff to demonstrate that (1) the

25 plaintiff owned a trade secret; (2) the defendant acquired, disclosed, or used the plaintiff's trade secret

26 through improper means; and (3) the defendant's actions damaged the plaintiff."  *Cytodyn, Inc. v.*

27 *Amerimmune Pharmaceuticals, Inc*., 160 Cal.App.4th 288, 297 (2008).  California's Uniform Trade

28

Secrets Act ("UTSA") defines a "trade secret" as information that: "(1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  Cal. Civ. Code § 3426.1(d).[36]  Plaintiffs fail to meet one or both prongs of this definition as to every trade secret alleged in this case and therefore fail to meet the first element of a claim for misappropriation of trade secrets.  Plaintiffs also fail to show the second element that Defendants acquired, disclosed, or used Plaintiffs' alleged trade secrets through improper means.

### 1.      Identifying the analysts is not a trade secret.

Plaintiffs claim that Defendants misappropriated Plaintiffs' trade secrets when Chakravarty identified to the BNP Parties "the most qualified and skilled research analysts forming the core group of research analysts at Discovery Research."  TSD ¶ 1.  But there is no evidence that Plaintiffs considered the identities of these particular analysts a "trade secret" within the meaning of UTSA.  Indeed, the analysts' names were easily accessible through Discovery Research's website, and Chakravarty first directed the BNP Paribas parties to that website prior to disclosing any names.  *See supra* II.C.1.  The identities of these analysts was also disclosed in Discovery Research's own marketing materials, on research reports, and on earnings call transcripts for each of the companies covered by Discovery Research.

Moreover, the record shows that, of the 14 analysts employed by TWIPL at the time of the analyst resignations, Chakravarty identified or offered to identify all but 2 of them to the BNP Parties.  *See supra* II.C.1.  There is no evidence that these 12 analysts were the most qualified or experienced, or that they formed the "core" of the team.  In fact, Dr. Bino Pathiparampil was not among the analysts identified by Chakravarty, even though he was one of the most senior, experienced and valuable analysts at TWIPL.

---

[36] Defendants have contested the application of California trade secret law to exchanges of information that took place exclusively in India and Hong Kong.  For purposes of this motion only, however, Defendants assert that even if California law applied, Plaintiffs' claims fail as a matter of law.

1    Nor is there any evidence that *Plaintiffs* ranked these 12 analysts as the most qualified or

2    experienced, or that such rankings were part of an informational base belonging to Plaintiffs. Thus, the

3    fact that, in Chakravarty's opinion, at least 12 analysts were competent at performing their jobs—which

4    is really all that Chakravarty's disclosure revealed to the BNP Parties—is not a protectable trade secret.

5    *See Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853, 860-63 (1994) (a stable

6    of trained and talented at-will employees does not constitute an employer's "trade secret").

7                    **2.        The TWIPL employees' biographical information is not a trade secret.**

8    Plaintiffs allege they owned a trade secret comprising the TWIPL analyst and associates'

9    educational background, work experience, and industry sector specialization. TSD ¶ 2. Plaintiffs,

10   however, cannot claim trade secret protection over any of the analysts' information because it was

11   available over the Internet at the Discovery Research website, in publicly distributed marketing materials,

12   and in the published research reports which were distributed to clients. *See supra* Section II.C.2. Thus,

13   none of this information could have been "the subject of efforts that are reasonable under the

14   circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d)(2).

15   Moreover, the notion that the TWIPL analyst and associates' educational background, work

16   experience, and sector specialization could constitute a protectable trade secret is beyond preposterous

17   when the whole point of Discovery Research was to market and sell the experience and capabilities of its

18   workers. *See supra* Section II.C.2, note 23. Indeed, no evidence indicates that Plaintiffs required

19   TWIPL employees to keep their own or their co-workers' educational background, work experience, or

20   sector specialization a secret. Such a policy would of course be unheard of in the private sector and

21   contrary to California public policy. *Rigging Internat. Maint. Co. v. Gwin*, 128 Cal.App.3d 594, 606-07

22   (1982) ("an employee's skill and knowledge of a particular business constitute the means by which he

23   earns a living, and the courts should not hastily brand them as confidential where this will deprive him of

24   employment opportunities") (citations omitted); *see also Metro Traffic Control, Inc.*, 22 Cal.App.4th at

25   862 (talents of actors, musicians, athletes, and others belong to them to contract away as they please).

26

27

28

1

2

      **3.      The TWIPL employees' base salaries and expected bonuses is not a trade secret.**

3

4

      Next, Plaintiffs claim that Defendants misappropriated compensation information—specifically, the 2007 base salaries, 2007 expected bonuses and 2007 total compensation—of the departing TWIPL employees.  TSD ¶ 3.  However, California courts have held that "[i]nformation about an individual employee's salary, qualifications, job history, abilities and 'performance level' generally lacks trade secret protection because such information is personal to the employee, and the employee is free to share it with a competitor or anyone else."  *American Mortgage Network v. LoanCity.com*, No. D044550, 2006 WL 3199291, at *14 (Cal. App. 4th Nov. 7, 2006) ("[w]e have found no authority supporting the view that the type of general employee information at issue in this case [employees' salaries, performance level and abilities] qualifies as trade secret under the UTSA.").[37]

5

6

7

8

9

10

      This is consistent with a legislative committee comment to California Civil Code § 3426.1 which notes that the original draft of the statute defined a trade secret in part as "not being readily ascertainable by proper means" and that "the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation."  *Id*.; *DVD Copy Control Ass'n, Inc. v. Bunner*, 31 Cal.4th 864, 899 (2003) (Moreno, J. concurring); *see, e.g.*, *American Mortgage Network*, 2006 WL 3199291, at *14 (an employee's compensation information is not a trade secret because it "is ordinarily readily ascertainable through proper means by a competitor and is not typically subject to reasonable efforts to maintain its secrecy."); *American Paper & Packaging Products, Inc. v. Kirgan*, 183 Cal.App.3d 1318, 1326 (1986) (list of potential clients that is readily ascertainable from public sources such as directories does not qualify as a trade secret).

11

12

13

14

15

16

17

18

19

20

      Further, the employee compensation information at issue here was readily ascertainable by proper means—namely, through the employees themselves.  *See supra* Section II.C.3.  Indeed, the California

21

22

23

24

25

26

27

28

---

[37] Indeed, prior to the enactment of the UTSA, the Restatement Torts specifically omitted employee salary information from the definition of a trade secret:  "[A trade secret] differs from other secret information in a business in that it is not simply information as to single or ephemeral events in the conduct of the business, ***as, for example***, the amount or other terms of a secret bid for a contract or ***the salary of certain employees***, or the security investments made or contemplated, or the date fixed for the announcement of a new policy or for bringing out a new model or the like." (citation omitted and emphasis added).  RESTATEMENT (FIRST) OF TORTS § 757(b) (1939).

1    Labor Code restricts employers from prohibiting employees from disclosing their wages.  *See* Cal. Lab.

2    Code § 232.  As Plaintiffs have asked this Court to apply California law to this claim, they cannot ask the

3    Court to apply some provisions and not others.  Thus, Labor Code Section 232, and in particular subpart

4    (b), has the effect of preventing an employer in California from claiming that its employees' wages are

5    trade secrets because it says that an employer in California simply cannot require an employee to agree to

6    keep his wages "secret."

7         Moreover, the only evidence in this case is that Chakravarty obtained TWIPL employees'

8    compensation information through legitimate means, namely, by asking them for it.  *See supra* Section

9    II.C.3.  Plaintiffs assert that Chakravarty had access to the compensation information through his position

10   as Director of Discovery Research, and then make the unfounded leap that he therefore compiled it using

11   improper access to Plaintiffs' information.  But Plaintiffs cannot proffer a shred of evidence to support

12   their theory.  In fact, Plaintiffs' computer forensics expert was unable to confirm the original source of

13   the information contained in the spreadsheets which Chakravarty provided the BNP Parties containing

14   the compensation information.  *See supra* Section II.C.3.

15        In any event, the evidence shows that none of the compensation information Chakravarty

16   provided to the BNP Parties was based on the employee compensation numbers of Plaintiffs.  Instead, as

17   demonstrated in the chart below, the 2007 salaries provided to the BNP Parties were inaccurate.  More

18   importantly, the expected bonus and thus the total compensation numbers had no correlation whatsoever

19   to any data developed or maintained by Plaintiffs.  As the chart below shows, the 2007 bonuses TWIPL

20   anticipated paying the Discovery Research employees differed considerably from the 2007 bonuses

21   Chakravarty reported to the BNP Parties.  The expected 2007 bonuses Chakravarty provided to the BNP

22   Parties ranged from 100% to 130% of the employees' salaries.  In contrast, TWIPL's internal documents

23   showed an anticipated bonus range of 20% to 70% of salary.  The bonus information Chakravarty shared

24   with the BNP Parties reflected the analysts' expectations for negotiating purposes—not reports of actual

25   bonuses considered by TWIPL.  *See supra* Section II.C.3.[38]

26   _____

27   [38] The spreadsheets Chakravarty provided to the BNP Parties contain other information which is not
     alleged to be a trade secret, such as TWIPL 2008 salary and TWIPL 2008 bonus, and thus are omitted
     from this chart.  To the extent such information were alleged to be a trade secret, the same arguments that

28   apply to the 2007 compensation information apply to the 2008 compensation information as well.

| Name | TWIPL 2007 Salary[39] | 2007 Salary Reported to BNP Parties[40] | TWIPL 2007 Bonus[41] | 2007 Bonus Reported to BNP Parties[42] |
|---|---|---|---|---|
| Vijay Sarathi | $56,222 | $63,250 | $16,867 | $63,250 |
| Sameer Naringrekar | $37,778 | $63,250 | $11,333 | $63,250 |
| Lakshminarayana Ganti | $48,889 | $55,000 | $12,222 | $66,000 |
| Preeti Dubey | $48,889 | $55,000 | $9,778 | $66,000 |
| Vishal Sharma | $46,667 | $52,500 | $9,333 | $66,000 |
| Abhiram Eleswarapu | $33,056 | $37,188 | $16,528 | $37,188 |
| Girish Nair | $33,333 | $37,500 | $10,000 | $48,750 |
| Sandeep Mathew | $31,111 | $35,000 | $9,333 | $45,500 |
| Joseph George | $33,056 | $37,188 | $16,528 | $48,344 |
| Amit Shah | $33,333 | $37,500 | $10,000 | $45,000 |
| Kunal Vora | $26,667 | $30,000 | $6,667 | $30,000 |
| Abhishek Bhattacharya | $28,889 | $32,500 | $7,222 | $32,500 |
| Alok Deshpande | $21,333 | $25,000 | $5,333 | $25,000 |
| Samir Diwan | $31,111 | $35,000 | $7,778 | $35,000 |
| Krishna Prasad | $31,111 | $35,000 | $7,778 | $35,000 |
| Avinash Singh | $20,000 | $22,500 | $10,000 | $22,500 |
| Sriram Somayajula | $24,444 | $27,500 | $7,333 | $27,500 |
| Manish Gupta | $25,556 | $28,750 | $10,222 | $28,750 |
| Charanjit Singh | $25,556 | $28,750 | $6,389 | $28,750 |
| Karan Gupta | $26,667 | $30,000 | $6,667 | $30,000 |
| Avneesh Sukhija | $14,444 | $25,000 | $10,111 | $25,000 |
| Aditya Khemka | $24,444 | $27,500 | $6,111 | $27,500 |
| Shashank Abhisheik | $22,222 | $25,000 | $6,667 | $25,000 |

Because the 2007 base salary and expected bonus information was not any trade secret owned by Plaintiffs, the 2007 total compensation numbers which Chakravarty allegedly provided to the BNP Parties was not trade secret information owned by Plaintiffs.  In short, the information provided differed

---

[39] *See* Calabria Decl. Ex. 29 at TWPL00144765-66, 771-72, Column K.

[40] *See* Calabria Decl. Ex. 28 at BNP040865-66, Column D.

[41] *See* Calabria Decl. Ex. 29 at TWPL00144765-66, 771-72, Column K.

[42] *See* Calabria Decl. Ex. 28 at BNP040865-66, Column D.

DEFS.' MOT. FOR PARTIAL SUMM. J. ON PLS.' FIRST AND SECOND CLAIMS
Case No. 3:07-cv-06198 MHP

1   from that possessed by Plaintiffs.[43]

2                   **4.       The TWIPL office lease is not a trade secret.**

3          Plaintiffs claim that the terms of the TWIPL office lease in Mumbai was a trade secret.  TSD ¶ 5.

4   However, as set forth in the statement of facts, the square footage and term of that lease, as well as the

5   lease itself, was disclosed in TWP and TWIPL's public governmental filings.  *See supra* Section II.C.4.

6   Obviously, terms of a lease that is publicly filed with governmental entities like the SEC cannot be

7   entitled to trade secret protection.

8   **IV.    CONCLUSION**

9          For the reasons stated herein, Defendants BNP Paribas, BNP Paribas Securities (Asia) Limited,

10  and Praveen Chakravarty respectfully request that the Court grant this motion for partial summary

11  judgment and dismiss this case.

12

13  Dated:  May 10, 2010                                    DURIE TANGRI LLP

14

15                                                          By:_____/s/ Johanna Calabria_____
                                                                    JOHANNA CALABRIA

16                                                          Attorneys for Defendant
17                                                          PRAVEEN CHAKRAVARTY

18  Dated:  May 10, 2010                                    DAVIS WRIGHT TREMAINE LLP

19                                                          CLIFFORD CHANCE US LLP

20

21                                                          By: :____/s/ Steven T. Cottreau_____
                                                                    STEVEN T. COTTREAU

22                                                          Attorneys for Defendants
23                                                          BNP PARIBAS AND BNP PARIBAS
                                                            SECURITIES (ASIA) LIMITED

24

25

26  _____
    [43] Plaintiffs also claim trade secret status in "the aggregation combination of items 1, 2 and 3 above."
27  TSD ¶ 4.  However, none of those items is entitled to trade secret protection for the reasons stated above,
    and there is no support for the notion that the aggregation of this particular information somehow
28  transforms this information into a trade secret.